## UNITED STATES DISTRICT COURT

## DISTRICT OF NEW MEXICO

| | |
|---|---|
| M.G., a minor and through her mother Christina Garcia; A.C., a minor, by and through her mother Alicia Cortez.; C.V., a minor, by and through his father Jeremy Vaughan.; and Disability Rights New Mexico, Inc.<br><br>*Plaintiffs,*<br><br>v.<br><br>DAVID SCRASE, in his official capacity as Secretary for the Human Services Department; State of New Mexico HUMAN SERVICES DEPARTMENT; PRESBYTERIAN HEALTH PLAN, INC.; HCSC INSURANCE SERVICES COMPANY operating as Blue Cross and Blue Shield of New Mexico; and WESTERN SKY COMMUNITY CARE, INC.<br><br>*Defendants.* | Civ. Action No. 1:22-CV-00325<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY DEMANDED |

## INTRODUCTION

1. Plaintiffs are medically fragile children who are eligible to receive medically necessary private-duty nursing care from three managed care organizations:  Defendants Western Sky Community Care, Inc. Blue Cross and Blue Shield of New Mexico, and Presbyterian Health Plan.  These children receive nursing care through the State's taxpayer funded Medicaid Managed Care program.  Defendants Human Services Department and Secretary David Scrase administer the Medicaid Managed Care program, known as Centennial Care 2.0.  Western Sky, Blue Cross, and Presbyterian receive a "capitated payment" from taxpayers to oversee Plaintiffs' nursing care.  When there are many children enrolled in the program but the nursing services are not provided, Western Sky, Blue Cross, and Presbyterian, keep the capitated payment profits, resulting in a windfall.  When eligible children do receive medically necessary private-duty nursing care, these same managed care organizations experience a loss of profits.  Contrary to their contracts with the State and applicable law, Western Sky, Blue Cross, and Presbyterian have declined or refused to provide medically necessary nursing services, in the hours allotted, to eligible children.  These managed care organizations have therefore reaped profits they have not earned.  The New Mexico Human Services Department and Secretary Scrase have failed to enforce the State's contracts with the managed care organizations.  As the intended beneficiaries of these State contracts, Plaintiffs therefore bring suit through their parents, on behalf of themselves and a class of similarly situated children throughout the State, seeking to enforce the State's contracts and for nominal and punitive damages.

2. This action, brought by medically-fragile children under the age of 21 in the state of New Mexico who are Centennial Care 2.0 eligible, and by a non-profit Protection and Advocacy organization, seeks nominal damages, punitive damages, declaratory relief, and injunctive relief

against Defendants Western Sky Community Care Inc., Blue Cross and Blue Shield of New

Mexico, Presbyterian Health Plan Inc., New Mexico's Human Services Department and its

Secretary David Scrase. This action seeks to remedy the Defendants' failure to provide medically

necessary private-duty nursing care (in-home nursing care) to children who require it, and to

enjoin Defendants to provide this care to Plaintiffs and other Medicaid-eligible children like

them, as required by law.

3.   Defendants HSD and Secretary David Scrase are responsible for administering the

state's federally and state-funded Medicaid Managed Care program, known as Centennial Care

2.0, a health insurance program to arrange for base medical services to those with income-

maintenance needs and other met eligibility criteria. For the delivery of services under

Centennial Care 2.0, Defendant HSD and Secretary Scrase enter into risk contracts with

Managed Care Organizations (MCOs), whereby the MCOs must provide the medically necessary

covered services in exchange for a monthly fixed payment by HSD on behalf of each Centennial

Care 2.0 enrollee to the MCO's network of care— a capitated payment.  While the MCO may

receive a capitated payment for a member with little to no cost to the MCO when a member does

not utilize or require medical services, where members are in need, the risk of the contract falls

on the MCO which must bear the cost of providing services. Accordingly, when MCO

membership is high and utilization is low, the MCO retains the capitated payment profits.  For

instance, in 2020, MCOs saw an increase in Medicaid enrollees. At the same time, the state saw

a decrease in Centennial Care 2.0 enrollee's utilization of services: HSD payments to MCOs

increased while MCOs spent less to cover medical costs of members.[1] Yet, this lawsuit demonstrates the immense inequity of when an MCO receives capitated payments from HSD, but artificially lowers its costs by simply not delivering promised services to vulnerable children who, through no fault of their own, require medically necessary services to meet their undisputed needs—deflecting the risk the MCO contractually agreed to bear onto its beneficiaries. Meanwhile, Defendant HSD and Secretary Scrase failed to account for and take remedial action, as the department ultimately responsible for the administration of the state's Medicaid program, and its compliance with federal and state laws.

4. Defendant Western Sky Community Care Inc. (Western Sky), is one of three MCOs HSD has contracted with to provide services to Medicaid members of Centennial Care 2.0. Plaintiff M.G. is a Centennial Care 2.0 enrollee as a child under the age of 21, participating in Defendant Western Sky's managed care plan. Plaintiff M.G has a life-threatening chronic condition and is dependent on skilled nursing care in home, without which she could not take care of herself.  Plaintiff M.G. has met eligibility requirements for private duty nursing services and a number of needed hours agreed upon by Defendant Western Sky.

5.  Defendant Blue Cross Blue Shield of New Mexico (BCBSNM), is an MCO that HSD has contracted with to provide services to Medicaid members of Centennial Care 2.0. Plaintiff A.C. is a Centennial Care 2.0 enrollee as a child under the age of 21, participating in Defendant BCBSNM's managed care plan. Plaintiff A.C. has a life-threatening chronic condition and is dependent on skilled nursing care in home, without which she could not take care of herself.

---

[1] 2020 Medicaid Accountability Report, presented to the New Mexico Legislative Finance Committee, April 2021, at Page 2, *available at* https://www.nmlegis.gov/Entity/LFC/Documents/Program_Evaluation_Reports/2020%20Medicaid%20Accountability%20Report.pdf.

Plaintiff A.C. has met eligibility requirements for private duty nursing services and a number of needed hours agreed upon by Defendant BCBSNM.

6. Defendant Presbyterian Health Plan Inc. (Presbyterian), is an MCO that HSD has contracted with to provide services to Medicaid members of Centennial Care 2.0. Plaintiff C.V. is a Centennial Care 2.0 enrollee as a child under the age of 21, participating in Defendant Presbyterian's managed care plan. Plaintiff C.V. has a life-threatening chronic condition and is dependent on skilled nursing care in home, without which he could not take care of himself. Plaintiff C.V. has met eligibility requirements for private duty nursing services and a number of needed hours agreed upon by Defendant Presbyterian.

7. Defendants HSD and Secretary Scrase, through Defendants Western Sky, BCBSNM, and Presbyterian, are responsible, under federal law, for ensuring that Plaintiffs and others like them receive all medically necessary care in the most integrated setting appropriate to their needs. Additionally, the federal Medicaid Act requires that Defendant HSD "arrang[e] for (directly or through referral to appropriate agencies, organizations, or individuals) corrective treatment" explicitly including private-duty nursing services for Medicaid enrollees under the age of 21. 42 U.S.C. §§ 1396a(a)(43)(C), 1396d(r); 1396d(a)(8).

8. By failing to ensure medically necessary private-duty nursing hours are satisfied, Defendants have exposed Plaintiffs to the unnecessary isolation and to the risk of institutionalization or hospitalization—in violation of the Americans with Disabilities Act, 42 U.S.C. § 12132, Section 504 of the federal Rehabilitation Act, 29 U.S.C. § 794(a), and Section 1557of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116.

9.  There have been others like Plaintiffs who were left without medically necessary private- duty nursing hours for months at a time, only to later have been provided adequate hours after damage had been done.

10. The state contracts between Defendant HSD and the MCOs governing the delivery of Medicaid managed care services each unlawfully and unconscionably disclaim the rights of Medicaid beneficiaries to enforce the terms of the contract, and assign the risk of economic loss where it is due. Accordingly, the contract strips beneficiaries from immediate judicial recourse and wrongly shields Defendants from liability. In effect, for children and families like Plaintiffs, the promise of the MCO to deliver critical services and for HSD to hold them accountable is all smoke and mirrors in times of need.

11. This lawsuit asks the Court to declare, as a matter of law, that third-party beneficiaries to the state Medicaid managed care agreements have enforceability rights; to enforce the contract requiring the provision of medically necessary services following the failure of Defendants Western Sky, BCBSNM, and Presbyterian to meet their contractual obligations to provide such services; and to award nominal and punitive damages against Defendants Western Sky, BCBSNM, and Presbyterian.

12.  Additionally, this lawsuit asks the Court to order Defendants HSD and Secretary Scrase to take action necessary to ensure medically necessary private duty nursing hours are secured to beneficiaries now and in the future, in accordance with federal law.

## PARTIES

**A.** *Plaintiffs*

i.   Plaintiff M.G.

