UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

| | |
|---|---|
| M.G., et al., )<br>    Plaintiffs, )<br>)<br>v. )<br>)<br>DAVID SCRASE, et al., )<br>    Defendants. ) | Case No. 1:22-cv-00325-LF-GJF |

**JOINT MOTION TO DISMISS PLAINTIFFS' CLAIMS AGAINST PRESBYTERIAN HEALTH PLAN, INC., HCSC INSURANCE SERVICES COMPANY, AND WESTERN SKY COMMUNITY CARE, INC.**

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defendants Western Sky Community Care, Inc. ("Western Sky"), HCSC Insurance Services Company operating as Blue Cross and Blue Shield of New Mexico ("HISC"), and Presbyterian Health Plan, Inc. ("Presbyterian" and collectively with Western Sky and HISC the "MCO Defendants"), respectfully request that the Court dismiss the First, Second, Third, and Fourth Causes of Action in the Complaint. Plaintiffs seek to enforce provisions of contracts between the MCO Defendants and the New Mexico Human Services Department ("HSD"). Plaintiffs are not parties to those contracts, and the contracts expressly provide that they grant no third-party beneficiary rights of enforcement. Nevertheless, Plaintiffs claim that they possess a statutory right to enforce the contracts. As described in more detail below, that argument lacks merit. Because Plaintiffs have no private right to litigate alleged breaches of the agreements between the MCOs and HSD, the Court should dismiss Plaintiffs' claims against the MCO Defendants. The Court also should dismiss Plaintiffs' claims for punitive damages, which are based on purely conclusory allegations that do not support the imposition of such damages. Plaintiffs oppose this Motion.

1

**BACKGROUND**

Federal law permits States to implement their Medicaid programs through a "managed care" model by contracting with managed care organizations ("MCOs"), and it provides an extensive framework of sanctions states may use to ensure MCO compliance with Medicaid's provisions. *See* 42 U.S.C. § 1396u-2. Through HSD, the State of New Mexico has contracted with the MCO Defendants to provide managed care to Medicaid-eligible New Mexicans. As relevant here, HSD entered into substantively similar Medicaid Managed Care Services Agreements with each of Western Sky, Presbyterian, and HISC (the "Agreements"). A true and accurate copy of the Western Sky Managed Care Services Agreement is attached as Exhibit A to this Motion.[1] In hundreds of pages of detail, the Agreements specify the services and procedures that the MCO Defendants must provide to Medicaid beneficiaries in New Mexico. *See id.*

The Agreements also contain detailed provisions regarding enforcement of the parties' contractual obligations, potential sanctions for non-compliance, and dispute-resolution procedures. *See* Ex. A, §§ 7.3, 7.11. These provisions reflect a carefully crafted balance between ensuring maximal contractual compliance and allowing for flexibility in the implementation of a complex, multi-faceted healthcare program. The Agreements also expressly disclaim the right of

---

[1] Plaintiffs did not attach a copy of the Agreements to their Complaint. However, the Agreements are central to Plaintiffs' claims against the MCO Defendants, and thus the Court can consider the text of the Agreements when resolving this motion to dismiss. *See, e.g., Raja v. Ohio Security Ins. Co.*, 305 F. Supp. 3d 1206, 1238 n.9 (D.N.M. 2018). The Agreements are matters of public record and can each be found at: https://www.hsd.state.nm.us/wp-content/uploads/WSCC-2.0-Contract-PSC-18-630-8000-0035-A5.pdf (Western Sky); https://www.hsd.state.nm.us/wp-content/uploads/PHP-2.0-Contract-PSC-18-630-8000-0034-A5.pdf (Presbyterian); https://www.hsd.state.nm.us/wp-content/uploads/BCBS-2.0-Contract-PSC-18-630-8000-0033-A5.pdf (HISC). Plaintiffs have (accurately) alleged that the Agreements are all "identical" with regard to provisions relevant to this Motion. Complaint, ¶ 82. Due to the length of the Agreements, Defendants have attached only one of the three identical Agreements. Plaintiffs have consented to the filing of an overlength exhibit to this Motion.

any non-party to enforce the Agreement as a third-party beneficiary. Ex. A, § 7.12.2. In particular, § 7.12.2—titled "No Third-Party Beneficiaries"—provides that "[o]nly the Parties to this Agreement, and their successors in interest and assigns, have any rights or remedies under, or by reason of, this Agreement." *Id.*[2]

