IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

M.G., a minor and through her
mother Christina Garcia, *et al.*,

Plaintiffs,

v.                                                          No. 1:22-cv-0325 MIS/DLM

KARI ARMIJO,[1] in her official
capacity as Acting Secretary for the Human
Services Department of New Mexico, *et al.*,

Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiffs' Motion to Compel Discovery (Doc.
280) and Plaintiffs' Motion for Removal of Confidential Designation (Doc. 307). The Court held
a motion hearing on October 2, 2023. (*See* Doc. 333.) Having fully considered the parties'
arguments and the relevant law, the Court will grant in part the motion to compel and deny the
motion to remove the confidential designation.

## I.       Relevant Background

This is a putative class action regarding medically fragile children eligible for private
nursing care from certain Managed Care Organizations (Western Sky Community Care, Inc., Blue
Cross and Blue Shield of New Mexico, and Presbyterian Health Plan – the MCOs or "providers").
(Doc. 1 (Compl.) at 2.) "These children receive nursing care through the State's taxpayer funded
Medicaid Managed Care program[,]" which is administered by Armijo and the Human Services

---

[1] Plaintiffs originally named David Scrase, the former Secretary for the New Mexico Human Services Department
(HSD), as a defendant. (Doc. 1 at 1.) Scrase has since been replaced in his role at HSD by Acting Secretary Kari
Armijo. (*See* Doc. 176 at 1 n.1.) "[W]hen a public officer who is a party in an official capacity . . . ceases to hold
office while [an] action is pending[, t]he officer's successor is automatically substituted as a party." Fed. R. Civ. P.
25(d).

Department. (*Id.*) Plaintiffs allege that the providers have wrongfully "declined or refused to provide necessary nursing services . . . to eligible children." (Compl. at 2.) Plaintiffs seek declaratory and injunctive relief to require Defendants to provide the care.[2] (*Id.* at 2–3.)

On May 26, 2023, the Court granted in part Plaintiffs' motion for preliminary injunction and directed Defendants to take certain affirmative steps pending resolution of this lawsuit. (*See* Doc. 217.) The Court noted that Plaintiffs' proposed preliminary injunction "include[d] language directing Defendants . . . to provide certain class-related discovery to Plaintiffs." (*Id.* at 7 (citing Doc. 150-3 at 2–3).) Although the Court did not direct Defendants to provide class-related discovery in its preliminary injunction order, it found "that Plaintiffs are likely already entitled to such [class-certification-related] discovery, . . . and they are free to pursue it well in advance of timely filing their motion for class certification . . . ."[3] (*Id.* at 11 n.3.)

The parties filed cross-appeals of the Court's preliminary injunction order. (*See* Docs. 227; 234.) Those appeals are pending before the Tenth Circuit. *See M.G. v. Scrase*, Nos. 23-2093, 23-2098 (10th Cir)  The Court denied Defendants' motion to stay pending resolution of the appeals. (*See* Docs. 269; 319.) Plaintiffs moved to amend their complaint to add a third named Plaintiff. (Doc. 299.) The Court denied the motion. (Doc. 324.) Plaintiffs have also moved for class certification (Doc. 235), and Defendants moved to strike the class certification motion (Doc. 262). Those two motions are pending before United States District Judge Margaret I. Strickland.

"On February 17, 2023, Plaintiff M.G. and former Plaintiff A.C.[4] served two separate sets of written discovery on . . . HSD by email." (Doc. 280 at 3.) Pursuant to a stipulated extension,

---

[2] Plaintiffs also seek attorneys' fees and costs. (*See* Compl. ¶¶ 235, 276.)

[3] Defendants initially sought bifurcated discovery (*See* Doc. 116 at 24.) The Court denied bifurcated discovery and set general discovery deadlines. (*See* Docs. 141–42.)

[4] A.C. passed away and is no longer a named plaintiff in this lawsuit. (*See* Doc. 203.)

Defendants served objections and responses to the discovery on April 3, 2023. (*See id.* (citing Docs. 280-2 (Responses to M.G. First Discovery); 280-3 (Responses to A.C. First Discovery)).) Plaintiffs' counsel contacted Defendants' counsel by email on April 13, 2023, and again on April 18, 2023, to address objections and attempt to resolve alleged insufficiencies in the responses. (*See id.* (citing Docs. 280-11–12).) Plaintiffs assert that Defendants have not responded to either communication. (*See id.* at 4.) Plaintiff A.C. served a second set of discovery on March 14, 2023, which Defendants responded to on April 13, 2023. (*See id.* (citing Doc. 280-4).)