6

13. Plaintiff M.G. is three-year-old and is a Centennial Care 2.0 beneficiary. She has been diagnosed with a chronic and life threatening medical condition. Because of her medical needs, a Comprehensive Needs Assessment and Level of Care determination, conducted through University of New Mexico Center for Development and Disability, determined that she requires approximately 84 hours per week, of home healthcare including in-home nursing (private duty nursing) and personal care services. Currently, M.G. only has access to 79 hours per week of in-home nursing. She currently resides in Rio Rancho, New Mexico, at home with her mother. Pursuant to Fed. R. Civ. P. 17(c), M.G. brings this action through her mother.

ii.  Plaintiff A.C.

14.  Plaintiff A.C. is a nine-year-old and is a Centennial Care 2.0 beneficiary through BCBSNM's managed care plan. She has been diagnosed with a chronic and life threatening medical condition. Because of her medical needs, a Comprehensive Needs Assessment and Level of Care determination, conducted through University of New Mexico Center for Development and Disability, determined that she requires 40 hours of in-home healthcare including private duty nursing services per week or approximately 160 hours per month. Currently, she is receiving no private duty nursing services. Plaintiff A.C. resides in Albuquerque, New Mexico, at home with her mother and father. Pursuant to Fed. R. Civ. P. 17(c), A.C. brings this action through her mother.

iii.  Plaintiff C.V.

15.  Plaintiff C.V. is a three-year-old and is a Centennial Care 2.0 beneficiary though Presbyterian's managed care plan. He has been diagnosed with a chronic and life

threatening medical condition. Because of his medical needs, a Comprehensive Needs Assessment and Level of Care determination, conducted through University of New Mexico Center for Development and Disability Pediatrics, determined that he requires 173 hours per month of in-home private duty nursing care. Currently, C.V. is only provided access to 19 hours per week (approximately 76 hours per month) of private duty nursing. He currently resides in Sandia Park, New Mexico, at home with his mother and father. Pursuant to Fed. R. Civ. P. 17(c), C.V. brings this action through his father.

iv.  Disability Rights New Mexico, Inc. ("DRNM")

16.  DRNM is the agency designated by the state of New Mexico as the state's Protection and Advocacy organization, authorized by federal statues to pursue legal remedies on behalf of persons with disabilities. *See* Developmental Disabilities Assistance and Bill of Rights Act (the DD Act), 42 U.S.C. §§ 15001 *et seq.* (2000); the Protection and Advocacy of Individual Rights (the PAIR Act), 29 U.S.C. § 794e (1994); the Protection and Advocacy for Mentally Ill Individuals Act (the PAMII Act), 42 U.S.C. §§ 10801 *et seq.* (1997).

17.  DRNM has associational standing to assert the legal rights on behalf of all Centennial Care 2.0 beneficiaries under the age of 21 in New Mexico who have been approved for private duty nursing services by Defendants, but are not receiving the nursing services at the level approved by Defendants.

18.  Respecting the causes of action stated in this Complaint, such constituents of DRNM have standing to sue in their own right.

19.  The interests of access to medically necessary services and to be free from discrimination on the basis of disability are germane to DRNM's purpose.

8

20.  Neither the claim asserted nor the relief requested herein requires the participation of individual members during the course of this lawsuit.

**B.  *Defendants***

i. HSD Defendants

21.  Defendant David Scrase is Secretary of the New Mexico Human Services Department. As such, "[i]t is his duty to manage all operations of the department," "enforce the laws with which he or the department is charged," and exercise "general supervisory and appointing authority over all department employees." NMSA 1978, §§ 9-8-6(A), 9-8-6(B)(1). The Medical Assistance Division of HSD administers New Mexico's Medicaid program. 42 U.S.C. § 1396a(a)(5); 42 C.F.R. § 431.10 (2013); NMSA 1978, §§ 9-8-12, 27-2-16. HSD has its principal place of business in Santa Fe, New Mexico.

22.  At all times hereto, Defendant David Scrase was acting under color of state law.

23.  Defendant New Mexico Human Services Department ("HSD") is the single state agency responsible for administering New Mexico's Medicaid program, called "Centennial Care 2.0."

ii.  Defendants MCOs

24.  Defendant Western Sky Community Care, Inc. ("Western Sky") is a New Mexico corporation. Its principal place of business is located at 5300 Homestead Rd NE, Albuquerque, New Mexico 87110.

25.  Defendant Presbyterian Health Plan, Inc. ("Presbyterian") is a New Mexico corporation. Its principal place of business is located at 9521 San Mateo Boulevard Northeast, Albuquerque, New Mexico 87113.

26.  Defendant HCSC Insurance Services Company ("HCSC") is a New Mexico corporation which does business as Blue Cross & Blue Shield of New Mexico ("BCBSNM"). Its principal place of business is located at 5701 Balloon Fiesta Parkway, Albuquerque, New Mexico 87113.

## JURISDICTION AND VENUE

27. Jurisdiction is based on 28 U.S.C. §§ 1331 and 1343 for a violation of 42 U.S.C. § 1983, Title II of the ADA, Section 504, and the Patient Protection and Affordable Care Act § 1557, 42 U.S.C. § 18116 (2012) ("Section 1557").

28.  This Court has supplemental jurisdiction over the subject matter of the breach of contract claims brought under state laws pursuant to 28 U.S.C. § 1367 because the claims are so related to the claims within this Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

29.  This Court has personal jurisdiction over Defendants because the individual defendants are domiciled in this district and because Defendants' acts and omissions took place within this district.

30.  Venue is proper in the District of New Mexico pursuant to 28 U.S.C. § 1391(b) because Defendants operate and perform their official duties therein and thus reside therein for purposes of venue, and because a substantial part of the events and omissions giving rise to the claims herein occur in counties that are part of the District of New Mexico.

10

31. This action seeks injunctive relief pursuant to Fed. R. Civ. P. 65, declaratory relief pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. § 2201, and nominal and punitive damages pursuant to § 59A-57-9(D) &(E) NMSA.

## CLASS ALLEGATIONS

32.  Plaintiffs bring this action as a statewide class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) on behalf of:

> All Centennial Care 2.0 beneficiaries under the age of 21 in New Mexico who have been approved for private duty nursing services by Defendants, but are not receiving the nursing services at the level approved by Defendants.

33.  Plaintiffs seek class certification pursuant to Fed. R. Civ. P. 23(b)(3) for the causes of action pursuing both nominal and punitive damages—the Second, Third, and Fourth Causes of Action of the Complaint.

34.  Plaintiffs seek class certification pursuant to Fed. R. Civ. P. 23(b)(2) for the remaining causes of action pursuing declaratory and injunctive relief—the First, Fifth, Sixth, Seventh, Eighth, and Ninth Causes of Action of this Complaint.

35.  There exist questions of law and/or fact common to the Plaintiff Class that predominate over any individual question. Common questions of fact and law include, without limitation:

(i)    Whether Plaintiffs and class members have third-party beneficiary standing to enforce the contract between Defendants MCOs and Defendant HSD;

(ii)   Whether Defendants MCOs are in breach of contract for the failure to deliver medically necessary and approved private duty nursing services to Plaintiffs and class members;

(iii)    Whether Defendants MCOs' breach of contract was done intentionally and willfully, done with knowledge of and utter indifference to its harmful consequences, and done with disregard for the rights of Plaintiffs and Class members;

(iv)    Whether Defendants David Scrase and HSD have a contractual duty to demand that Defendants MCOs cure their breach;

(v)    Whether HSD Defendants have violated the ADA and/or Rehabilitation Act by failing to arrange for Medicaid-covered, medically necessary private duty nursing services thereby placing them at risk of unnecessary institutionalization;

(vi)    Whether Defendant Scrase violated Section 1557of the Patient Protection and Affordable Care Act for failing to take necessary action to arrange for medically necessary private duty nursing services for Plaintiffs; and

(vii)    Whether HSD Defendants have failed to "arrange for (directly or through referral to appropriate agencies, organizations, or individuals) corrective treatment [private duty nursing services]" to Plaintiffs and Class members as mandated by the EPSDT provisions of the Medicaid Act pursuant to 42 U.S.C. §§ 1396a(a)(10)(A), 1396d(a)(4)(B), and 1396a(a)(43)(C).

36.  The Class members are so numerous that joinder of all members is impracticable. Upon information and belief, there are at least fifty-three (53) children who are eligible for in-home nursing through Centennial Care 2.0, yet are unable to access all

the in-home nursing services they are approved to receive.[2]Upon information and belief the

class size is in excess of fifty-three (53) members to include unreported denials of services

and such members who may in the future be denied access to approved in-home nursing

services. A current class size will be determined after the plaintiffs have had an opportunity

to conduct discovery.

37.  The claims of all named individual Plaintiffs are typical of the claims of

members of the Class. Plaintiffs and class members are Centennial Care 2.0 beneficiaries

who not receiving medically necessary private-duty nursing hours at the level needed to

correct or ameliorate their conditions.

38.  Plaintiffs are adequate to represent the Class because they are the deprived of

the same federal rights and state contractual rights, of which they seek to enforce on behalf

other Class members.

39.  Plaintiffs are committed to successfully prosecuting the claims made in this

complaint and understand their responsibility to represent both their personal interests and the

interests of other class members.