Plaintiffs allege[3] they are minors who are eligible for Medicaid. *See* Complaint, ¶¶ 13–15.[4] The Managed Care Agreement requires the MCO Defendants to provide "early and periodic screening, diagnostic, and treatment services" ("EPSDT services") to Plaintiffs. *Id.* ¶¶ 86, 118, 139, 155. In Plaintiffs' telling, the MCO Defendants have failed to provide the full scope of those EPSDT services to Plaintiffs and thereby breached their obligations under the Agreements. *See, e.g., id.*, Second, Third, and Fourth Causes of Action.

Although the Agreements provide a mandatory process under which recipients can challenge an MCO's benefit decisions, followed by state administrative review if desired, Plaintiffs ignored that process before filing suit against the MCO Defendants for breach of contract, claiming that they are third-party beneficiaries entitled to enforce the Agreements. *See* Agreements § 4.16.1.1; Complaint, Second, Third, and Fourth Causes of Action. In addition, Plaintiffs have asserted a declaratory judgment claim against the MCO Defendants, seeking a declaration that § 7.12.2 of the Agreements—the provision disclaiming any third-party

---

[2] The term "Parties" is defined to include only HSD, the MCO Defendants, and the New Mexico Behavioral Health Purchasing Collaborative. *See* Ex. A, Recitals.
[3] This Rule 12(b)(6) motion requires the MCO Defendants to treat the allegations in the Complaint as true. However, the MCO Defendants contest the accuracy of key allegations in the Complaint, and nothing in this Motion should be construed as an admission that any allegation in the Complaint is true.
[4] Plaintiff Disability Rights New Mexico asserts only associational standing that is derivative of Medicaid-eligible minors. *See* Complaint, ¶¶ 17–18.

beneficiaries—is invalid and unenforceable.  *See* Complaint, First Cause of Action.  The Complaint does not assert any other claims against the MCO Defendants.

## ARGUMENT

The MCO Defendants move to dismiss the First, Second, Third, and Fourth Causes of action under Rules 12(b)(1) and 12(b)(6).[5]  All four claims rest on the erroneous assumption that New Mexico's Patient Protection Act ("PPA") grants Plaintiffs a private right of action to enforce the Agreements.  To the contrary, the PPA does not authorize third-party enforcement of managed-care agreements that are part of the State's Medicaid program.  Only HSD may enforce the Agreements against the MCO Defendants.  These claims should be dismissed.  Moreover, Plaintiffs' declaratory judgment claim should also be dismissed because the declaratory relief they seek either relates solely to a collateral legal issue or is entirely duplicative of their breach of contract claim.

I. **PLAINTIFFS ARE NOT THIRD-PARTY BENEFICIARIES OF THE MANAGED CARE AGREEMENTS AND DO NOT HAVE STANDING TO ENFORCE THE AGREEMENTS AGAINST THE MCO DEFENDANTS.**

As a general matter, only the parties to a contract may enforce that contract.  *Doña Ana Mut. Domestic Water Consumers Ass'n v. City of Las Cruces*, 516 F.3d 900, 906 (10th Cir. 2008)

---

[5] The cases have not taken an entirely uniform approach to whether a breach-of-contract plaintiff's third-party beneficiary status presents a threshold question of Article III standing (appropriate for a motion under Rule 12(b)(1)) or whether it is more appropriately presented under Rule 12(b)(6). *Compare, e.g.*, *Montoya ex rel. S.M. v. Española Pub. Sch. Dist.*, 861 F. Supp. 2d 1307 (D.N.M. 2012) (dismissing case based on lack of standing where plaintiffs lacked third-party beneficiary status); *Veterinary Pharms., Inc. v. Pugliese*, Civ. No. 03-838-MV/LCS, 2005 WL 8163653, at *9 (D.N.M. Sept. 28, 2005) (treating third-party beneficiary status as a question of Article III standing), *with Gorsuch, Ltd. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230 (10th Cir. 2014) (affirming dismissal under Rule 12(b)(6) for lack of third-party beneficiary status).  In this case, the applicable standard likely will not differ regardless of whether Rule 12(b)(1) or 12(b)(6) applies.  However, out of an abundance of caution, the MCO Defendants move for dismissal under both Rules.