Counsel met and conferred about all three sets of discovery on May 4, 2023. (*See id.*) Pursuant to the understanding they reached at that meeting, Plaintiffs followed up with a letter on May 9, 2023. (*See id.* (citing Doc. 280-13).) Plaintiffs assert that Defendants did not respond to the May 9 letter. (*See id.*) The parties met with the Court about their discovery issues on May 18, 2023. (*See* Doc. 215.) At the meeting, Plaintiffs agreed to stipulate that Defendants' previous partial responses did not waive Defendants' objections. (*See* Doc. 280 at 4–5.) Plaintiffs assert that Defendants did not supplement their responses following that meeting. (*Id.* at 5.)

Pursuant to the parties' May 18 meeting with the Court, "Plaintiffs made extensive revisions to the three sets of discovery previously served[] and" on June 23, 2023, electronically served the amended requests on Defendants. (*See* Doc. 280 at 5 (citing Doc. 248-1).) On July 27, 2023, Defendants served supplemented responses and filed a motion to extend their deadline to respond to the June 23 requests to August 7, 2023. (*See id.* at 4; *see also* Doc. 245.) The Court met with the parties on July 31, 2023, to discuss the motion. (*See* Doc. 249.) Counsel for Defendants informed the Court that she had produced the requested discovery, making her motion moot. (*See id.* at 1.) Counsel for Plaintiffs agreed that the motion was moot but stated her opinion that the response was untimely and the objections asserted therein inappropriate. (*See id.*) The Court

reminded Plaintiffs that they would have 21 days to work out their discovery dispute or to file a motion to compel. (*See id.*)

On August 4, 2023, Plaintiffs sent correspondence to Defendants regarding the alleged deficiencies, inviting Defendants to respond no later than August 11. (*See* Doc. 280 at 5–6 (citing Doc. 280-15).) Defendants did respond. (*See id.* at 6.) Plaintiffs emailed Defendants again on August 16, 2023, and provided an updated search terms list to "better align the terms (and names of individuals) with applicable requests." (*See id.* (citing Doc. 280-8).) Plaintiffs' counsel "expressed a continued interest in narrowing or eliminating discovery disputes, even though the parties were working under this Court's August 21st deadline for this Motion to Compel." (*See id.*) Plaintiffs' counsel emailed again on August 16, 2023, to follow up on Defendants' apparent "mistaken failure to respond to Interrog. No. 7." (*See id.* (citing Doc. 280-16).) Defendants have not responded to Plaintiffs' emails. (*See id.*)

Plaintiffs now move to compel responses to a variety of interrogatories, requests for production (RFPs), and requests for admission (RFAs).[5]

## II.    Legal Standards

A party may move for an order to compel discovery under Federal Rule of Civil Procedure 37(a) after providing notice and conferring or attempting to confer in good faith with the other party. "The party moving to compel discovery has the burden of proving the opposing party's answers [are] incomplete." *City of Las Cruces v. United States*, No. CV 17-809 JCH/GBW, 2021 WL 5207098, at *7 (D.N.M. Nov. 9, 2021) (quoting *Duran v. Donaldson*, No. 1:09-cv-758 BB/DJS, 2011 WL 13152655, at *2 (D.N.M. June 2, 2011)) (citing *Daiflon, Inc. v. Allied Chem. Corp.*, 534 F.2d 221, 227 (10th Cir. 1976)). Rule 33(b)(4) provides that "[a]ny ground not stated

---

[5] The Court reminds Plaintiffs' counsel to follow D.N.M. LR-Civ. 10.6 and identify the portions of each exhibit they seek to bring to the Court's attention. Motions that do not comply with the Local Rules may be summarily denied.

4

in a timely objection [to an interrogatory] is waived unless the court, for good cause, excuses the failure." Fed. R. Civ. P. 33(b)(4). "While Rule 34 does not contain" the same explicit waiver language regarding RFPs, "courts have held that such a waiver is implied." *Brunson v. McCorkle*, No. 11-cv-1018 JCH/LAM, 2013 WL 12333491, at *1 (D.N.M. Jan. 4, 2013) (gathering cases); *see also Lucero v. Valdez*, 240 F.R.D. 591, 593 (D.N.M. 2007) (same).

### III.   The Court declines to find that Defendants' responses were untimely.

Plaintiffs briefly argue that Defendants' July 27 supplemental responses were untimely and, therefore, that Defendants have waived any objections to the discovery requests. (*See* Doc. 280 at 8.) Under this District's Local Rules, however, a party is required to file a motion to compel based on allegedly inadequate responses within 21 days of service of the discovery responses. *See* D.N.M. LR-Civ. 26.6. Plaintiffs did not file their motion to compel within 21 days of Defendants' July 27, 2023 responses. Instead, Plaintiffs continued to "narrow and refine the search terms, eliminate terms and names of individuals whose correspondence was subject to search, and better align the terms (and names of individuals) with applicable requests" through August 16, 2023. (*See* Doc. 280 at 6.) As is evidenced by Plaintiffs' recitation of the history of these issues, these discovery requests have evolved over time. Considering the parties' continued efforts to work toward an amicable resolution of their discovery disputes, the Court declines to find that Defendants' responses were untimely.