40.  Plaintiffs are represented by experienced counsel who will adequately represent the

interests of the Class.

41.  Plaintiffs and Next Friends will fairly and adequately protect the interests of the

Class.

_____

[2]*See* Anthony Cahill, Ph.D. & Heidi Fredine, MPH, *A Report on the 2021 Needs Assessment of Parents Served by the Medically Fragile Case Management Program at the Center for Development and Disability* (July, 2021) (University of New Mexico Center for Development and Disability).

42.  Plaintiffs' interests in the relief sought in this Complaint are consistent with and not antagonistic to those of any person within the Class.

43.  Because the claims of the proposed class members are identical, the questions of law and fact common to all members of the proposed class predominate over any questions affecting only individual members.

44.  As all class members have claims identical to Plaintiffs', the interest of class members in individually controlling the prosecution or defense of separate actions is slight.

45.  Plaintiffs are not aware of any other similar claims pending by members of the proposed class in any forum.

46.  Plaintiffs are unaware of class members who want to individually prosecute their claims.

47.  Class members interested in individually litigating their claims would most likely have already initiated litigation.

48.  If all similarly situated children prosecuted separate actions, there would be a risk of inconsistent or varying adjudications with respect to individuals that would establish incompatible standards of conduct for Defendants; and Defendants have acted or refused to act on grounds that apply generally to numerous similarly situated children. Therefore, nominal damages, punitive damages, and final injunctive relief with corresponding declaratory relief are appropriate respecting all such children.

49. A class action is superior to other available methods for fairly and efficiently adjudicating the controversy because the questions of law or fact common to similarly situated children predominate over any questions affecting them individually.  A multiplicity of suits with consequent burden on the courts and Defendants should be avoided.  It would be virtually

14

impossible or impracticable for all Class members to intervene as parties-plaintiffs in this action, and there are no other realistic alternatives to adjudicate the class action claims for breaches of contract seeking nominal and punitive damages;

50.  It is desirable to concentrate this litigation in this forum because Plaintiffs are able to demonstrate personal jurisdiction in this forum and aggregate their claims in this forum, and Plaintiffs' claims arose within relative close proximity to Albuquerque, New Mexico, which is geographically convenient to parties, witnesses, and class counsel.

51.  There are no unusual difficulties likely to be encountered in the management of this litigation as a class action.

52.  This case is particularly suitable for adjudication as a class action.

53.  Notice to the Class may be accomplished inexpensively, efficiently and in a manner best designed to protect the due process rights of all Class members by means of written notices supplied through Defendants' system of communication with current and past customers as Defendants maintain databases of their previous customers and their then reported addresses. Plaintiffs will also institute an internet-based notice system directly accessible through their counsel's website: www.drnm.org.

54.  Pursuant to Fed. R. Civ. P. 23(c)(5), Plaintiffs propose a class composed of three subclasses as follows:

55.  Subclass 1— All Centennial Care 2.0 beneficiaries under the age of 21 in New Mexico who receive managed care through Defendant BCBSNM, have been approved for private duty nursing services by Defendant BCBSNM, but are not receiving the nursing services at the level approved.

56.  Subclass 2— All Centennial Care 2.0 beneficiaries under the age of 21 in New Mexico who receive managed care through Defendant Presbyterian, have been approved for private duty nursing services by Defendant Presbyterian, but are not receiving the nursing services at the level approved.

57.  Subclass 3— All Centennial Care 2.0 beneficiaries under the age of 21 in New Mexico who receive managed care through Defendant Western Sky, have been approved for private duty nursing services by Defendant Western Sky, but are not receiving the nursing services at the level approved.

## **BACKGROUND**

### A.  **The Medicaid Act and EPSDT**

58.  The Medicaid Act, Title XIX of the Social Security Act, 42 U.S.C. §§ 1396- 1396w-5, institutes a medical assistance program available to participating states on a voluntary basis. Once a state elects to participate, it must follow program requirements mandated by the federal government.

59. The purpose of the Medicaid program is to ensure that persons with limited income or specific qualifying conditions receive necessary medical services. This medical assistance program is funded by both the federal and state government. 42 U.S.C. § 1396a.

60. States that choose to participate must administer Medicaid "in the best interests of recipients." 42 U.S.C. § 1396a(a)(19).

61.  New Mexico has elected to participate in the Medicaid program.

62.  Defendant New Mexico Human Services Department ("HSD") has been designated as the "single state agency" directly responsible for the administration and supervision of New Mexico's Medicaid program under Title XIX of the Social Security Act 42 U.S.C. § 1396 (a)(5).

16

63. The Medicaid Act, Title XIX of the Social Security Act, requires "early and periodic screening, diagnostic, and treatment services," sometimes referenced as "EPSDT," for individuals under the age of 21. 42 U.S.C. § 1396d(a)(4)(B).

64.  Under EPSDT, the designated state agency responsible for administering its Medicaid program must "arrang[e] for (directly or through referral to appropriate agencies, organizations, or individuals) corrective treatment" for EPSDT covered individuals, including medically necessary private duty nursing services. 42 U.S.C. §§ 1396a(a)(43)(C), 1396d(r).

65.  Accordingly, oversight of the administration and supervision of the state's Medicaid program's compliance with the EPSDT mandate of the Social Security Act, 42 U.S.C. §§ 1396-1396w-5 rests with HSD, under the leadership of Defendant Secretary David Scrase. 42 U.S.C. § 1396a(a)(5); 42 C.F.R. § 431.10 (2013); NMSA 1978, §§ 9-8-12, 27-2-16 NMSA 1978, §§ 9-8-6(A), 9-8-6(B)(1).

66. The state of New Mexico operates its Medicaid program through a managed care system known as Centennial Care 2.0 through which the delivery of services is managed by three Managed Care Organizations ("MCOs"): Blue Cross and Blue Shield of New Mexico, Presbyterian Inc., and Defendant Western Sky Community Care Inc. *see* 42 U.S.C. § 1396b(m).

**B.  Service delivery and HCBS Waivers**

67.  In 1981, Congress authorized the Home and Community Based Services ("HCBS") waiver system, due to the disproportionate percentage of Medicaid resources being used for long-term institutional care.  The HCBS waiver system permits states to disregard certain Medicaid requirements to offer varied medically appropriate value added services to the state's Medicaid beneficiaries.

68. States may apply for HCBS "waivers" to provide services, including in-home nursing services, to individuals who would otherwise be eligible for placement in an institution, including nursing homes and hospitals. See 42 U.S.C. § 1396n(c)(1).

69. Under the HCBS waivers, Medicaid-eligible individuals who are entitled to receive residential care in a Medicaid-funded Intermediate Care Facility for persons with Mental Retardation ("ICF/MR"), instead, receive their services outside of an ICF/MR, so long as the aggregate cost of the community-based program is no greater than the aggregate cost of serving the same people in institutional settings. 42 CFR § 440.150.

70. The state of New Mexico's HCBS waiver includes services delivery models under three distinct programs: Mi Via Waiver, Medically Fragile Waiver, and the Developmental Disabilities Waiver.

71. Under New Mexico's HCBS waiver, EPSDT requirements are not waived, and waiver program services are supplementary to EPSDT benefits for Centennial Care 2.0 eligible beneficiaries.

72. Irrespective of the service delivery model utilized or HCBS waiver participation, HSD is responsible for ensuring medically necessary services, including EPSDT services, are provided in accordance with approved plans of treatment. 42 U.S.C. § 1396a(a)(5).

## C. ADA, Section 504 of Rehabilitation Act, and Section 1557 of the ACA

73. The Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act (Section 504) protect qualified individuals with disabilities from discrimination.

74. Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in, or be denied the benefits of the services,

programs, or activities of a public entity, or subjected to discrimination by any such entity." 42 U.S.C. § 12132.

75.   Similar to the ADA, Section 504 applies the same anti-discrimination principles to programs or activities receiving federal funds. *See* Section 504, 29 U.S.C. §§ 794-794a.

76.   Further, Section 1557 of the Affordable Care Act incorporates the same prohibition from Section 504 as applied to "any health program or activity, any part of which is receiving Federal financial assistance[.]"42 U.S.C. § 18116. This includes discrimination by a state Medicaid agency, such as HSD.

77.   The ADA recognizes that "[i]ndividuals with disabilities continually encounter various forms of discrimination, including . . . segregation..." 42 U.S.C. § 12101(a)(5).

78.   What has become known as the ADA's "integration mandate," is spelled out in federal regulations implementing Title II of the ADA, requiring that "[a] public entity [] administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities."28 C.F.R. § 35.130(d).

79.   Interpreting the integration mandate, the United States Supreme Court in *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581 (1999) ruled that the unnecessary segregation of qualified individuals with disability constitutes a violation of the discrimination prohibition of the ADA. Unambiguously, the Court held:

> States are required to provide community-based treatment for persons with mental disabilities when the State's treatment professionals determine that such placement is appropriate, the affected persons do not oppose such treatment, and the placement can be reasonably accommodated, taking into account the resources available to the State and the needs of others with mental disabilities.

*Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 607 (1999).