4

(applying New Mexico law). While Plaintiffs acknowledge that they are not parties to the Agreements, they contend that they can enforce the Agreements as third-party beneficiaries. Under New Mexico law, only "*intended* third party beneficiaries have standing to seek enforcement of a contract to which he or she is not a party." *In re Tarango*, 424 B.R. 479, 491 (Bankr. D.N.M. 2010) (emphasis added). The burden is on Plaintiffs to show that they are intended beneficiaries to the operative contract. *Jaramillo v. Providence Washington Ins. Co.*, 871 P.2d 1343, 1349 (N.M. 1994). That is particularly so when a private party attempts to enforce a government contract. *See Charter Bank v. Francoeur*, 287 P.3d 333, 338 (N.M. Ct. App. 2012) (citing Restatement (Second) of Contracts § 313(2)(a) (2011) and holding that member of public "is not an intended third party beneficiary and cannot enforce a government contract unless the contract's terms provide for liability"). Here, the Agreements expressly provide that there are no intended third-party beneficiaries of the contracts. Ex. A, § 7.12.2.[6] Ordinarily, that fact alone would decisively defeat Plaintiffs' claim of third-party beneficiary status. *See, e.g., Estate of Stevens by and through Collins v. Bd. of Cnty. Comm'rs*, No. 13-cv-882-WJ/KK, 2014 WL 12785147, at *10–11 (D.N.M. Nov. 5, 2014); *see also Gorsuch, Ltd. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1238 (10th Cir. 2014) (reaching same result applying Colorado law); *Thompson v. Potter*, 268 P.3d 57, 61-62 (N.M. Ct. App. 2011) (refusing to permit third-party

---

[6] In addition, the Agreements make clear that the Parties intended that the state, and only the state, would have the ability to impose sanctions and enforce the requirements of the Agreements. In the event an MCO fails to comply, "**HSD** may impose, at **HSD's discretion** sanctions (inclusive of the specific monetary penalties and other penalties described in this Section 7.3)." *Id*. § 7.3.1.1 (emphasis added). Each of the sanctions later enumerated in the contract are ones that "**HSD** may impose." *See id.* § 7.3.3.1 (emphasis added). There are no provisions in the Agreements for private enforcement or imposition of sanctions.

5

plaintiff enforcement of contract between pharmacy consultant and nursing home because of explicit no-third-party-beneficiary clause).

However, Plaintiffs claim that a provision of New Mexico's Patient Protection Act ("PPA") grants them a private right to enforce State contracts with MCOs. In particular, Plaintiffs cite Section 59A-57-9 of the PPA, which provides:

> To protect and enforce an enrollee's rights in a managed health care plan, an individual enrollee participating in or eligible to participate in a managed health care plan shall be treated as a third-party beneficiary of the managed health care plan contract between the plan and the party with which the plan directly contracts. An individual enrollee may sue to enforce the rights provided in the contract that governs the managed health care plan[.]

NMSA 1978, § 59A-57-9(C) (1998). In Plaintiffs' view, this statute grants them third-party beneficiary status and a right to enforce the Managed Care Agreements and therefore renders any contractual disclaimer of third-party beneficiaries ineffectual.

Although this argument might have merit outside of the Medicaid context, Section 59A-57-10—which governs the applicability of the PPA to New Mexico's Medicaid program—forecloses the argument. In general, "[e]xcept as otherwise provided in this section [*i.e.*, § 59A-57-10], the provisions of the [PPA] apply to the medicaid program operation in the state." *Id.* § 59A-57-10(A). Here, the Agreements at issue are an integral part of the State's implementation of Medicaid in New Mexico. And three components of § 59A-57-10 dictate that the third-party beneficiary provision of § 59A-57-9 ***does not*** apply to managed care agreements in the Medicaid program.