### IV.   The Court will grant in part Plaintiffs' motion.

Before turning to their specific objections, the Court examines Defendants' broad, general objections, such as relevance, temporal scope, vague/ambiguous, confidential, privileged, assumes facts, calls for a legal conclusion, and calls for multiple subparts. (*See, e.g.*, Docs. 280-2 (Responses to M.G.'s 1st Set); 280-3 (Responses to A.C.'s 1st Set); 280-4 (Responses to A.C.'s

2nd Set); 280-5 (Responses to M.G.'s 1st Am. Set); 280-6 (Responses to C.V.'s 1st Set); *see also* Doc. 280-1 at 1 (table summarizing responses).) To the extent that Defendants assert boilerplate or general objections without offering more specific arguments, the Court overrules the objections as conclusory and insufficient. "The party resisting discovery must specifically detail the reasons why each request is irrelevant or otherwise objectionable, and may not rely on boilerplate, generalized, conclusory, or speculative arguments." *Pruess v. Presbyterian Health Plan, Inc.*, 579 F. Supp. 3d 1235, 1240 (D.N.M. 2022) (citation omitted). "Arguments against discovery must be supported by specific examples and articulated reasoning." *Id.* (quotation marks and citation omitted).

In their response brief, Defendants make several additional overarching objections to the discovery requests. (*See* Doc. 306.) First, they argue that "[t]he discovery propounded is class action discovery far beyond the scope of this lawsuit at the present time." (*Id.* at 2.) Yet the Court specified "that Plaintiffs are likely already entitled to such [class-certification-related] discovery, . . . and they are free to pursue it well in advance of timely filing their motion for class certification . . . ."[6] (Doc. 217 at 11 n.3.) Thus, the Court overrules any general objections on the basis that the requests are relevant to class certification.

At the hearing, the parties extensively discussed the number of children covered by the putative class and at issue in Plaintiffs' discovery requests. For purposes of this Opinion, where the Court orders discovery relevant to the putative class, that class consists of the approximately 150–200 children in New Mexico's Medically Fragile waiver program; that is, medically fragile children in New Mexico who are Medicaid-eligible, recipients of early and periodic screening,

---

[6] Defendants initially sought bifurcated discovery (*See* Doc. 116 at 24.) The Court denied bifurcated discovery and set general discovery deadlines. (*See* Docs. 141–42.)

diagnostic and treatment (EPSDT) services, determined to need PDN services, and on the same waiver as the named Plaintiffs.

Defendants next argue that discovery requests related to the MCOs are irrelevant as they are not parties to the case. (*See* Doc. 306 at 2.) Yet discovery related to MCOs may be relevant to Plaintiffs' claims. As Plaintiffs explain, "HSD is the designated 'single state agency to administer and supervise [the Medicaid] program'" and "contracts with [MCOs] to provide services." (Doc. 322 at 1 (quoting Doc. 217 at 5).) HSD "relies on its contracted MCOs to self-monitor and address gaps in the EPSDT [PDN] provider network . . . ." (*Id.* at 1–2 (quoting Doc. 280-2 at 12).) Accordingly, the Court rejects any general objection based only on Defendants' position that the MCOs were dismissed as defendants from this lawsuit.

Defendants make the same argument regarding discovery related to the New Mexico Department of Health (DOH). (*See* Doc. 306 at 2.) Plaintiffs respond "that the requests mentioning DOH seek almost exclusively documents in the actual possession of HSD, including 'the HSD side' of correspondence with DOH . . . about matters at issue in this case." (Doc. 322 at 3 (discussing Docs. 280 at 27–29; 280-8).) To the extent that Plaintiffs seek discovery of information or documents that are in Defendants' care, custody, or control, Defendants' general objection regarding DOH is overruled.