80.  Compliance with the integration mandate requires that "[a] public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." See 28 C.F.R. § 35.130(b)(7).

**D.  New Mexico Managed Care Services Agreement**

81.  The New Mexico state legislature requires that "[HSD] shall provide for a statewide, managed care system to provide cost-efficient, preventive, primary and acute care for medicaid recipients[.]" NMSA 1978 § 27-2-12.6 (emphasis added).To effectuate this mandate, Defendant David Scrase and Defendant HSD entered into a "risk contract" with Defendants Western Sky, BCBSNM, and Presbyterian. This risk-based system was explained succinctly in the *Starko, Inc. v. New Mexico Human Services Dept*:

> The managed care system is a risk-based system, meaning an MCO bears the risk of loss if the State's fee does not cover all the costs for the healthcare that the Medicaid program requires MCOs to provide to individuals. In part, states moved to the new model to get away from the fixed rate imposed by the fee-for-services model, in an attempt to scale back the costs to states associated with the Medicaid program.

*Starko*, 2014-NMSC-033, ¶ 23.

82.  Under this system, HSD entered into three identical Medicaid Managed Care Services Agreements with three distinct MCOs: Blue Cross and Blue Shield of New Mexico; Presbyterian Health Plan, Inc.; and Western Sky Community Care, Inc.

83.  All three contracts are effective for the term of January 19,2018 through December,31, 2022.

20

84. At various times the contracts were amended and restated until most recently having been amended and restated for the term of December 27, 202 through December 31, 2023.

85. At all times material hereto, the provisions of these contracts at issue and cited herein were and are in effect and were not amended at any time prior to the filing of this Complaint.

86. Through these contracts, HSD delegated certain aspects of implementation of the state's Medicaid program, including the obligation to provide EPSDT services. *See e.g.,*4.5.2.1.4-5, Defendant Western Sky Medicaid Managed Care Services Agreement. Accordingly, the MCO receives a capitated payment for members in exchange for the promise to deliver services delegated to it through the contract, such as EPSDT services.  However, HSD remains the single state agency responsible for the supervision of the MCOs compliance with federal law. *See* 42 U.S.C. § 1396a(a)(5); *see also* 42 C.F.R. § 431.10. HSD is ultimately responsible to "make available a variety of individual and group providers qualified and willing to provide EPSDT services." 42 C.F.R. § 441.61(b).

**E. Capacity to Provide In-Home Nursing Services**

*Defendant BCBSNM*

87.  Defendant BCBSNM is, a division of Health Care Service Corporation ("HCSC"), a Mutual Legal Reserve Company, an Independent Licensee of the Blue Cross and Blue Shield Association.

88.  In 2019 HCSC had $2,186,256,000.00 in net income. Best's Credit Report, *Health Care Service Corporation Group* (March 24, 2021)  p.10, *available at*  https://www.hcsc.com/pdf/am-best-ratings-report-2021.pdf (last visited April 21, 2022).

89.  On its website, HCSC reports a total revenue of $50.2 billion in 2021. HCSC, *Who We Are*, HCSC by the Numbers (December 31,2021),*available at* https://www.hcsc.com/who-we-are/statistics (last visited April 21, 2022).

*Defendant Presbyterian*

90.  Defendant Presbyterian reported $60,176,195.00 in net income for 2019. *See* Insurance Department of the State of New Mexico, *Quarterly Statement of the Presbyterian Health Plan Inc.*, (June 30, 2020) p.4, *available at* https://www.osi.state.nm.us/wp-content/uploads/2021/01/Presbyterian-Health-Plan-Inc..pdf (last visited April 21,2022).

91. In its Quarterly Statement as of June 30,2020, Defendant Presbyterian reported $77,776,492.00 in net income. *Id*.

92.  Presbyterian Healthcare Services is a New Mexico nonprofit corporation exempt from income taxes under Section 501(c)(3) of the Internal Revenue Code (the Code). One of its affiliates is Presbyterian Network, Inc. which is the parent organization of its wholly-owned subsidiary, Defendant Presbyterian Health Plan, Inc.  Ernst & Young LLP, *Combined Financial Statements, Supplementary Information, and Reports on Federal Award Programs*, Presbyterian Healthcare Services and Affiliates Years Ended December 31, 2020 and 2019 With Reports of Independent Auditors, p.7 (2021).

93.  In 2019, Presbyterian Health Services had $312,050,000 in excess of revenues over its expenses, and $240,321,000 in 2020.  *Id*. at p.4.

*Defendant Western Sky*

94.  In 2020, Defendant Western Sky Reported $10,908,268 in net income, with $51,312,203 in surplus. *See* Insurance Department of the State of New Mexico, *Quarterly Statement of the Western Sky Community Care Inc.*,(March 31,2021) p.4 , *available at*

https://www.osi.state.nm.us/wp-content/uploads/2021/06/Western-Sky-Community-Care-Inc..pdf  (last visited April 21,2021).

95.  In 2021, Defendant Western Sky reported $7,698,003 in net income, with $59,021,105 in surplus. *Id*. at p.3 and 4.

96.  In 2020, Defendant Western Sky's parent company, Centene Corp., reported $5.5 billion in operating cash flow from $111.1 billion in total revenue. Centene Corporation, *2020 Annual Review*, p.1 *available at* https://investors.centene.com/_assets/_b69c7d8b8deb55d6922ca8126c828ac3/centene/db/1259/10936/annual_report/Centene-2020-Annual-Review_508.pdf (last visited April 21, 2021).

97.  Centene Corp. makes the claim: "As the largest Medicaid managed care organization in the country, Centene supports many of our nation's most vulnerable citizens." *Id*. at p. 16.

98.  Although Defendant MCOs bear the risk of financial loss in their Medicaid managed care contracts with Defendant HSD, the above reflects their immense capacity to support New Mexico's medically-fragile children who are Medicaid recipients in need of in-home nursing. It also reflects their capacity to financially incentivize—to whatever extent needed—the hiring of local, traveling, or international nurses.  Yet Defendants MCOs failed to do so.

99.  At the same time, Defendant HSD and Defendant Scrase failed to enforce its Medicaid managed care contracts with Defendants MCOs upon their failure to provide the nursing services of which they had agreed to provide.

## PLAINTIFF FACTS

**DRNM**

100. Organizational Plaintiff, DRNM, is authorized by law to represent and/or advocate on behalf of medically fragile Centennial Care 2.0 EPSDT beneficiaries who are not provided medically necessary private duty nursing services.

**Plaintiff A.C.**

101.  Plaintiff A.C. is a nine-year-old girl diagnosed with Rett Syndrome, epilepsy, and global developmental delays. She resides at home with her parents and two other siblings, in Albuquerque, New Mexico.

102.  A.C. is a Medically Fragile Waiver participant and Centennial Care 2.0 beneficiary under Defendant BCBSNM's managed care plan.

103.  She is non-verbal and requires maximum assistance in basic living functions such as feeding, walking, toileting, and bathing. She also requires regular breathing assessments and monitoring during night-waking episodes, which are a symptoms of Rett Syndrome.

104.  She experiences seizures every day, often requiring oxygen assistance and an emergency intervention plan for seizure activity lasting longer than 5 minutes.

105.  A.C. also experiences "Rett Episodes" during which she loses all motor control for up to one minute at a time. She will have spastic movements of all muscles in her body and requires assistance to ensure safety and to regain bodily control.

106.  According to Plaintiff A.C.'s treatment plan, or Individualized Service Plan (ISP), conducted by UNM Center for Development and Disability on March 12, 2020, she required 40 hours of home healthcare, including in-home Private Duty Nursing ("PDN"), per week. This is

reflected in her Comprehensive Needs Assessment and Level of Care Determination approved by Defendant BCBSNM.

107.  For this ISP year, A.C. faced an average shortfall of 16.7 hours per week of PDN hours that had been approved by Defendant BCBSNM.

108.  On June 22, 2021, A.C., through her mother, submitted a demand to Defendant BCBSNM, through A.C.'s case manager, to satisfy the approved PDN hours, pursuant to the hours Defendant BCBSNM had approved.

109.  Defendant BCBSNM failed to furnish the hours requested following this demand.

110.  According to Plaintiff A.C.'s most recent treatment plan, or ISP, of December 7, 2021, she requires 40 hours of home healthcare, including in-home Private Duty Nursing ("PDN"), per week. This is reflected in her Comprehensive Needs Assessment and Level of Care Determination approved by Defendant BCBSNM.

111. By February 28, 2022, A.C. faced an average shortfall of 23.8  hours per week of PDN hours approved by Defendant BCBSNM for her ISP.

112.  Currently, A.C. is receiving no PDN hours approved by Defendant BCBSNM.

113.  When A.C. does not have access to the in-home nursing services she requires, A.C.'s mother endeavors to provide an approximation of needed nursing care, although she is not a nurse.

114.  A.C. is economically dependent upon the income of her parents. An economic loss to her parents is a loss to A.C.

115.  A.C.'s mother has had to limit her work schedule, and consequently her earning capacity, to care for A.C. during times when an in-home nurse would be providing that care.