*First*, § 59A-57-10 expressly provides that HSD "shall have ***sole authority*** to determine, establish and enforce . . . the scope, definitions and limitations of medicaid benefits." *Id.* § 59A-57-10(B) (emphasis added). In this litigation, Plaintiffs contend that they are entitled to more

expansive Medicaid benefits than the Defendants have provided them, and Plaintiffs seek to enforce their claimed right to receive those more expansive benefits. *See, e.g.*, Complaint, ¶¶ 144-146. In so doing, Plaintiffs plainly seek to "enforce . . . the scope[ and] definitions . . . of medicaid benefits." Moreover, Plaintiffs' claims necessarily require them to "determine" and "establish" "the scope, definitions and limitations of medicaid benefits." But § 59A-57-10(B) provides that HSD has "***sole authority***" to resolve such matters. Thus, the language about third-party beneficiaries in § 59A-57-9 does not create a private right of action for these Plaintiffs against the MCO Defendants.

 ***Second***, § 59A-57-10 provides that "[n]othing in the [PPA] shall be construed to limit the authority of [HSD] to administer the medicaid program, as required by law." § 59A-57-10(B). The federal Medicaid statute creates a detailed sanctions regime that States must use to ensure that MCOs comply with Medicaid managed care agreements. *See* 42 U.S.C. § 1396u-2(e). Exercising discretion about when and how to use these sanctions to ensure MCO compliance is a critical aspect of administering the Medicaid program, one expressly required by federal law. "The fact that the Medicaid statute authorizes such sanctions further underscores that it was Congress's intent for states themselves—rather than private third parties—to police compliance with the requirements of the Medicaid program." *Prince George's Hosp. Ctr. v. Advantage Healthplan Inc.*, 985 F. Supp. 2d 38, 50 (D.D.C. 2013) (Ketanji Brown Jackson, J.). Consistent with this discretion afforded by federal law, HSD has incorporated an enforcement regime into the Agreements that features several tiers of mechanisms to ensure contractual compliance, ranging from harsh sanctions to corrective action plans and notice of suspected breach. *See generally* Ex. A, § 7.3.

7

Allowing private citizens (let alone associations with supposed derivative standing) to take enforcement of the Agreements into their own hands would usurp HSD's enforcement discretion, thereby interfering with its authority to administer Medicaid. When administering and enforcing the Medicaid program, HSD must take into account the needs of *all* Medicaid beneficiaries, and it must consider both short-term and long-term effects of a particular course of action. In contrast, private parties may have the incentive to prioritize their own interests (or those of a small class) ahead of those of all other beneficiaries, and they may be inclined to focus on short-term needs rather than the long-term viability and success of the Medicaid program. Those effects would significantly hamper HSD's authority to administer Medicaid, and thus § 59A-57-10 prohibits non-party enforcement of the Agreements. Lest there be any question about Plaintiffs' intentions, their Fifth Cause of Action claims that **HSD** has breached the Managed Care Agreement by failing to take enforcement action against the MCO Defendants. *See* Complaint, Fifth Cause of Action. Allowing a third party like Plaintiffs to enforce the Agreements would deprive HSD of the enforcement discretion granted to it by federal law. Such an outcome would both violate the plain text of § 59A-57-10 and frustrate the specific intent of Congress. *See Prince George's Hosp.*, 985 F. Supp. 2d at 50.

***Third***, § 59A-57-10 expresses a clear intent that disputes regarding Medicaid benefits be resolved through the Public Assistance Appeals Act. *See* § 59A-57-10(C). That Act establishes prompt, low-cost administrative review where a person eligible for public benefits (including Medicaid benefits) has been denied benefits to which they are entitled. *See* NMSA 1978, § 27-3-3 (1991). Allowing Plaintiffs here to directly enforce the Agreements would enable Plaintiffs to circumvent the administrative appeals process that § 59A-57-10 expressly endorses. *See, e.g., George v. N.M. State Bd. of Educ.*, No. 99-1318 LH/RLP, 2001 WL 37125254, at *4 (D.N.M. Feb.

23, 2001) (dismissing parents' claim that state failed to provide needed educational services because parents never requested administrative hearing or submitted an appeal and therefore failed to exhaust administrative remedies available to them). Moreover, if Medicaid participants can directly enforce the Agreements, then the administrative appeal rights recognized in § 59A-57-10(C) would be entirely superfluous. Courts "interpret statutes to avoid rendering the Legislature's language superfluous." *Dep't of Game & Fish v. Rawlings*, 436 P.3d 741, 744 (N.M. Ct. App. 2018) (quotation omitted).