For purposes of this Opinion, documents[7] are in Defendants' care, custody, or control, if HSD's employees or attorneys "can pick up a telephone and secure the document . . . ." *United States v. 2121 Celeste Rd. SW, Albuquerque, N.M.*, 307 F.R.D. 572, 590 (D.N.M. 2015) (citing *Simon v. Taylor*, No. Civ. 12-0096 JB/WPL, 2014 WL 6633917, at *34 (D.N.M. Nov. 18, 2014) ("Control is defined as the legal right to obtain documents upon demand."). This includes

---

[7] The Court's definition of a "document" for purposes of this Opinion is anything kept in a system of records, whether that is in a drawer, a Word file, an email, et cetera.

documents that were, for example, created by another agency, but which were given to and are maintained by HSD. Documents that *are not* in HSD's care, custody, or control, but *are* in a non-party agency's care, custody, or control, are not subject to this ruling. Plaintiffs may seek those documents using other procedures, such as through a request made pursuant to the Inspection of Public Records Act, N.M. Stat. Ann. §§ 14-2-1–12.

Finally, Defendants argue in several responses that the requests seek confidential information. To the extent that Defendants object to discovery requests on the basis that documents are subject to the attorney-client privilege or the work product doctrine, they need to identify them in a privilege log.

### A.      First Amended M.G. First Discovery

### Interrogatory Nos. 2–3 and related RFP Nos. 1–2

Interrogatory Nos. 2–3 ask Defendants to explain all steps HSD has taken to enforce sections 7.14.3.2 and 7.14.3.3[8] of the Medicaid Managed Care Services Agreement with the MCOs, as well as the identity of the individuals who took each step and the dates involved, for the period from January 1, 2018, to the present. (*See* 280-5 at 2–3.) RFP Nos. 1–2 seek documents relevant to the steps described. (*See id.*)

Defendants refer Plaintiffs to "Notice of Steps Taken to Arrange for In-Home Shift Nursing Services to Plaintiffs," a document Defendants filed in response to the Court's Opinion granting in part the preliminary injunction. (*See* Docs. 233; 280-5 at 2–3.) Plaintiffs contend that this response is inadequate, as the Notice does not contain steps dating to January 2018.[9] (*See* Doc.

---

[8] Section 7.14.3.2 states that "in the event that any Major Subcontractor is incapable of performing the service contracted for by the CONTRACTOR, the CONTRACTOR shall assume responsibility for providing the services . . . ." (*See* Doc. 280-1 at 1.) Section 7.14.3.3 contains similar language regarding "Subcontractors," rather than Major Subcontractors." (*See id.*)

[9] HSD's contracts with the MCOs "are effective for the term of January 19, 2018[,] through December[] 31, 2022." (*See* Compl. ¶ 83.)

280 at 11.) Defendants explain that their "objections are based on the fact that the MCOs are not parties to this lawsuit, the Court has already ruled that Plaintiffs are not third-party beneficiaries of the referenced contracts," and that "HSD has never received any notice . . . that any MCO was incapable of performing the service contracted for by the HSD." (Doc. 306 at 4.)

The Court will require Defendants to: (1) amend their response to these discovery requests to identify the Bates numbers of any documents previously produced that are responsive; and (2) confirm whether they have fully answered the requests and produce any other responsive documents in their care, custody, or control.

**Interrogatory No. 4 and related RFP No. 3**

Interrogatory No. 4 asks Defendants to describe the steps HSD has taken to arrange for travel nurses. (*See* Doc. 280-5 at 3–4.) RFP No. 3 asks for related documents. (*See id.* at 4.)

Defendants assert boilerplate objections and again refer Plaintiffs to the Notice in Doc. 233. (*See id.*) Defendants further object because "[t]his case involve[s] only two Plaintiffs." (Doc. 306 at 4.) At the hearing, Defendants argued that HSD is not responsible for arranging travel nurses.

The Court will require Defendants to: (1) amend their response to these discovery requests to identify the Bates numbers of any documents previous produced that are responsive; and (2) confirm whether they have fully answered the requests and produce any other responsive documents in their care, custody, or control.

**Interrogatory No. 5 and related RFP No. 4**

Interrogatory No. 5 asks Defendants to describe the steps HSD has taken to seek additional federal or state resources to provide PDN hours to Plaintiffs and putative class members since

January 2018. (*See* Doc. 280-5 at 4.) RFP No. 4 asks for documents related to those steps. (*See id.* at 5.)

Defendants assert similar boilerplate objections and argue that no class has been certified. (*See id.* at 4–5; *see also* Doc. 306 at 4.)

The Court overrules Defendants' objections. Defendants shall produce any information that is responsive to these requests as it relates to the named Plaintiffs and to the putative class as defined above.[10]

**RFA No. 1 and related Interrogatory No. 6 and RFP No. 5**

RFA No. 1 asks Defendants to "admit that from January 1, 2018[,] to November 4, 2022, no HSD employee conducted any investigation or made any inquiry into the availability of [PDN] services for EPSDT recipients." (Doc. 280-5 at 5.) Interrogatory No. 6 asks Defendants to describe the inquiries and investigations from RFA No. 1, and RFP No. 5 asks Defendants to produce related documents. (*See id.*)

Defendants object on the basis of attorney client privilege and assert that the requests are overbroad, irrelevant, and assume facts. (*See id.*) In their response brief, Defendants also object because no class has been certified. (Doc. 306 at 4–5.) At the hearing, Defendants argued that Plaintiffs' definitions (*i.e.*, "inquiry" and "investigation") are too broad. Using a smaller group of search terms that Plaintiffs proposed later (*see* Doc. 280-8 at 4), Defendants have produced 57 gigabytes of potentially responsive data.