Case 1:22-cv-00325-MV-GJF   Document 1   Filed 04/28/22   Page 26 of 50


116.  A.C.'s father must take significant amount of time off from work to care for other children in the household while A.C.'s mother attends to A.C.'s nursing needs, which an in-home nurse would otherwise address.

117.  By virtue of the fact that Plaintiff A.C. is on a HCBS Waiver, via the Medically-Fragile Waiver through Defendant HSD, the Defendants have determined that A.C. is at risk of institutionalization if she does not receive her medically necessary community-based services. *See* 8.290.400.10 (C)(2)(a)( Medically fragile waiver requirement that recipient have "a life threatening condition characterized by reasonably frequent periods of acute exacerbation, which require frequent medical supervision or physician consultation and which, in the absence of such supervision or consultation, would require hospitalization").

118.  Under its Medicaid Managed Care Services Agreement with Defendant HSD, Defendant BCBSNM is required to furnish medically necessary EPSDT services and make them available 24 hours a day, 7 days a week, to its beneficiaries.

119.  Defendant BCBSNM failed to satisfy its contractual obligations to furnish the requisite private duty nursing services to Plaintiff A.C., which she expects and relies upon for her medical needs.

120.  Should Plaintiff A.C. not receive requisite medically necessary in-home nursing services, she may need to go to an institution or otherwise face a life-threatening circumstance.

121.  Defendants HSD and Secretary Scrase have failed to arrange for Plaintiff A.C. medically necessary nursing services, putting her at risk of institutionalization or injury.

**Plaintiff C.V.**

122.  Plaintiff C.V.  is a three-year-old boy whose medical diagnoses include: Trisomy 21, nonmosaicism (meiotic nondisjunction); Seizure activity refractory to multiple medications;

Developmental delay, and Gastrostomy tube dependence. He also attends preschool at the New Mexico School for the Blind.

123.  C.V. lives with his parents in Sandia Park, New Mexico. His mother and father are dedicated parents who devote themselves not only to C.V.'s care, but also to service to the community as law enforcement personnel.

124.  C.V. is a Medically-Fragile Waiver participant and Centennial Care 2.0 beneficiary under Defendant Presbyterian's managed care plan.

125.  Based upon his current Comprehensive Needs Assessment and Level of Care determination, Presbyterian has established that C.V. requires 173 hours per month of private duty nursing services.

126.  On March 25, 2022, C.V. through his parents submitted a request to Defendant Presbyterian to satisfy its obligation to provide the in-home nursing hours they have approved.

127. Currently, C.V is only able to access approximately 76 hours per month.

128. C.V. has faced denials of expected private duty nursing services in the past.

129. On June, 30, 2020, C.V. was approved by Defendant Presbyterian to receive 30 hours per week of private duty nursing and faced an average shortfall of 11 hours per week.

130. On April 13, 2021, C.V. was approved by Defendant Presbyterian to receive 40 hours per week of private duty nursing and faced an average shortfall of 21 hours per week.

131. On March 25, 2022, C.V., through his mother and father, sent a demand to Defendant Presbyterian to furnish the PDN hours of which he was being denied and reiterating Defendant Presbyterian's obligation to provide the service.

132. On April 7, 2022, Defendant Presbyterian responded to C.V.'s parents by letter acknowledging that C.V. was not receiving the PDN hours allocated to him, and that he in fact is

entitled to 173 hours per month, but simply cited nursing shortages as a reason for the denial and deemed the matter resolved.

133. When C.V. does not have access to the in-home nursing services he requires, C.V.'s mother and father endeavor to provide an approximation of needed nursing care, although they are not nurses.

134. C.V. is economically dependent on the earnings of his parents. An economic loss to his parents is a loss for C.V.

135. Because medically-necessary nursing hours are not provided, C.V.'s parents have had to forgo economic opportunities to care for C.V. at home.

136. C.V.'s mother had to give up a high-level position to take a lower paying position that provides more flexibility for leave, and has since used up all her earned leave.

137. C.V.'s father has taken time off work serving the community as a law enforcement officer in order to tend to C.V.'s care during times which an in-home nurse would otherwise cover.

138. C.V.'s father may now have no option but to accept an early retirement to care for C.V. when a nurse otherwise would.

139. Defendant Presbyterian failed to satisfy its contractual obligations to furnish the requisite private duty nursing services to Plaintiff C.V., services which C.V. expects and relies upon for his medical needs.

140. Should Plaintiff C.V. not receive requisite medically necessary in-home nursing services, he may need to go to an institution or otherwise face a life-threatening circumstance.

141. This is also evinced by the fact that he is on a HCBS Waiver, via the Medically Fragile Waiver program through Defendant HSD. *See* 8.290.400.10 (C)(2)(a).

142.  Defendants HSD and Secretary Scrase have failed to arrange for Plaintiff C.V. medically necessary nursing services, putting him at risk of institutionalization or injury.

**Plaintiff M.G.**

143.  Plaintiff M.G. is a 3-year-old Medically Fragile Waiver participant and Centennial Care 2.0 beneficiary under Defendant Western Sky's managed care plan. She is diagnosed with Chronic Lung Disease, Esophageal Reflux, Global Developmental Delay, Periventricular Leukomalacia, Generalized Seizure Disorder, for which she requires feeding by gastrostormy tube, H/O tracheostormy, and ventilator dependency. She resides at home with her mother and father.

144.  According to Plaintiff M.G.'s treatment plan, or Individualized Service Plan, conducted by UNM Center for Developmental Disability on April 26, 2021, Plaintiff M.G. requires 84 hours of home healthcare, including in-home Private Duty Nursing ("PDN"), per week. This is reflected in her Comprehensive Needs Assessment and Level of Care Determination approved by Defendant Western Sky.

145.  Although M.G. was approved to receive the PDN hours by Defendant Western Sky, she has faced an average short fall of 38.67 hours per week.

146.  During May of 2021 Plaintiff M.G.'s mother contacted Defendant Western Sky on behalf of Plaintiff M.G., informing Defendant Western Sky that Plaintiff M.G. was not receiving sufficient hours of in-home PDN hours as Plaintiff M.G. was only able to access 80 of the 364 hours approved per month, and requested that Defendant Western Sky furnish the requisite hours.

147. On August 13, 2021, Plaintiff M.G.'s mother wrote to Defendant Western Sky on behalf of Plaintiff M.G. reiterating that Plaintiff M.G. was only able to access 80 of the 364 hours of in-home nursing for the prior eight (8) months and again affirmatively requested that Defendant Western Sky furnish the requisite medical care, as an approved covered service, which had been previously requested.

148. On September 3, 2021 Plaintiff M.G.'s mother wrote again to Defendant Western Sky on behalf of Plaintiff M.G., having not received a response from her prior requests, and again specified that Plaintiff M.G. was not receiving medically necessary covered services, specifically the requisite private-duty nursing hours.

149. On October 1, 2021, Defendant Western Sky sent a letter to Plaintiff M.G.'s mother, in which Defendant Western Sky acknowledged the request for the private-duty nursing hours. In this letter, Defendant Western Sky indicated their resolution to the request was made by reaching out to their Provider Relations Department who in turn contacted the private duty nursing agency which cited nursing shortages.

150. On November 30, 2021, Plaintiff M.G., through counsel, sent a letter to Defendant Western Sky, reiterating the denial of in-home nursing services and indicating that Plaintiff M.G. was only receiving 60 hours of in-home nursing per week, when she had been budgeted and approved for 84 hours.

151. Plaintiff M.G.'s most recent ISP of March 25, 2022, does not change the required amount of in-home nursing hours from the previous year.

152. As of filing this complaint, Plaintiff M.G. is only provided access to 79 hours per week of the 84 medically necessary nursing hours of which she is approved for.

153.   When M.G. does not have access to in-home nursing services, M.G.'s mother must assume the duties of nursing care, although she is not a nurse.

154.   By virtue of the fact that Plaintiff M.G. is on a HCBS Waiver, via the Medically-Fragile Waiver through Defendant HSD, she is at risk of institutionalization if she does not receive her medically necessary community-based services. *See* 8.290.400.10 (C)(2)(a).

155.   Under its Medicaid Managed Care Services Agreement with Defendant HSD, Defendant Western Sky is required to furnish medically necessary EPSDT services and make them available 24 hours a day, 7 days a week, to its beneficiaries.

156.   Defendant Western Sky failed to satisfy its contractual obligations to furnish the requisite private duty nursing services to Plaintiff M.G., which she expects and relies upon for her medical needs.

157.   Should Plaintiff M.G. not receive requisite medically necessary in-home nursing services, she may need to go to an institution or otherwise face a life-threatening circumstance.

158.   Defendants HSD and Secretary Scrase have failed to arrange for Plaintiff M.G.'s medically necessary nursing services, putting her at risk of institutionalization or injury.

## FIRST CAUSE OF ACTION
**(Declaratory judgment action to declare the contract enforcement rights of Plaintiffs and Class pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201)**

159.   Plaintiffs hereby re-allege and incorporate by reference the foregoing paragraphs of this Complaint as though fully set forth herein.