Viewed in light of the Public Assistance Appeals Act, the legislature's decision not to extend the third-party beneficiary and private enforcement provisions of § 59A-57-9 to the Medicaid program makes perfect sense. Medicaid enrollees in traditional managed care arrangements do not need third-party beneficiary rights to vindicate their coverage rights. Such enrollees, including members of the instant putative class, are statutorily enabled to seek legal redress for their MCOs' alleged failure to provide services via an administrative hearing under § 27-3-3, a process that is both faster and less expensive than litigation.[7]

For the foregoing reasons, the plain text of § 59A-57-10 dictates that the third-party beneficiary and enforcement provisions of § 59A-57-9 do not apply to the Medicaid program. Because Plaintiffs are not third-party beneficiaries of the Agreements, they cannot enforce those Agreements, and the Second, Third, and Fourth Causes of Action should be dismissed. Moreover, because the PPA does not confer third-party beneficiary status (or private enforcement rights) on

---

[7] To date, plaintiffs have not availed themselves of this avenue for redress. Had they done so and remained dissatisfied with the administrative decision, they would have then been entitled to judicial review of the administrative decision in the state district court. *See id.*; N.M.A.C. § 8.352.2.20.

Plaintiffs, § 7.12.2 of the Agreements does not conflict with the PPA, and the First Cause of Action should be dismissed.

## II. EVEN IF PLAINTIFFS WERE INTENDED THIRD-PARTY BENEFICIARIES OF THE AGREEMENTS, THEIR CLAIMS WOULD STILL FAIL BECAUSE THEY HAVE NOT COMPLIED WITH THE AGREEMENTS' MANDATORY DISPUTE RESOLUTION PROVISIONS.

The Agreements do not permit an aggrieved party to seek redress for breach directly from a court in the first instance. Instead, the Agreements—recognizing the complex nature of the Medicaid program—each contain an express "Disputes" provision prescribing the process that must be followed to resolve disputes, ideally without a need for judicial intervention. Ex. A, § 7.11. Lest there be any doubt about the mandatory nature of the Disputes provision, the Agreements expressly state that "failure to initiate or participate in any part of this process shall be deemed waiver of any claim." *Id.* § 7.11.3.7. New Mexico law is clear that plaintiffs asserting claims as third-party beneficiaries to a contract are treated the same as they would be if they were parties to the contract. *Leyba v. Whitley*, 907 P.2d 172, 175 (N.M. 1995) (third-party beneficiaries accorded only "traditional contract remedies"). But Plaintiffs have not even attempted to plead compliance with the Agreements' mandatory Disputes provision. Accordingly, Plaintiffs' breach of contract claims against the MCOs (the Second, Third, and Fourth Causes of Action) fail for this additional reason.

The Agreements' "Disputes" provision unambiguously mandates that "*any* . . . dispute concerning performance of the Agreement *shall* be reported in writing to the MAD Director within thirty (30) Calendar Days of the date the reporting Party knew of the activities or incident giving rise to the dispute." Ex. A, § 7.11.3.2 (emphasis added). When a dispute is reported, the MAD Director "*shall*" deliver a decision "to the Parties in writing within thirty (30) calendar days." *Id.* (emphasis added). That decision "*shall* be final and conclusive" unless "either Party files with the

10

Secretary of HSD a written appeal," in which case the Secretary or their designee "shall review the issues and evidence presented and issue a determination, in writing, within thirty (30) Calendar Days" which "shall conclude the administrative process." *Id.* §§ 7.11.3.2–5 (emphasis added). The failure to file a timely appeal to the Secretary of HSD is deemed acceptance of the decision and waiver of any further claim. *Id.* § 7.11.3.3. At the conclusion of this administrative process, the decision of the Secretary of HSD can then be appealed "to the District Court" where the decision is "subject to a record rather than de novo review." *Id.* § 7.11.3.5.