The Court overrules Defendants' objections. Defendants shall communicate with the

---

[10] If the Court grants the motion for class certification and changes the class definition, the parties may need to change the trajectory of discovery accordingly.

*current*[11] HSD employees listed on page four of Exhibit 8 to determine if there were inquiries or investigations and shall produce responsive documents accordingly. (*See* Doc. 280-8 at 4.)

**Interrogatory No. 7 and related RFP No. 6**

Interrogatory No. 7 seeks information on steps HSD has taken to determine a sufficient reimbursement rate for PDN services. (Doc. 280-5 at 5–6.) RFP No. 6 seeks related documents. (*Id.* at 6.)

In their response brief, Defendants object and argue that the requests are "irrelevant" given that "[i]t is undisputed that no reimbursement for M.G. or C.V. has ever been denied . . . ." (Doc. 306 at 5.)

The Court overrules the objections and will require Defendants to fully respond to these discovery requests.

**Interrogatory No. 8 and related RFP No. 7**

Plaintiffs seek information on how and why HSD determined that a rate increase was necessary regarding the January 11, 2023 approved State Plan Amendment. (*See* Doc. 280-5 at 6.) RFP No. 7 seeks related documents. (*Id.* at 7.)

Defendants object on the basis that the request is temporally overbroad and because no class has been certified. (*See* Doc. 306 at 5.) At the hearing, the Court questioned Plaintiffs extensively about the relevance of HSD's reasons for approval of the State Plan Amendment.

The Court will deny the motion to compel as to Interrogatory No. 8 but will require Defendants to amend their response to RFP No. 7 to identify the specific documents and the Bates numbers therein that are responsive.

---

[11] Plaintiffs refined their search parameters and named certain HSD employees in Exhibit 8. (*See, e.g.*, Doc. 280-8 at 3–4, 6.) One of these individuals (Maestas) is a DOH employee and should not be on the list. (*Id.* at 4.) At least two of these individuals (Scrase and Comeaux) are no longer employed with HSD. (*See id.*) As discussed at the hearing, the Court will only order Defendants to speak with *current* HSD employees for purposes of this Opinion.

**RFA No. 2 and related Interrogatory No. 9**

In RFA No. 2, Plaintiffs ask Defendants to admit that they "have not imposed any sanction or penalty upon the MCOs of each named plaintiff, pursuant to either 42 C.F.R. Subpart I or the Medicaid Managed Care Contract, for any failure to deliver plaintiffs' [PDN] hours which were approved by the MCOs." (Doc. 280-5 at 7.) Interrogatory No. 9 asks for information related to any sanction or penalty. (*Id.* at 7–8.)

Defendants object on the basis that the requests seek irrelevant information and are temporally overbroad. (*See id.*) They argue in their response brief that "[t]he only relevant question is whether HSD imposed sanctions on an MCO for failure to provide PDN hours to either" of the named plaintiffs. (Doc. 306 at 6.)

The Court will require Defendant to respond to the requests as they relate to the two named Plaintiffs.

**RFP No. 8**

Plaintiffs seek "all agreements, memoranda, or other communications (including notes, letters, and e-mail messages) concerning availability of [PDN] services between HSD and" the MCOs and the MFCMP from January 2018 to the present. (Doc. 280-5 at 8.)

Defendants object on the basis that it is temporally overbroad, adds multiple discrete subparts, and assumes facts. (*Id.*) At the hearing, Defendants explain that the documents responsive to this RFP are included in the 57 gigabytes of data they gathered using Plaintiffs' suggested search terms. Defendants estimate that it will take one person 30 days at six hours per day to review and redact the responsive documents. At a salary of $64/hour, Defendants argue that is a significant burden on the taxpayers. Plaintiffs assert that they later offered to limit the request from January 1, 2020, to the present. (*See* Doc. 280 at 14.)

The Court agrees that the burden and expense here is considerable and will limit the RFP as follows: Defendants shall respond to RFP No. 8 with documents related to policies and communications on this issue from the Secretary (Scrase and Armijo) and the Medicaid Director (Comeaux and Kellogg).