160.   Under the Declaratory Judgment Act, "[i]n a case of actual controversy within its jurisdiction...any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party." 28 U.S.C. § 2201(a).

161.  Within each Defendant MCO's Managed Care Service Agreement ("Contract") with HSD contains a Section 7.12.2, stating: "No Third-Party Beneficiaries Only the Parties to this Agreement, and their successors in interest and assigns, have any rights or remedies under, or by reason of, this Agreement."

162.  The federal government is not a party to this contract and the place of contract is the State of New Mexico. Thus, the applicable law in construing the meaning and validity of this Contract is state law. *See Tucker v. R.A. Hanson Co., Inc.*, 956 F.2d 215, 217 (10th Cir. 1992).

163.  Section 7.12.2 creates an explicit and obvious adverse legal interest for the enforcement rights of third-party beneficiaries to the exclusive benefit of signatories to the Contract.

164.  The application of this provision threatens the right of Medicaid managed care beneficiaries, such as Plaintiffs and Class members, to immediate enforcement of the Contract terms, as intended beneficiaries to the Contract.

165.  Section 7.12.2 contravenes the statutory law and public policy of NMSA § 59A-57-9 (C), which states:

> To protect and enforce an enrollee's rights in a managed health care plan, an individual enrollee participating in or eligible to participate in a managed health care plan shall be treated as a third-party beneficiary of the managed health care plan contract between the plan and the party with which the plan directly contracts. *An individual enrollee may sue to enforce the rights provided in the contract that governs the managed health care plan*[.]

NMSA § 59A-57-9 (C)(emphasis added).

166.  Section 7.12.2 is unenforceable because it confers benefits at the same time illegally and exclusively divesting beneficiaries of any remedy under the agreement to enforce its terms.

167.  Public policy is not served by unlawfully limiting the public's rights to enforce receipt of public benefits.

168.  Moreover, HSD Defendant lacked contractual authority to disclaim third-party beneficiary rights under Section 7.12.2.

169. "Subject to the constitution of New Mexico, the human services department has the power to…make contracts as authorized in Chapter 27 NMSA 1978 to carry out the purposes of that chapter." NMSA 1978 § 27-1-2 (B)(4)

170. "The Legislature [] created the New Mexico Human Services Department (HSD), NMSA 1978, § 27–1–1 (1977), to work with the federal government in administering public assistance programs." *State ex rel. Taylor v. Johnson*, 1998-NMSC-015, ¶ 7, 125 N.M. 343, 347, 961 P.2d 768, 772.

171.  Accordingly, the statutory contractual authority "merely recognize[s] that HSD acts with the federal government to cooperatively administer certain public assistance programs such as [] Medicaid." *Id*. at ¶ 35.

172.  No federal requirement or permission exists, for states administering a Medicaid plan, to limit rights of third-party beneficiaries to a state contract with a managed care organization.

173.  Thus, Section 7.12.2 serves no cognizable purpose towards cooperating with the federal government, exceeding the authority conferred by the New Mexico state legislature.

174.  Because Section 7.12.2 of the Contract is illegal, unconscionable, and made without legal authority, the provision cannot deprive Plaintiffs and Class members' rights to enforce the terms of the Contract.

175.  Plaintiffs and Class members are entitled to appropriate relief under the Declaratory Judgment Act, 28 U.S.C. § 2201-2202.

## SECOND CAUSE OF ACTION
**(Subclass 1 Third-party beneficiary claim against Defendant BCBSNM for breach of state Medicaid Managed Care Services Agreement)**

176.  Plaintiffs and Subclass 1 members hereby re-allege and incorporate by reference the foregoing paragraphs of this Complaint as though fully set forth herein.

177.  Defendant BCBSNM entered into a contract with Defendant HSD and Defendant David Scrase "for the purpose of creating a network of health care Providers to provide services to Medicaid-eligible Recipients that will or are likely to reduce health care costs, improve quality of care or improve access to care[.]" *See* Defendant BCBSNM Medicaid Managed Care Services Agreement, Recitals,p.5.

178.  Pursuant to the Contract, Defendant BCBSNM's obligation to provide medically necessary services include:

> [T]he delivery of federally mandated EPSDT services as set forth in Section 1902(a)(10) and 1905(r) of the Social Security Act. THE CONTRACTOR agrees to meet all federal requirements of the EPSDT program pursuant to 42 C.F.R.s § 441.61 through § 441.62. THE CONTRACTOR shall adhere to the State's periodicity schedules (as recommended by the American Academy of Pediatrics and Bright Futures) for eligible Members under twenty-one (21) years of age; and
>
> Services shall be available twenty-four (24) hours, seven (7) days a week, when medically necessary.

*See* 4.5.2.1.4-5, Defendant BCBSNM's Medicaid Managed Care Services Agreement.

179.  The EPSDT benefit includes private duty nursing necessary to ameliorate, correct, or maintain a child's condition. *see* 42 U.S.C. § 1396d(a)(8).

180.  Defendant BCBSNM has failed to provide Subclass 1 members medically necessary private duty nursing services.

181. Pursuant to the Contract:

The CONTRACTOR shall be deemed to have breached this Agreement if any of the following occurs:

The CONTRACTOR fails to perform in accordance with any term or provision of the Agreement;

The CONTRACTOR renders only partial performance of any term or provision of the Agreement; or

The CONTRACTOR engages in any act prohibited or restricted by the Agreement.

*See* 7.6.2.1, Defendant BCBSNM's Medicaid Managed Care Services Agreement.

182. Defendant BCBSNM has breached the Contact by failing to satisfy the terms set forth in section 4.5.2.1.4-5 of the Contract.

183. The Medicaid Managed Care Services Agreement further requires that Defendant BCBSNM agree to comply with:

Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. 794, which prohibits discrimination on the basis of handicap in programs and activities receiving or benefiting from federal financial assistance, and regulations issued pursuant thereto, 45 C.F.R. § 84;
…

Titles II and III of the Americans with Disabilities Act, 42 U.SC. 12101 et seq., and regulations issued pursuant thereto, 28 C.F.R.s § 35 and § 36; [and]
…

Patient Protection and Affordable Care Act (PPACA)[.]

*See* Defendant BCBSNM Medicaid Managed Care Services Agreement, 7.5 *Applicable Laws and Regulations*.

184. For the reasons set forth in this Complaint and by incorporation of allegations in the Sixth, Seventh, and Eighth Causes of Action of this Complaint,

35

Defendant BCBSNM stands in breach of Section 7.5 of its Medicaid Managed

Care Services Agreement.

185.  Defendant BCBSNM's breach has caused harm to Subclass 1

members.

186.  Defendant BCBSNM's failure to provide in-home nursing to

Subclass 1 members was intentional and willful, done with knowledge of and

utter indifference to its harmful consequences, and done with disregard for the

rights of Subclass 1 members.

187.  Subclass 1 members are entitled to declaratory relief, injunctive

relief, nominal damages, and punitive damages.

### THIRD CAUSE OF ACTION
**(Subclass 2 Third-party beneficiary claim against Defendant Presbyterian for
breach of state Medicaid Managed Care Services Agreement)**

188.  Plaintiffs and Subclass 2 members hereby re-allege and incorporate by reference the

foregoing paragraphs of this Complaint as though fully set forth herein.

189.  Defendant Presbyterian entered into a contract with Defendant HSD and Defendant

David Scrase "for the purpose of creating a network of health care Providers to provide services

to Medicaid-eligible Recipients that will or are likely to reduce health care costs, improve quality

of care or improve access to care[.]" *See* Defendant Presbyterian Medicaid Managed Care

Services Agreement, Recitals,p.5.

190. Pursuant to the Contract, Defendant Presbyterian's obligation to provide medically

necessary services include:

> [T]he delivery of federally mandated EPSDT services as set forth in
> Section 1902(a)(10) and 1905(r) of the Social Security Act. The CONTRACTOR
> agrees to meet all federal requirements of the EPSDT program pursuant to 42

C.F.R.s § 441.61 through § 441.62. The CONTRACTOR shall adhere to the State's periodicity schedules (as recommended by the American Academy of Pediatrics and Bright Futures) for eligible Members under twenty-one (21) years of age; and

Services shall be available twenty-four (24) hours, seven (7) days a week, when medically necessary.

*See* 4.5.2.1.4-5, Defendant Presbyterian's Medicaid Managed Care Services Agreement.

191.  The EPSDT benefit includes private duty nursing necessary to ameliorate, correct, or maintain a child's condition. See 42 U.S.C. § 1396d(a)(8).

192.  Defendant Presbyterian has failed to provide Subclass 2 members medically necessary private duty nursing services.

193.  Pursuant to the Contract:

The CONTRACTOR shall be deemed to have breached this Agreement if any of the following occurs:

The CONTRACTOR fails to perform in accordance with any term or provision of the Agreement;

The CONTRACTOR renders only partial performance of any term or provision of the Agreement; or

The CONTRACTOR engages in any act prohibited or restricted by the Agreement.

*See* 7.6.2.1, Defendant Presbyterian's Medicaid Managed Care Services Agreement.