The Agreements' repeated use of the word "shall" renders compliance with the Disputes provision unambiguously mandatory. *North v. Cummings*, 355 F. App'x 133, 142 (10th Cir. 2009) ("the word shall is mandatory, not discretionary"); *Forest Guardians v. Babbitt*, 174 F.3d 1178, 1187 (10th Cir. 1998) (the term "shall means shall" and thus "impose[s] a mandatory duty upon the subject of the command"); *Montoya v. Fin. Fed. Credit, Inc.*, 872 F. Supp. 2d 1251, 1277 (D.N.M. 2012) (collecting cases for the proposition that "shall" is mandatory). Indeed, the New Mexico legislature has even codified this rule. NMSA 1978, § 12-2A-4(A) (1997) ("shall and must express a duty, obligation, requirement or condition precedent") (internal quotations omitted). Here, Plaintiffs do not allege that they ever reported any dispute concerning their MCO's performance of the Agreements in writing to the MAD Director, let alone that they complied with the entirety of the Agreements' Disputes provision. Thus, even if Plaintiffs were third-party beneficiaries with a right to enforce the Agreements, they cannot state a claim for breach of contract because they do not allege that they fulfilled the preconditions to bring a lawsuit mandated by the Agreements.

### III. PLAINTIFFS' DECLARATORY JUDGMENT CLAIM IMPROPERLY SEEKS TO DETERMINE A COLLATERAL LEGAL ISSUE AND SEEKS

11

**RELIEF THAT IS WHOLLY DUPLICATIVE OF PLAINTIFFS' BREACH OF CONTRACT CLAIM.**

The Court should also dismiss Plaintiffs' First Cause of Action for a third, independent reason. That claim seeks two types of declaratory relief. First, Plaintiffs seek a declaration that § 7.12.2 of the Agreements—disclaiming any third-party beneficiaries—is invalid and that Plaintiffs are third-party beneficiaries of the Agreements. *See* Complaint, ¶¶ 267-268. Second, Plaintiffs seek a declaration that the MCO Defendants have intentionally and willfully breached the Agreements. *See id.*, ¶¶ 268-269. Both of these requests are improper, and the First Cause of Action should be dismissed in its entirety.

With regard to the first type of declaratory relief, Plaintiffs improperly seek resolution of a collateral legal issue rather than declaratory relief that would resolve any case or controversy. Plaintiffs cannot use a declaratory judgment claim to "determine a collateral legal issue governing certain aspects of their pending or future suits." *Calderon v. Ashmus*, 523 U.S. 740, 747 (1998). For example, a plaintiff cannot seek declaratory relief to resolve a potential defense that its opponent might raise. *Id.*; *Gen. Protecht Grp. v. Leviton Mfg. Co.*, No. 10-cv-1020-JB-LFG, 2012 WL 1684573, at *19 (D.N.M. May 12, 2012) ("Parties are not permitted to seek 'an advisory opinion to the validity of a defense' through a declaratory judgment action." (quoting *Coffman v. Breeze Corps.*, 323 U.S. 316, 324 (1945))). Such declaratory judgments would not "completely resolve[]" any case or controversy. *Calderon*, 523 U.S. at 747. For this reason, they would be inconsistent with declaratory relief's core purpose of "terminat[ing] or afford[ing] relief from the uncertainty giving rise to the proceeding." *Kunkel v. Continental Cas. Co.*, 866 F.2d 1269, 1275 (10th Cir. 1989).

Here, Plaintiffs seek a declaration that they are third-party beneficiaries of the Agreements due to the supposed invalidity of § 7.12.2 of the Agreements. This request is directed at a

quintessential "collateral legal issue." *Calderon*, 523 U.S. at 747.  In particular, Plaintiffs seek to anticipate and refute what they (correctly) expect to be one of the MCO Defendants' defenses against the contract action: namely, that Plaintiffs lack standing to enforce those Agreements. Federal law is clear that a plaintiff cannot use declaratory relief to anticipatorily challenge a defense.  *See, e.g.*, *id.*; *Coffman*, 323 U.S. at 324; *Gen. Protecht Grp.*, 2012 WL 1684573, at *19. Moreover, even a ruling in favor of Plaintiffs on this issue will not resolve any case or controversy. Plaintiffs would still need to prove that the MCO Defendants breached an enforceable provision of the Agreements, and Plaintiffs would still need to prove that they are entitled to the relief they seek.  Thus, the Court should dismiss Plaintiffs' declaratory judgment claim.  *N.J. Clean Energy Solutions v. 100 Mount Holly Bypass*, No. 2:20-cv-856, 2021 WL 5728637, at *5 (D. Utah Dec. 2, 2021) (dismissing declaratory judgment claim where plaintiff sought a declaratory judgment that it "is a third-party beneficiary of [certain] contracts," explaining that "[t]his is not a 'case or controversy' that would invoke the declaratory judgment statute because such a declaration would have no practical effect").