**RFA No. 3 and related RFP No. 9**

RFA No. 3 seeks an admission that from January 1, 2018, forward, HSD neither directed the MCOs nor received from the MCOs "any strategic plans, quality improvement review, audits, performance improvement plans, or corrective action plans (as those terms are used in the MAD Policy Manual and the MCO Agreements) with respect to EPSDT [PDN] providers and/or service availability." (Doc. 280-5 at 8.) RFP No. 9 asked for the actual documents related to RFA No. 3. (*Id.* at 9.)

Defendants objected to the terms used as vague and ambiguous, irrelevant, temporally overbroad, and that they assume facts. (*Id.* at 8–9.) Defendants assert in their response brief that the request is irrelevant because no class has been certified. (Doc. 306 at 6.)

The Court overrules Defendants' objections and will require them to respond to the requests as to the putative class as defined above.

**Interrogatory No. 10**

This request asks Defendants to "describe HSD's authority, or limitation thereof, to review MCOs' Medicaid service rate schedules . . . ." (Doc. 280-5 at 9.)

Defendants stated that HSD's authority "is addressed in the MCOs' contracts." (*See id.*)

Defendants shall amend their answer to identify the specific documents and the Bates numbers therein that are responsive.

**RFP Nos. 11–13**

RFPs Nos. 11–13 seek, for the period from January 1, 2018, through the present:

(11) "communications and recordings" re: PDN or Home Health Aide services for medically fragile children between "Members of the Family Advisory Board and HSD and [DOH] employees" and "Family Advisory Board coordinator(s) and HSD and [DOH] employees" (Doc. 280-5 at 10);

(12) communications re: meetings between the Family Advisory Board and: "MFCMP staff and HSD employees"; "MFCMP staff and DOH employees" and "DOH employees and HSD employees" (*id.* at 11); and

(13) communications re: PDN and Home Health Aide services for medically fragile children between MFCMP case managers/supervisors and HSD and DOH employees (*id.*).

The RFPs state that "communications and recordings" "includ[e] but [are] not limited to email messages, text messages, fax communications, audio, visual, or text meeting recordings, and letters . . . ." (*Id.* at 10.) Plaintiffs limited the scope of these requests to January 1, 2020, to the present and narrowed/identified search terms and employee names. (*See* Doc. 280 at 15–16 (citing Docs. 280-8; 280-12 at 9; 280-13 at 2–3; 280-17).)

Defendants assert boilerplate objections and argue that MFCMP and DOH are not parties to this lawsuit (*see id.* at 10–12) and that no class has been certified (*see* Doc. 306 at 8). Finally, Defendants argue that even with Plaintiffs' offered limited search terms, the "search will take much more time and effort than anticipated by Plaintiffs . . . ." (Doc. 306 at 8.) The Declaration accompanying Defendants' response details the amount of time it has taken to run some of these requests. (*See* Doc. 305.) Regarding RFP Nos. 11 and 12, the declarant states that she could not run the search "because there was no recipient/sender information and we do not have a list of all

members of the Family Advisory Board[,] . . . Family Advisory Board Coordinators[,]" or MFCMP staff. (*Id.* ¶¶ 9–10.) She was able to run the search for RFP No. 13, "which produced massive amounts of data that will now need to be evaluated for protected information by HSD." (*Id.* ¶ 11.)

Even with Plaintiffs' limitations, the Court agrees that the burden and expense of producing the requested discovery outweighs any likely benefit. The Court will deny these three discovery requests but will reconsider the requests later if Plaintiffs can narrow them further.[12]

**RFP No. 14**

This request seeks documents regarding meetings between MFCMP employees and HSD or DOH employees involving discussion of "[PDN] and Home Health Aide services for medically fragile children." (Doc. 280-5 at 12.)

Defendants object to this on the same basis that they objected to RFP Nos. 11–13. (*See* Docs. 280-5 at 12; 306 at 7.) At the hearing, Plaintiffs explained that they believe the only way to get to the relevant documents is to ask employees about past meetings.

The Court will require Defendants to speak with the *current* HSD employees named in Exhibit 8 at page seven to determine whether they have any documents related to meetings between the MFCMP employees and HSD. (*See* Doc. 280-8 at 7.)

B.       **C.V. First Discovery**

**Interrogatory No. 12 and related RFP No. 16**

Interrogatory No. 12 seeks a description of the steps HSD has taken from January 1, 2018, to present "to develop a comprehensive statewide Medicaid network adequacy assessment for EPSDT [PDN] providers." (Doc. 280-6 at 2.) RFP No. 16 asks for related documents. (*See id.*)

Defendants object on the basis that the information is irrelevant, temporally overbroad,

---

[12] The Court encourages the parties to contact chambers for an informal discovery conference before filing a motion to compel.

assumes facts, and is vague/ambiguous. (*See id.*) Defendants also object on the basis of class certification concerns. (Doc. 306 at 8.)