194. Defendant Presbyterian has breached the Contact by failing to satisfy the terms set forth in section 4.5.2.1.4-5 of the Contract.

195. The Medicaid Managed Care Services Agreement further requires that Defendant Presbyterian agree to comply with:

Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. 794, which prohibits discrimination on the basis of handicap in programs

and activities receiving or benefiting from federal financial
assistance, and regulations issued pursuant thereto, 45 C.F.R. § 84;
…

Titles II and III of the Americans with Disabilities Act, 42
U.SC. 12101 et seq., and regulations issued pursuant thereto, 28
C.F.R.s § 35 and § 36; [and]
…

Patient Protection and Affordable Care Act (PPACA)[.]

*See* Defendant Presbyterian Medicaid Managed Care Services Agreement, 7.5
*Applicable Laws and Regulations*.

196. For the reasons set forth in this Complaint and by incorporation of
allegations in Sixth, Seventh, and Eighth Causes of Action of this Complaint,
Defendant Presbyterian stands in breach of Section 7.5 of its Medicaid Managed
Care Services Agreement.

197.  Defendant Presbyterian's breach has caused harm to Subclass 2
members.

198.  Defendant Presbyterian's failure to provide in-home nursing to
Subclass 2 members was intentional and willful, done with knowledge of and
utter indifference to its harmful consequences, and done with disregard for the
rights of Subclass 2 members.

199.  Subclass 2 members are entitled to declaratory relief, injunctive
relief, nominal damages, and punitive damages.

## FOURTH CAUSE OF ACTION
**(Subclass 3 Third-party beneficiary claim against Defendant Western Sky for breach of state Medicaid Managed Care Services Agreement)**

200. Plaintiffs and Subclass 3 members hereby re-allege and incorporate by reference the foregoing paragraphs of this Complaint as though fully set forth herein.

201. Defendant Western Sky entered into a contract with Defendant HSD and Defendant David Scrase "for the purpose of creating a network of health care Providers to provide services to Medicaid-eligible Recipients that will or are likely to reduce health care costs, improve quality of care or improve access to care[.]" *See* Defendant Western Sky Medicaid Managed Care Services Agreement, Recitals,p.5.

202.  Pursuant to the Contract, Defendant Western Sky's obligation to provide medically necessary services include:

> [T]he delivery of federally mandated EPSDT services as set forth in Section 1902(a)(10) and 1905(r) of the Social Security Act. The CONTRACTOR agrees to meet all federal requirements of the EPSDT program pursuant to 42 C.F.R.s § 441.61 through § 441.62. The CONTRACTOR shall adhere to the State's periodicity schedules (as recommended by the American Academy of Pediatrics and Bright Futures) for eligible Members under twenty-one (21) years of age; and

> Services shall be available twenty-four (24) hours, seven (7) days a week, when medically necessary.

*See* 4.5.2.1.4-5,Defendant Western Sky's Medicaid Managed Care Services Agreement.

203.  The EPSDT benefit includes private duty nursing necessary to ameliorate, correct, or maintain a child's condition. See 42 U.S.C. § 1396d(a)(8).

204.  Defendant Western Sky has failed to provide Subclass 3 members medically necessary private duty nursing services.

205.  Pursuant to the Contract:

The CONTRACTOR shall be deemed to have breached this Agreement if any of the following occurs:

The CONTRACTOR fails to perform in accordance with any term or provision of the Agreement;

The CONTRACTOR renders only partial performance of any term or provision of the Agreement; or

The CONTRACTOR engages in any act prohibited or restricted by the Agreement.

*See* 7.6.2.1, Defendant BCBSNM's Medicaid Managed Care Services Agreement.

206. Defendant Western Sky has breached the Contact by failing to satisfy the terms set forth in section 4.5.2.1.4-5 of the Contract.

207.  The Medicaid Managed Care Services Agreement further requires that Defendant Western Sky agree to comply with:

Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. 794, which prohibits discrimination on the basis of handicap in programs and activities receiving or benefiting from federal financial assistance, and regulations issued pursuant thereto, 45 C.F.R. § 84;
…

Titles II and III of the Americans with Disabilities Act, 42 U.SC. 12101 et seq., and regulations issued pursuant thereto, 28 C.F.R.s § 35 and § 36; [and]
…

Patient Protection and Affordable Care Act (PPACA)[.]

*See* Defendant BCBSNM Medicaid Managed Care Services Agreement, 7.5 *Applicable Laws and Regulations*.

208.  For the reasons set forth in this Complaint and by incorporation of allegations in Sixth, Seventh, and Eighth Causes of Action of this Complaint,

Defendant Western Sky stands in breach of Section 7.5 of its Medicaid Managed

Care Services Agreement.

209.  Defendant Western Sky's breach has caused harm to Subclass 3

members.

210.  Defendant Western Sky's failure to provide in-home nursing to

Subclass 3 members was intentional and willful, done with knowledge of and

utter indifference to its harmful consequences, and done with disregard for the

rights of Subclass 3 members.

211.  Subclass 3 members are entitled to declaratory relief, injunctive

relief, nominal damages, and punitive damages.

## FIFTH CAUSE OF ACTION
**(Plaintiffs and Class Third-party beneficiary claim against Defendant Scrase and Defendant HSD for breach of state Medicaid Managed Care Services Agreement)**

212.  Plaintiffs hereby re-allege and incorporate by reference the foregoing paragraphs of

this Complaint as though fully set forth herein.

213.  Defendant HSD and Defendant David Scrase entered into a contract with

Defendants MCOs "for the purpose of creating a network of health care Providers to provide

services to Medicaid-eligible Recipients that will or are likely to reduce health care costs,

improve quality of care or improve access to care[.]" *See* Defendants MCOs' Medicaid Managed

Care Services Agreement, Recitals, p.5.

214.  The Contract provides:

> In the event of Breach by the CONTRACTOR, HSD shall provide the
> CONTRACTOR written notice of the Breach and thirty (30) Calendar Days to
> cure the Breach described in the notice. In the event that the CONTRACTOR fails
> to cure the Breach within the time period provided, then HSD shall have available
> any and all remedies described herein and available at law.

*See* Section 7.6.2.5. Defendants MCOs' Medicaid Managed Care Services Agreement.

215. By reference and incorporation of the Second, Third, and Fourth cause of action of this Complaint, Defendants MCOs breached its contract with Defendant HSD and Defendant Scrase.

216. Upon information and belief, Defendant Scrase and Defendant HSD have failed to take action under the Contract to provide written notice of the breach to Defendants MCOs.

217. Defendant Scrase and Defendant HSD did not provide Defendants MCO's thirty (30) calendar days for Defendants MCOs to cure their breach.

218. Accordingly, Defendant Scrase and Defendant HSD breached the Contract.

219. Defendant Scrase's and Defendant HSD's breach has caused harm to Plaintiffs and Class members.

220. At all times hereto, Defendant David Scrase was acting under color of state law.

221. Plaintiffs and Class members are entitled to declaratory relief and injunctive relief.

### SIXTH CAUSE OF ACTION
**(Plaintiffs and Class claim against Defendant Secretary David Scrase for violation of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12131 et seq.)**

222. Plaintiffs and Class hereby re-allege and incorporate by reference the foregoing paragraphs of this Complaint as though fully set forth herein.

223. Pursuant to Title II of the ADA, no qualified person with a disability shall be subjected to discrimination by a public entity. 42 U.S.C. §§ 12131-32.

224. This requires that "[a] public entity [] administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities."28 C.F.R. § 35.130(d).

225.  Plaintiffs and Class are "qualified individuals with a disability" under the ADA because they have physical and/or mental impairment which substantially limits one or more major life activities.

226. Plaintiffs and Class are substantially limited in their ability to live independently without support.

227. Plaintiffs and Class meet eligibility standards for Centennial Care 2.0 community-based services necessary to maintain living within their homes.

228. Defendant Secretary Scrase oversees HSD which is a state government entity responsible for administering New Mexico's Medicaid program.

229. Accordingly, HSD is a "public entity" within the meaning of Title II of the ADA. 42 U.S.C. §§ 12131(1)(A) and (B) (1990).

230. The ADA requires Defendant Scrase to administer HSD's programs to enable qualified individuals with disabilities to live in the most integrated setting suitable to their needs.

231. Defendant Scrase's failure to arrange for (directly or through referral to appropriate agencies, organizations, or individuals) corrective treatment (private duty nursing services) for qualified individuals with disabilities has placed Plaintiffs and Class at risk of institutionalization in violation of the ADA's integration mandate.

232.  By failing to take necessary action to arrange for medically necessary private duty nursing services, Defendant Scrase has discriminated against qualified individuals with disabilities, such as Plaintiffs and Class members.

233. Defendant Scrase's administration of HSD has led to its failure to take necessary action to arrange for medically necessary private duty nursing services. This has subjected Plaintiffs, Class, and other qualified individuals with disabilities to the risk of unnecessary institutionalization.