The second type of declaratory relief sought by Plaintiffs is also improper, though for a different reason.  Courts within the Tenth Circuit have frequently dismissed declaratory judgment claims "where a plaintiff seeks declaratory relief that would resolve the same issues raised by other claims brought in the same action."  *TBL Collectibles, Inc. v. Owners Ins. Co.*, 285 F. Supp. 3d 1170, 1195 (D. Colo. 2018).  In such cases, these duplicative declaratory judgment claims would "serve[] no useful purpose" and satisfy "no forward-looking need" beyond those addressed by the plaintiff's other claims.  *Id.* (quotations omitted).  In particular, courts have often dismissed declaratory judgment claims that mirror a plaintiff's breach of contract claim.  *See, e.g.*, *Golf Club, LLC v. Am. Golf Corp.*, No. 16-cv-946, 2017 WL 1655259, at *2 (W.D. Okla. May 2, 2017)

("Plaintiff fails to identify any issue for resolution by declaratory relief that cannot be resolved in the context of its separate claim for breach of contract. Therefore, Plaintiff's declaratory judgment claim serves no useful purpose and would not settle the controversy."); *Cleveland v. Talent Sport, Inc.*, No. 12-cv-789, 2013 WL 2178272, at *3 (W.D. Okla. May 17, 2013) ("Plaintiff does not identify any issue for resolution by declaratory relief that cannot be resolved in the context of his separate claims for breach of contract and for an accounting. Because it appears that all issues identified for resolution by declaratory judgment will be decided in adjudicating his other claims, Plaintiff's declaratory judgment claim serves no useful purpose."); *see also, e.g., Vandelay Hosp. Grp. LP v. Cincinnati Ins. Co.*, No. 3:20-cv-1348, 2020 WL 4784717, at *7 (N.D. Tex. Aug. 18, 2020) (cited approvingly in *Cafe Plaza de Mesilla Inc. v. Cont'l Cas. Co.*, 519 F. Supp. 3d 1006, 1017 (D.N.M. 2021)). Such claims are entirely duplicative of the plaintiff's substantive breach of contract claims and serve no legitimate purpose.

This case presents precisely such a situation. Plaintiffs' declaratory judgment claim merely seeks a declaration that the MCO Defendants have breached the Agreements and done so intentionally or willfully. *See* Complaint, ¶¶ 268-269. This is precisely the gravamen of Plaintiffs' breach of contract claims against the MCO Defendants. *See* Complaint, Second, Third, and Fourth Causes of Action. Resolving Plaintiffs' breach of contract claims will necessarily resolve each issue on which Plaintiffs seek a declaration under the First Cause of Action.[8] Thus, the First Cause of Action is entirely duplicative of Plaintiffs' contract claims, and declaratory relief would serve no legitimate purpose. The Court should dismiss the First Cause of Action. *Golf Club*, 2017 WL 1655259, at *2; *Cleveland*, 2013 WL 2178272, at *3.

---

[8] This is equally true of the requested declarations regarding Plaintiffs' third-party beneficiary status, and thus that requested relief is improper for this reason as well.

## IV. THE COURT SHOULD DISMISS PLAINTIFFS' REQUEST FOR PUNITIVE DAMAGES

Finally, even if the Court determines that Plaintiffs' claims against the MCOs should move forward (they should not), the Court must dismiss their requests for punitive damages because they utterly fail to state a claim upon which relief can be granted.

As an initial matter, in New Mexico "[p]unitive damages are generally not warranted in breach of contract actions, unless there is a showing of malicious, fraudulent, or oppressive conduct by the wrongdoer, or conduct committed recklessly or with wanton disregard of the wronged party's rights." *Ranchers Exploration & Dev. Corp. v. Miles*, 696 P.2d 475, 478 (N.M. 1985); *see also Bogle v. Summit Inv. Co., LLC*, 107 P.3d 520, 530 (N.M. Ct. App. 2005) ("An award of punitive damages for breach of contract may be sustained only if the evidence shows a culpable state of mind."); *Constr. Contracting & Mgmt., Inc. v. McConnell*, 815 P.2d 1161, 1165 (N.M. 1991) ("Indeed even an intentional breach, where the nonbreaching party is fully compensated for his loss, may promote the interests of society as a whole, and unless there is an intention to inflict harm on the nonbreaching party or conduct which violates community standards of decency, will not serve as a basis for punitive damages.").