The Court will require Defendants to: (1) amend their response to these discovery requests to identify the Bates numbers of any documents previous produced that are responsive; and (2) confirm whether they have fully answered the requests and produce any other responsive documents in their care, custody, or control.

### **RFP No. 17**

RFP No. 17 seeks, for the period from October 1, 2021, to present, "EPSDT and Medically Fragile Waiver home health care billing data . . . submitted by MCOs to HSD, and any analysis of that data produced by MCOs or HSD with respect to M.G., A.C., and C.V." (Doc. 280-6 at 2.)

Defendants object on the basis that the request is overbroad, requests confidential information, is irrelevant, assumes facts, and add multiple discrete subparts. (*Id.* at 3.) Defendants further object that they "cannot provide DOH records." (Doc. 306 at 8.) They further state that "HSD has provided its [own] records" in response to this request already and can identify them as being responsive to RFP No. 17 if the Court so orders. (*See id.* at 8–9.)

The Court will require Defendants to: (1) amend their response to these discovery requests to identify the Bates numbers of any documents previous produced that are responsive; and (2) confirm whether they have fully answered the requests and produce any other responsive documents in their care, custody, or control.

### **RFP No. 18**

RFP No. 18 seeks "all communications regarding availability of EPSDT [PDN] and Home Health Aide services, between HSD employees, and between HSD and DOH employees, including but not limited to any communications regarding the 10/27/21 email" that was attached to the

discovery request. (Doc. 280-6 at 3.)

Defendants argue that the request is overbroad, burdensome, requests confidential information, is irrelevant, assumes facts, and has multiple discrete subparts. (*See id.*) Defendants further object because "[Disability Rights New Mexico (DRNM)] is not a class representative and "[t]he Court has not recognized associational standing of DRNM, which HSD opposes . . . ." (Doc. 306 at 9.) They further assert that "the email does not mention M.G. or C.V., and HSD cannot produce information related to DOH." (*Id.*)

The Court agrees that the burden and expense here is considerable and will limit the RFP as follows: Defendants shall produce any documents related to the 10/27/21 email referenced in RFP No. 18.

**RFP No. 19**

RFP No. 19 requests, for the period from January 1, 2018, to the present, "documents, including internal policies, concerning HSD's contracts with its Third Party Assessors for Level of Care and eligibility determinations for medically fragile children which set forth expectations/criteria for those determinations." (Doc. 280-6 at 4.)

Defendants object that the request is vague/ambiguous, temporally overbroad, requests confidential information, is burdensome and irrelevant, assumes facts, and has multiple subparts. (*Id.*) Defendants further object on the basis of associational standing. (*See* Doc. 306 at 9.)

The Court overrules Defendants' objections and will require them to respond with any responsive documents in their care, custody, or control.

**RFP No. 20**

RFP No. 20 seeks, from January 1, 2018, to the present, "all communications, including but not limited to Letters of Direction, between HSD employees and employees of MCOs . . .

concerning negotiated rates for EPSDT [PDN] Services." (Doc. 280-6 at 4.)

Defendants objected that the request is vague/ambiguous, temporally overbroad, irrelevant, assumes facts, and adds multiple subparts. (*Id.*) Defendants argue that they were "unable to run the search requested . . . because there was no recipient/sender information and [they] do not have a list of all employees of the MCOs." (Doc. 306 at 9 (citing Doc. 305 ¶ 8).) Plaintiffs have proposed limiting the request to six named HSD employees and from January 1, 2020, onward. (*See* Doc. 280 at 18.)

The Court agrees that the burden and expense here is considerable and will limit the RFP as follows: Defendants shall speak with the *current* HSD employees named in Exhibit 8 at page three to determine whether they have any "Letters of Direction" responsive to this RFP dated from January 1, 2020, onward. (*See* Doc. 280-8 at 3.)

### **RFP No. 21**

RFP No. 21 seeks, from January 1, 2018, through the present, "saved chats, recorded meetings, meeting minutes, notes, email messages, agendas, and materials for meetings between HSD or DOH employees and employees of [the MCOs] involving discussion of [PDN] and/or Home Health Aide services for medically fragile children . . . ." (Doc. 280-6 at 4–5.)

Defendants object to this request on the basis that it is burdensome, vague/ambiguous, seeks confidential information, and adds multiple subparts. (*Id.*) They further contend that they do not have recipient/sender information or a list of MCO employees. (Doc. 306 at 9.) Plaintiffs have proposed limiting the scope to 12 HSD employees and the timeframe to January 1, 2020, onward. (*See* Doc. 280 at 19.)