234.  Defendant Scrase's actions are in violation of Title II of the ADA.

235. Plaintiffs and Class are entitled to declaratory relief, injunctive relief, and reasonable attorneys' fees and costs incurred in bringing this action pursuant to 42 U.S.C. § 12133

**SEVENTH CAUSE OF ACTION**
**(Plaintiffs and Class claim against Defendants HSD and Secretary David Scrase for violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 et seq.)**

236. Plaintiffs and Class hereby re-allege and incorporate by reference the foregoing paragraphs of this Complaint as though fully set forth herein.

237. Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 ("Section 504"), prohibits public entities and recipients of federal funds from discriminating against any individual by reason of disability.

238.  Pursuant to Section 504, public and federally-funded entities must administer programs and activities "in the most integrated setting appropriate to the needs of the qualified individual with a disability." See 28 C.F.R. § 41.51(d) (1981).

239. Plaintiffs and Class are "qualified individuals with a disability" under Section 504 of the Rehabilitation Act of 1973 because they have physical and/or mental impairment which substantially limits one or more major life activities.

240.  Plaintiffs and Class members meet eligibility standards for Centennial Care 2.0 community-based services necessary to maintain living within their homes.

241. Defendant HSD is a recipient of federal funds under the Rehabilitation Act and is therefore a government entity subject to Section 504. 29 U.S.C. § 794(b) (2014).

242.  Defendant Scrase's failure to arrange for (directly or through referral to appropriate agencies, organizations, or individuals) corrective treatment (private duty nursing services) for qualified individuals with disabilities such as Plaintiffs and Class has placed them at risk of institutionalization in violation of the Section 504's integration mandate.

243. By failing to take necessary action to arrange for medically necessary private duty nursing services, Defendant Scrase has discriminated against qualified individuals with disabilities, such as Plaintiffs.

244. Defendant Scrase's administration of HSD has led to its failure to take necessary action to arrange for medically necessary private duty nursing services and has subjected Plaintiffs, Class, and other qualified individuals with disabilities to the risk of unnecessary institutionalization.

245.  Defendant Scrase's actions are in violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

246. Plaintiffs and Class members are entitled to declaratory relief and injunctive relief.

**EIGHTH CAUSE OF ACTION**
**(Plaintiffs and Class claim against Defendants HSD and Secretary David Scrase for violation of Section 1557of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116)**

247. Plaintiffs and Class hereby re-allege and incorporate by reference the foregoing paragraphs of this Complaint as though fully set forth herein.

248. Section 1557 of the Patient Protection and Affordable Care Act provides that:

> Except as otherwise provided for in this title (or an amendment made by this title), an individual shall not, on the ground prohibited under …

45

> section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794) … be
> excluded from participation in, be denied the benefits of, or be subjected
> to discrimination under, any health program or activity, any part of which
> is receiving Federal financial assistance, including credits, subsidies, or
> contracts of insurance, or under any program or activity that is
> administered by an Executive Agency or any entity established under this
> title (or amendments). The enforcement mechanisms provided for and
> available under … section 504 … shall apply for purposes of violations of
> this subsection.

249. Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 ("Section 504"), prohibits public entities and recipients of federal funds from discriminating against any individual by reason of disability.

250. Pursuant to Section 504, public and federally-funded entities must administer programs and activities "in the most integrated setting appropriate to the needs of the qualified individual with a disability." See 28 C.F.R. § 41.51(d) (1981).

251.  Plaintiffs and Class are "qualified individuals with a disability" under Section 504 of the Rehabilitation Act of 1973 because they have physical and/or mental impairment that substantially limits one or more major life activities.

252. Plaintiffs and Class members meet eligibility standards for Centennial Care 2.0 community-based services necessary to maintain living within their homes.

253. Defendant HSD is a recipient of federal funds under the Rehabilitation Act and is therefore a government entity subject to Section 504 and, thus, subject to Section 1557.

254. Defendant Scrase's failure to arrange for (directly or through referral to appropriate agencies, organizations, or individuals) corrective treatment (private duty nursing services) for qualified individuals with disabilities such as Plaintiffs and Class members has placed them at risk of institutionalization in violation of Section 504's integration mandate.

46

255. By failing to take necessary action to arrange for medically necessary private duty nursing services, Defendant Scrase has discriminated against qualified individuals with disabilities, such as Plaintiffs and Class members.

256. Defendant Scrase's administration of HSD has led to its failure to take necessary action to arrange for medically necessary private duty nursing services and has subjected Plaintiffs, Class members and other qualified individuals with disabilities to the risk of unnecessary institutionalization.

257. Defendant Scrase's actions are in violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

258. Because Defendant Scrase violated Section 504 through his administrative methods and actions, HSD is in violation of Section 1557 of the ACA.

259. Plaintiffs and Class are entitled to declaratory relief and injunctive relief.

## NINTH CAUSE OF ACTION
**(Plaintiffs and Class claim against Defendant Scrase for Violation of the Medicaid Act, Early and Periodic Screening, Diagnostic and Treatment (EPSDT) Services, 42 U.S.C. § 1396 et seq.)**

260. Plaintiffs and Class hereby re-allege and incorporate by reference the foregoing paragraphs of this Complaint as though fully set forth herein.

261. Defendant Scrase, while acting under color of state law, has failed to supervise and correct practices of HSD that deprive Plaintiffs and Class members statutory rights found in EPSDT provisions of the Medicaid Act, 42 U.S.C. §§ 1396a(a)(10)(A), 1396d(a)(4)(B), and 1396a(a)(43)(C).

262. Defendant Scrase has failed to "arrange for (directly or through referral to appropriate agencies, organizations, or individuals) corrective treatment [in-home shift nursing services]" to Plaintiffs and Class, per 42 U.S.C. § 1396a(a)(43)(C).

263. Defendants Scrase's violations are knowing, and having acquiesced to the deprivation of Plaintiffs' and Class members' statutory rights, Plaintiffs are entitled to relief under of 42 U.S.C. § 1983.

## DEMAND FOR A JURY TRIAL

264.  Pursuant to Fed. R. Civ. P. 38, Plaintiffs and Class members demand a trial by jury of all issues herein triable to a jury.

## REQUEST FOR RELIEF

265.  WHEREFORE, Plaintiffs and Class request the following relief and remedies:

266.  Certify the proposed Class and Subclasses;

267.  Declare unlawful the provision of Defendants' Medicaid Managed Care Services Agreement disclaiming third-party beneficiary enforcement rights;

268.  Declare in favor of the Plaintiffs and the Class that they are the intended beneficiaries of the Defendants' Medicaid Managed Care Services Agreements, and Defendants MCOs have breached their respective agreements by failing to furnish and fulfill authorized private-duty nursing hours, directly or through referral to appropriate agencies, organizations, or individuals, to Plaintiffs and Class members;

269.  Declare in favor of Plaintiffs and the Class that Defendants MCOs in failing to furnish and fulfill authorized private-duty nursing hours to Plaintiffs and Class members, acted intentionally, willfully, with knowledge of and utter indifference to its harmful consequences, and did so with disregard for the rights of Plaintiffs and Class members;

270.  Declare in favor of Plaintiffs and the Class that HSD Defendants are failing to comply with the requirements of the Medicaid Act, the Americans with Disabilities Act, the Rehabilitation Act, and the Patient Protection and Affordable Care Act;

271.  Issue preliminary and permanent injunctive relief requiring Defendants to furnish and fulfill authorized private-duty nursing hours, directly or through referral to appropriate agencies, organizations, or individuals, to Plaintiffs and Class members;

272.  Order equitable relief requiring Defendants to calculate for each Class member the appropriate private duty nursing hours which Defendants have failed to fulfill within two (2) years preceding this action, and further requiring Defendants to implement procedures that will allow class members to utilize those unfulfilled nursing hours at their discretion;

273. Assume continuing jurisdiction as may be necessary to monitor and enforce any relief granted;

274.  Award nominal damages pursuant to § 59A-57-9(D) &(E) NMSA with respect to the Second, Third, and Fourth Causes of Action in this Complaint;

275.  Award punitive damages against Defendants MCOs with respect to Second, Third, and Fourth Causes of Action in this Complaint, in an amount to be determined at trial;

276.  Award costs and attorneys' fees and expenses pursuant to 42 U.S.C. § 12205; Sec. 504 of the Rehabilitation Act, 29 U.S.C. § 794a, 42 U.S.C. § 1988, and any other applicable provisions of law; and

277.  Such other relief as this Court deems just and proper.

DATED: April 28, 2022                    Respectfully Submitted,

DISABILITY RIGHTS NEW MEXICO

/s/ Maxwell Kauffman
Maxwell Kauffman
Laurel Nesbitt
Jason C. Gordon
Jesse D. Clifton
Holly J. Mell
3916 Juan Tabo Blvd., NE
Albuquerque, NM 87111
(505) 256-3100
(505) 256-3184 (Fax)
Attorneys for Disability Rights New Mexico
Attorneys for Plaintiffs

NEW MEXICO CENTER ON LAW AND POVERTY

/s/  Stephanie Welch
Stephanie Welch
301 Edith Blvd NE
Albuquerque, NM 87102
(505) 255-2840
(505) 300-2785 (fax)
Attorney for Plaintiffs