Plaintiffs here have not pleaded any facts that could demonstrate that the MCOs acted with the requisite culpable state of mind required for imposing punitive damages. The claim is based solely on conclusory allegations about the elements of intent needed for a punitive damages claim. *See Brooks v. Mentor WorldWide, LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021) (explaining that "[a]n allegation is conclusory where it states an inference without stating underlying facts or is devoid of any factual enhancement"). There are no facts alleged that the MCOs deliberately or maliciously deprived plaintiffs of any services that would lead to an inference that the MCOs

should be liable for punitive damages. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct."). That is, Plaintiffs' allegations are "conclusory and formulaic." *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012); *Gee v. Pacheco*, 627 F.3d 1178, 1183 (10th Cir. 2018); *see also* Compl. ¶ 198 (alleging that PHP's "failure to provide in-home nursing . . . was intentional and willful, [and] done with knowledge of and utter indifference to its harmful consequences, and done with disregard for the rights of Subclass 2 members."). The Court need not and should not accept such conclusory allegations as true. *Khalik*, 671 F.3d at 1193; *Gee*, 627 F.3d at 1183; *Brooks*, 985 F.3d at 1281.

In fact, the only explanation mentioned in the Complaint as to why Plaintiffs did not receive the in-home nursing services was that it was due to nursing shortages. *See* Compl. ¶¶ 132, 149. And not only do Plaintiffs fail to allege any facts to support their claim for punitive damages, but the Complaint actually cites to a report that demonstrates that punitive damages are **_not warranted_**. *See* Compl. ¶ 36 n.2 (citing Anthony Cahil, Ph.D. & Heidi Fredine, MPH *A Report on the 2021 Needs Assessment of Parents Served by the Medically Fragile Case Management Program at the Center for Development and Disability* (July, 2021) (University of New Mexico Center for Development and Disability). That report explains that over half of those qualified for in-home nursing services who do not receive the full amount of hours allotted to them do so because *they choose not to accept* all the nursing hours. *Id.* (emphasis added). And the minority of people who do not receive the full amount of in-home nursing services allotted to them claim that this deficiency is *due to limited availability*, not any intentional, malicious, or willful action of the

MCOs. *Id*. For these reasons, Plaintiffs' claim for punitive damages is baseless and amounts to a legal conclusion that must be dismissed under Rule 12(B)(6).

## **CONCLUSION**

For the reasons stated above, the Court should dismiss Plaintiffs' First, Second, Third, and Fourth Causes of Action and Plaintiffs' claims for punitive damages.


Dated: July 15, 2022                    Respectfully submitted,


/s/*Michael Martinich-Sauter*


Michael Martinich-Sauter
HUSCH BLACKWELL LLP
190 Carondelet Plaza, Suite 600
St. Louis, Missouri 63105
(314) 345-6234 (Telephone)
(314) 480-1505 (Facsimile)
Michael.martinich-sauter@huschblackwell.com

*Counsel for Defendant Western Sky Community Care, Inc.*

RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A.

/s/ *Charles K. Purcell*
Charles K. Purcell
Post Office Box 1888
Albuquerque, New Mexico 87103
Telephone: 505-765-5900
kpurcell@rodey.com

-and-

WHEELER TRIGG O'DONNELL LLP

/s/ *Cedric D. Logan*
Cedric D. Logan
370 Seventeenth Street, Suite 4500
Denver, Colorado 80202

Telephone: 303-244-1800
logan@wtotrial.com

*Attorneys for Defendant Presbyterian Health Plan, Inc.*

/s/*Brian P. Kavanaugh*

Brian P. Kavanaugh (bkavanaugh@sidley.com)
Christopher M. Assise (cassise@sidley.com)
Meredith R. Aska McBride
(meredith.mcbride@sidley.com)
SIDLEY AUSTIN LLP
1 S. Dearborn Street, 9th Floor
Chicago, Illinois  60603

Benjamin E. Thomas
SUTIN THAYER & BROWNE APC
PO Box 1945
Albuquerque, New Mexico  87103-1945
bet@sutinfirm.com

*Attorneys for Defendant HISC Insurance Services Company*