Even with these limitations, the Court agrees that the burden and expense of producing the requested discovery outweighs any likely benefit. The Court will deny the motion as to RFP No. 21 but will reconsider the request later if Plaintiffs can narrow it further.

**RFP No. 22**

RFP No. 22 seeks "documents and recordings of meetings of the Medically Fragile Family Advisory Board . . . in the possession . . . of HSD or DOH employees . . . , including but not limited to meeting agendas, meeting logs, audio, visual, or text meeting recordings, minutes, notes, documents presented or shared" since January 1, 2018. (*Id.* at 5.)

Defendants object to this request on the basis that it is burdensome, vague/ambiguous, seeks confidential information, and adds multiple subparts. (*Id.*) They argue that it is "not reasonable to search all documents between or among 2000 HSD employees and [multiple non-parties]." (*Id.*) Plaintiffs have proposed limiting the scope to five HSD employees and the timeframe to January 1, 2020, onward. (*See* Doc. 280 at 19.)

The Court will require Defendants to speak with the *current* HSD employees named in Exhibit 8 at page five to determine whether they have any documents related to meetings between the Medically Fragile Family Advisory Board and HSD from January 1, 2020, through today. (*See* Doc. 280-8 at 5.)

**Interrogatory Nos. 13–14 and related RFP Nos. 23–24**

Interrogatory No. 13 asks for information regarding "all individual Medicaid beneficiaries under the age of 21 (EPSDT) in New Mexico who have been approved for [PDN] services" from January 1, 2018 forward. (Doc. 280-6 at 6.) Interrogatory No. 14 seeks those beneficiaries who "were the subject of complaints, grievances, or written reports/reporting describing an inability to access [PDN] services for the child." (*Id.* at 7.) RFP Nos. 23–24 ask for the documents Defendants

rely on in answering the interrogatories. (*Id.* at 7–8.)

Defendants object on the basis that the requests are overbroad, burdensome, irrelevant, assumes facts, asks for confidential information, and adds subparts. (*Id.* at 6–7.) Defendants specify that "[a]s of April 3, 2023, there were 385,455 individual Medicaid beneficiaries under the age of 21 (EPSDT) in New Mexico." (*Id.*) Plaintiffs argue that two documents (a legislative committee presentation and HSD's 2022 Data Book) show that "HSD already reports on the number of unduplicated, individual EPSDT recipients who . . . [are] 'medically fragile[,]'" and thus this will not pose the burden Defendants say it will. (Doc. 280 at 20.)

The Court will grant the requests in part and require Defendants to produce information only for the putative class as defined above.

## V.     The Court denies the motion to remove confidential designation.

Plaintiffs seek to remove the "confidential" designation of documents 253-1 and 253-2, which consist of "reports from managed care organizations (MCOs) to Defendants about MCOs' efforts regarding private duty nurses for the two Plaintiffs." (Doc. 307 at 1.) Defendants urge the Court to retain the confidential designation of the entire documents for several reasons. First, they assert that the documents are protected under ¶ 2(b)–(d) of the protective order. (Doc. 310 at 3 (citing Doc. 198 ¶ 2).) Defendants contend that "the Documents were created as a result of a Letter of Direction done under the contracts between HSD and [the MCOs] to provide specific information on weekly and monthly bases to HSD." (*Id.* at 1.) They argue that the documents were issued by non-parties who have an expectation of privacy in proprietary information. (*See id.*)

At the hearing, the Court asked Plaintiffs' counsel why they needed to publicly disclose the documents. Counsel stated that the confidential designation complicates filing. The Court will deny the motion on that basis.

The parties asked the Court about a standing order that allows the parties to confer and mark documents as confidential without seeking permission from the Court. The Court is inclined to grant an order that allows the parties to mark documents as confidential if the documents fall under the Protective Order (Doc. 198) The Court directs the parties to submit a stipulated proposed order for the Court's consideration.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion to Compel Discovery (Doc. 280) is **GRANTED in part** as described above. The Court **DENIES** Plaintiffs' request for attorneys' fees.

**IT IS FURTHER ORDERED** that Defendants shall provide supplemental responses no later than **21 days** from the date of this Opinion. Should Defendants need additional time for the responses that require more effort on their part, they may file a stipulated notice of extension or call chambers to request an informal discovery conference.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Removal of Confidential Designation (Doc. 307) is **DENIED**. No later than **21 days** from the date of this Opinion, the parties shall submit a stipulated proposed order that allows the parties to sua sponte mark documents as confidential if the documents fall under the Protective Order.

_____
DAMIAN L. MARTINEZ
UNITED STATES MAGISTRATE JUDGE