## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

M.G., a minor by and through her
mother Christina Garcia,
C.V., a minor, by and through
his father Jeremy Vaughan, and
DISABILITY RIGHTS NEW
MEXICO, INC.,

      Plaintiffs,

v.

                                     Case 1:22-cv-00325-MIS-DLM

KARI ARMIJO,[1] in her official
capacity as Secretary for the Human
Services Department, State of
New Mexico, and HUMAN
SERVICES DEPARTMENT,

      Defendants.

### ORDER DENYING DEFENDANTS' MOTION TO STRIKE EXHIBITS TO PLAINTIFFS' OPPOSED MOTION FOR CLASS CERTIFICATION AND TO RECOGNIZE ASSOCIATIONAL STANDING BY DISABILITY RIGHTS NEW MEXICO, AND GRANTING IN PART AND DENYING IN PART PLAINTIFFS' OPPOSED MOTION FOR CLASS CERTIFICATION AND TO RECOGNIZE ASSOCIATIONAL STANDING OF DISABILITY RIGHTS NEW MEXICO

**THIS MATTER** is before the Court on Plaintiffs' Opposed Motion for Class Certification and to Recognize Associational Standing by Disability Rights New Mexico ("Motion for Class Certification"), filed June 30, 2023. ECF No. 235. Defendants filed a Response on August 7, 2023, ECF No. 261, to which Plaintiffs filed a Reply on August 24, 2023, ECF No. 287.

---

[1]     Plaintiffs originally named David Scrase, the former Secretary for the New Mexico Human Services Department ("HSD"), as a defendant. ECF No. 1 at 1. Since the filing of the Complaint, Scrase has been replaced in his role at HSD by Acting Secretary Kari Armijo. See ECF No. 176 at 1 n.1. "[W]hen a public officer who is a party in an official capacity . . . ceases to hold office while [an] action is pending[, t]he officer's successor is automatically substituted as a party." Fed. R. Civ. P. 25(d). "Later proceedings should be in the substituted party's name . . . ." Id.

Also before the Court is Defendants' Motion to Strike Exhibits to Plaintiffs' Opposed Motion for Class Certification and to Recognize Associational Standing by Disability Rights New Mexico ("Motion to Strike"), filed August 7, 2023. ECF No. 262.  Plaintiffs filed a Response on August 21, 2023, ECF No. 279, to which Defendants filed a Reply on September 5, 2023, ECF No. 296.

On November 14, 2023, the Court held an evidentiary hearing on Plaintiffs' Motion for Class Certification.  See ECF No. 365.

Having considered the Parties' submissions, the record, and the relevant law, the Court **DENIES** the Motion to Strike and **GRANTS IN PART AND DENIES IN PART** the Motion for Class Certification.

## I.   Background[2]

On April 28, 2022, Disability Rights New Mexico, Inc. ("DRNM") and three minors, M.G., A.C., and C.V. ("the Named Plaintiffs"),[3] filed a Class Action Complaint against the New Mexico Human Services Department ("HSD") and the Secretary of HSD—who administer the Medicaid Managed Care program known as Centennial Care 2.0—as well as three Managed Care Organizations ("MCOs").  ECF No. 1 ¶ 1.  The Complaint alleges that the Named Plaintiffs "are medically fragile children who are eligible to receive medically necessary private-duty nursing care" as part of the early and periodic screening, diagnostic, and treatment ("EPSDT") services Defendants are required to provide pursuant to the Medicaid Act, Title XIX of the Social Security Act, 42 U.S.C. § 1396d(a)(4)(B).  Id. ¶¶ 1, 58-66.  It alleges that each Named Plaintiff is a

---

[2]      The factual and legal bases for Plaintiffs' claims are set out more fully in the Court's May 26, 2023, Order Graining in Part Plaintiffs' Motion for Preliminary Injunction.  ECF No. 217.

[3]      On May 15, 2023, Plaintiffs filed a Suggestion of Death stating that A.C. died on May 12, 2023. ECF No. 203.

"Medically Fragile Waiver participant and Centennial Care 2.0 beneficiary[,]" id. ¶¶ 102, 124, 143, and has been approved for a certain number of hours of private duty nursing ("PDN") services per month by New Mexico's Medicaid program, but Defendants are failing to provide them with adequate hours of PDN services.  Id. at ¶¶ 1-2, 13-15.  The Complaint contains class allegations on behalf of the following putative class: "All Centennial Care 2.0 beneficiaries under the age of 21 in New Mexico who have been approved for private duty nursing services by Defendants, but are not receiving the nursing services at the level approved by Defendants."  Id. ¶ 32.

On October 27, 2022, the Court issued an Order dismissing the only counts asserted against the MCOs—Plaintiffs' Second, Third, and Fourth Causes of Action, see ECF No. 1 ¶¶ 176-211—and, consequently, dismissed the MCOs from this case.  ECF No. 77.

Plaintiffs' First, Fifth, Sixth, Seventh, Eighth, and Ninth Causes of Action survived the Court's Order.  Plaintiffs' First Cause of Action seeks a declaratory judgment under 28 U.S.C. § 2201 regarding Plaintiffs' rights to enforce the Managed Care Services Agreements between HSD and the MCOs, ECF No. 1 ¶¶ 159-75; Plaintiffs' Fifth Cause of Action alleges the MCOs breached their Managed Care Services Agreements with HSD, id. ¶¶ 212-21; Plaintiffs' Sixth Cause of Action alleges a violation of the Americans with Disabilities Act ("ADA"), id. ¶¶ 222-35; Plaintiffs' Seventh Cause of Action alleges a violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, id. ¶¶ 236-46; Plaintiffs' Eighth Cause of Action alleges a violation of Section 1557 of the Patient Protection and Affordable Care Act ("PPACA"), 42 U.S.C. § 18116, id. ¶¶ 247-59; and Plaintiffs' Ninth Cause of Action alleges a violation of the EPSDT provisions of the Medicaid Act, 42 U.S.C. § 1396, et seq., id. ¶¶ 260-63.

On May 26, 2023, the Court issued a Preliminary Injunction finding, inter alia, that "Plaintiffs are likely to prevail on their claim that Defendants approved each Plaintiff for EPSDT

in-home shift nursing services based on medical necessity and that Plaintiffs are regularly not receiving all such approved services[,]" ECF No. 217 at 43, and further finding that Plaintiffs demonstrated a likelihood of success on the merits of their Sixth, Seventh, and Ninth Causes of Action, id.

On June 30, 2023, Plaintiffs filed the instant Motion for Class Certification, ECF No. 235, to which they attached the following Exhibits: (1) a Report on the 2021 Needs Assessment of Parents Served by the Medically Fragile Case Management Program at the University of New Mexico Center for Development and Disability ("UNM Study"), ECF No. 235-1; (2) a map reflecting the number of medically fragile children served in each New Mexico County as of October 2021 ("County Map of Medically Fragile Children") from HSD's 2022 Data Book, ECF No. 235-2; (3) the Declaration of Registered Nurse Michelle German ("German Decl."), ECF No. 235-3; and (4) the Declaration of attorney Nancy L. Simmons ("Simmons Decl."), ECF No. 235-4.  Defendants filed a Response, ECF No. 261, to which Plaintiffs filed a Reply, ECF No. 287.

On August 7, 2023, Defendants filed the instant Motion to Strike Exhibits 1, 2, and 3 attached to Plaintiffs' Motion for Class Certification.  ECF No. 262.  Plaintiffs filed a Response, ECF No. 279, to which Defendants filed a Reply, ECF No. 296.

On October 13, 2023, the Court issued an Order Scheduling an Evidentiary Hearing on Plaintiffs' Motion for Class Certification.  ECF No. 340.  Therein, the Court announced:

> The Federal Rules of Evidence shall apply, including the rules and standards governing expert testimony, Fed. R. Evid. 702.  See Anderson Living Tr. v. WPX Energy Prod., LLC, 306 F.R.D. 312, 378 & n.39 (D.N.M. 2015) (citing, e.g., Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 354 (2011) ("The District Court concluded that Daubert did not apply to expert testimony at the certification stage of class-action proceedings. We doubt that is so.") (internal citation omitted)).  If Plaintiffs intend to use their Exhibits as evidence in support of their Motion for Class Certification, those Exhibits shall be presented in an admissible form—e.g., authenticated and supported by affidavit or, preferably, the testimony of an

4

appropriate person—including experts, if necessary.  In particular, Plaintiffs shall be prepared to have an appropriate person interpret and explain pages 8 and 9 of the UNM Study.  ECF No. 235-1.  Additionally, Plaintiffs shall be prepared to demonstrate that HSD's 2022 Data Book is not hearsay (or is admissible as an exception to the rule against hearsay), and if it is hearsay, Plaintiffs shall be prepared to have an appropriate person testify regarding the map on page 246.  Furthermore, Ms. German's Declaration states that Thrive Skilled Pediatric Care runs weekly reports on the clients who are receiving some, but not all, of their approved and requested Private Duty Nursing services.  Plaintiffs either need to present admissible evidence regarding the results of those reports, or submit the reports themselves in admissible form—this may require expert testimony or a records custodian for authentication.  Plaintiffs shall also be prepared to submit evidence regarding the following:

1. Are all "medically fragile" children entitled to PDN services?

2. Are there "medically fragile" children who participate in Waiver programs other than the Medically Fragile Waiver?

3. If so, are there "medically fragile" children who participate in the Developmental Disability Waiver?

4. If so, are there "medically fragile" children who participate in the Developmental Disability Waiver who are approved for private duty nursing services but are not receiving the nursing services at the level approved by Defendants due to limited availability?

Id. at 2-3.

On November 14, 2023, the Court held an evidentiary hearing on Plaintiffs' Motion for Class Certification.  See ECF No. 365.  Plaintiffs presented three witnesses: (1) Dr. Anthony Cahill, the author of the UNM Study; (2) Nurse Michelle German; and (3) Anne Marie Parmenter, who is the director of the Medically Fragile Case Management Program.  See id.

During Dr. Cahill's testimony, Plaintiffs sought to introduce the UNM Study as Exhibit 1. Defendants objected to the introduction of the UNM Study as irrelevant and for lack of foundation. The Court took Defendants' objection under advisement but permitted Dr. Cahill to testify regarding its contents.

During Nurse German's testimony, Plaintiffs sought to introduce two exhibits: (1) a spreadsheet reflecting the shortfall of PDN service hours of Thrive Skilled Pediatric Care ("Thrive") clients who are under twenty-one years of age and who meet the medically fragile criteria (Exhibit 2), and (2) a waiting list of referred clients requesting PDN Services from Thrive (Exhibit 3).  Defendants objected to the introduction of both exhibits.  The Court admitted Exhibit 2 and took Defendants' objection to Exhibit 3 under advisement, but permitted Nurse German to testify regarding its contents.

During Ms. Parmenter's testimony, Plaintiffs sought to admit a sample Medical Fragility Assessment Factor Worksheet as Exhibit 4.  Defendants objected to its admissibility, and the Court took the objection under advisement, but permitted Ms. Parmenter to testify regarding its contents.

The Motions are now ripe for disposition.  The Court will first address the Motion to Strike before addressing the Motion for Class Certification.

## II.    Motion to Strike

Defendants move to strike Exhibits 1, 2, and 3 to Plaintiffs' Motion for Class Certification as inadmissible, irrelevant, and lacking foundation.  ECF No. 262 at 1.  Defendants argue that under Rule 56 "[t]he Court may consider only admissible evidence when ruling on a motion for summary judgment."  Id. at 2 (citing World of Sleep, Inc. v. La-Z-Boy Chair, Co., 756 F.2d 1467, 1474 (10th Cir. 1985)).  However, they cite no legal provision authorizing them to file a motion to strike exhibits attached to a motion.

Pursuant to the Federal Rules of Civil Procedure, "'[o]nly material included in a 'pleading' may be the subject of a motion to strike, and courts have been unwilling to construe the term broadly.  Motions, briefs, or memoranda, objections, or affidavits may not be attacked by the motion to strike.'"  Dubrovin v. The Ball Corp. Consol. Welfare Benefit Plan for Emps., Civil

Action No. 08–cv–00563–WYD–KMT, 2009 WL 5210498, at *1 (D. Colo. Dec. 23, 2009) (quoting 2 James Wm. Moore et.al., Moore's Federal Practice § 12.37[2] (3d ed. 2004)).  See also Searcy v. Soc. Sec. Admin., 956 F.2d 278 (Table), No. 91-4181, 1992 WL 43490, at *2 (10th Cir. 1992) ("[T]here is no provision in the Federal Rules of Civil Procedure for motions to strike motions and memoranda[.]"); Pimentel & Sons Guitar Makers, Inc. v. Pimentel, 229 F.R.D 201, 203 (D.N.M. 2005) ("Motions and other papers are not pleadings [subject to a motion to strike]."). Specifically, Federal Rule of Civil Procedure 12(f) provides:

> The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act:
>
> **(1)** on its own; or
>
> **(2)** on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading.

Fed. R. Civ. P. 12(f).[4]  Under Rule 7(a), only seven pleadings are permitted: "**(1)** a complaint; **(2)** an answer to a complaint; **(3)** an answer to a counterclaim designated as a counterclaim; **(4)** an answer to a crossclaim; **(5)** a third-party complaint; **(6)** an answer to a third-party complaint; and **(7)** if the court orders one, a reply to an answer."  Fed. R. Civ. P. 7(a).

Here, Defendants have moved to strike exhibits attached to a Motion for Class Certification.  ECF No. 262.  They may not do so.  See Great Am. Ins. Co. v. Crabtree, No. CIV 11–1129 JB/KBM, 2012 WL 3656500, at *18 (D.N.M. Aug. 23, 2012) (denying motion to strike exhibits attached to a motion to dismiss because, inter alia, "the exhibits attached to the Motion to Dismiss are not pleadings within the meaning of rule 12(f)").  See also Overhead Sols., Inc. v. A1 Garage Door Serv., L.L.C., Civil Action No. 1:19-cv-01741-PAB-NYW, 2021 WL 5882140, at

---

[4]       See also Fed. R. Civ. P 14(a)(4) ("Any party may move to strike the third-party claim, to sever it, or to try it separately.").

*8 (D. Colo. Dec. 13, 2021) (denying motion to strike an exhibit attached to a response to a motion because neither a response brief nor an exhibit is a pleading under Rule 12(f)); Estate of George ex rel. George v. City of Rifle, Colo., Civil Case No. 20-CV-00522-CMA-GPG, 2020 WL 13825389, at *2 (D. Colo. Nov. 2, 2020) (denying motion to strike exhibit to motion to dismiss because the court "has no basis under the Federal Rules of Civil Procedure to strike the exhibit"). Therefore, the Motion to Strike is **DENIED**.

However, the Court will consider the arguments Defendants make in their Motion to Strike when considering the Motion for Class Certification.  See Crabtree, 2012 WL 3656500, at *18 (denying motion to strike exhibits attached to a motion to dismiss, but stating that the court would "consider the arguments made in the Motion to Strike when considering the Motion to Dismiss").

### III.   Motion for Class Certification

Plaintiffs seek to certify a class of individuals similarly situated to the named Plaintiffs. ECF No. 235 at 1.  Plaintiffs also ask the Court to recognize DRNM's "associational standing to bring suit on behalf of all medically fragile children in New Mexico who are not receiving the private duty nursing services for which they are qualified."  Id. at 23 (citing Waldrop v. N.M. Human Servs. Dep't, Civ. No. 14–047 JH/KBM, 2015 WL 13665460, at *5-6 (D.N.M. Mar. 10, 2015) (citing 42 U.S.C. § 15043(a)(2)(i)); Lewis v. N.M. Dep't of Health, No. CIV 99-0021 MV/JHG, 2002 WL 35649595, at *7 (D.N.M. Nov. 5, 2002)).

#### A. Class Certification

Plaintiffs seek class certification pursuant to Federal Rule of Civil Procedure 23(a) and (b)(2) for the surviving claims (i.e., their First, Fifth, Sixth, Seventh, Eighth, and Ninth Causes of Action).  ECF No. 235.  Plaintiffs' Motion seeks to define the class as follows: "All Centennial Care 2.0 beneficiaries under the age of 21 in New Mexico who have been approved for private

duty nursing services by Defendants, but are not receiving or are in danger of not receiving the nursing services at the level approved by Defendants." Id. at 2. Plaintiffs' attorneys seek to be named class counsel pursuant to Rule 23(g). Id. at 19-21.

"A district court may certify a class if the proposed class satisfies the requirements of Rule 23(a) and the requirements of one of the types of classes in Rule 23(b)." DG ex rel. Stricklin v. Devaughn, 594 F.3d 1188, 1194 (10th Cir. 2010). Rule 23(a) permits a class action only if:

(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class.

Rule 23(b)(2) permits a class action if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]"

> Rule 23's requirements set forth more than "a mere pleading standard." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011). Rather, "[a] party seeking class certification must affirmatively demonstrate his compliance with the Rule." Id. That is, the party seeking class certification must prove the requirements "are in fact" satisfied. Id. And the district court must conduct a rigorous analysis, often necessarily "prob[ing] behind the pleadings[,]" to assure itself the requirements for certification are satisfied. Comcast Corp. v. Behrend, 569 U.S. 27, 33, 133 S. Ct. 1426, 185 L. Ed. 2d 515 (2013) (quoting Wal-Mart Stores, Inc., 564 U.S. at 350, 131 S. Ct. 2541). Nonetheless, "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." Amgen Inc. v. Conn. Ret. Plans & Tr. Funds, 568 U.S. 455, 466, 133 S. Ct. 1184, 185 L. Ed. 2d 308 (2013) ("Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage."). The district court "must generally accept the substantive, non-conclusory allegations of the complaint as true." Vallario v. Vandehey, 554 F.3d 1259, 1265 (10th Cir. 2009). But the court must not relax or shift the burden of proof to liberally construe Rule 23's requirements or resolve doubts in favor of certification. Wallace B. Roderick Revocable Living Tr. v. XTO Energy, Inc., 725 F.3d 1213, 1218 (10th Cir. 2013)

("Relaxing and shifting Rule 23(a)'s strict burden of proof results in an abuse of discretion . . . ." (internal quotation marks and citations omitted)).

Black v. Occidental Petroleum Corp., 69 F.4th 1161, 1173-74 (10th Cir. 2023). If the Court certifies a class action, it must appoint class counsel pursuant to Rule 23(c)(1)(B) and (g).

Before turning to the requirements of Rule 23, the Court must determine the adequacy of the class definition. See Troudt v. Oracle Corp., 325 F.R.D. 373, 375 (D. Colo. 2018) ("The adequacy of the class definition must be determined before the court addresses the other requirements of Rule 23."); Sibley v. Sprint Nextel Corp., 254 F.R.D. 662, 670 (D. Kan. 2008) (addressing class definition before addressing Rule 23(a) requirements).

## 1. Class Definition

Plaintiffs provide two separate class definitions. In their Complaint, they define the proposed class as follows:

> All Centennial Care 2.0 beneficiaries under the age of 21 in New Mexico who have been approved for private duty nursing services by Defendants, but are not receiving the nursing services at the level approved by Defendants.

ECF No. 1 ¶ 32. In their Motion, Plaintiffs define the proposed class more broadly:

> All Centennial Care 2.0 beneficiaries under the age of 21 in New Mexico who have been approved for private duty nursing services by Defendants, but are not receiving or are in danger of not receiving the nursing services at the level approved by Defendants.

ECF No. 235 at 2 (emphasis added).

The Court finds that the narrower definition in the Complaint—with one clarification supported by Plaintiffs' evidence and argument—to be appropriate. Specifically:

> All Centennial Care 2.0 beneficiaries under the age of 21 in New Mexico who have been approved for private duty nursing services by Defendants, but are not receiving the nursing services at the level approved by Defendants due to limited availability of services.

The Court finds this class definition to be adequate, faithful to the Complaint and Plaintiffs' arguments, not overinclusive, and supported by analogous authority.  See O.B. v. Norwood, 15 C 10463, 2016 WL 2866132, at *1 (N.D. Ill. May 17, 2016) (certifying class defined as "[a]ll Medicaid-eligible children under the age of 21 in the State of Illinois who have been approved for in-home shift nursing services by the Defendant, but who are not receiving in-home shift nursing services at the level approved by the Defendant, including children who are enrolled in a Medicaid waiver program, such as the Medically Fragile Technology Dependent (MFTD) Waiver program, and children enrolled in the nonwaiver Medicaid program, commonly known as the Nursing and Personal Care Services (NPCS) program").

For the reasons that follow, the Court further finds this class definition meets the requirements of Rule 23.

### 2.  Rule 23(a) Requirements

As stated above, "Rule 23(a) requires numerosity of class members, commonality of at least one question of fact or law among the class, typicality of named plaintiffs' claims or defenses to the class's claims or defenses, and adequacy of the named plaintiffs and their attorneys as class representatives." DG, 594 F.3d at 1194 (citing Fed. R. Civ. P. 23(a)(1)-(4)).

### a)  Numerosity

First, to meet the numerosity element of Rule 23(a)(1), "[t]he burden is upon plaintiffs seeking to represent a class to establish that the class is so numerous as to make joinder impracticable." Trevizo v. Adams, 455 F.3d 1155, 1162 (10th Cir. 2006) (internal quotation marks and citation omitted).  In the Tenth Circuit, "there is 'no set formula to determine if the class is so numerous that it should be so certified.'" Id. (quoting Rex v. Owens ex rel. Oklahoma, 585 F.2d 432, 436 (10th Cir. 1978)).  "The determination is to be made in the particular circumstances of

the case[,]" and the movant "must produce some evidence or otherwise establish by reasonable estimate the number of class members who may be involved." Rex, 585 F.2d at 436 (citation omitted). "Class actions have been deemed viable in instances where as few as 17 to 20 persons are identified as the class." Id. (citing Ark. Educ. Ass'n v. Bd. of Educ., Portland Ark. Sch. Dist., 446 F.2d 763 (8th Cir. 1971)). "Circumstances that may inform the court's impracticability determination include, inter alia, 'geographical dispersion, degree of sophistication, and class members' reluctance to sue individually.'" Felps v. Mewbourne Oil Co., Inc., 336 F.R.D. 664, 670 (D.N.M. 2020) (quoting Amezquita v. Dynasty Insulation, Inc., No. 2:10-cv-01153-MV-CG, 2012 WL 12973895, at *4 (D.N.M. Feb. 23, 2012)).

Here, Plaintiffs estimate in their Motion that the putative class is between fifty-three (53) and 647 individuals based on the UNM Study and the County Map of Medically Fragile Children. ECF No. 235 at 9-13. Plaintiffs also rely on Nurse German's Declaration, her Evidentiary Hearing testimony, and the exhibits introduced during her testimony. At the evidentiary hearing, Plaintiffs also presented the testimony of Ann Marie Parmenter, who is the Director of the Medically Fragile Case Management Program.

### i)      UNM Study and County Map of Medically Fragile Children

In its Order Scheduling an Evidentiary Hearing on Plaintiffs' Motion for Class Certification, the Court ordered that if Plaintiffs intended to use the exhibits attached to their Motion for Class Certification as evidence in support of their Motion,

> those Exhibits shall be presented in an admissible form—e.g., authenticated and supported by affidavit or, preferably, the testimony of an appropriate person— including experts, if necessary. In particular, Plaintiffs shall be prepared to have an appropriate person interpret and explain pages 8 and 9 of the UNM Study. ECF No. 235-1. Additionally, Plaintiffs shall be prepared to demonstrate that HSD's 2022 Data Book is not hearsay (or is admissible as an exception to the rule against

hearsay), and if it is hearsay, Plaintiffs shall be prepared to have an appropriate person testify regarding the map on page 246.

ECF No. 340.  At the evidentiary hearing, Plaintiffs presented Dr. Cahill to testify regarding the UNM Study.  However, they did not present testimony regarding the admissibility of the County Map of Medically Fragile Children from page 246 of HSD's 2022 Data Book, and did not dispute counsel for Defendants' statement that Plaintiffs' counsel told Defendants' counsel that Plaintiffs "were abandoning that document."  Accordingly, the Court finds that the County Map of Medically Fragile Children is inadmissible hearsay and will not consider it as evidence supporting the Motion for Class Certification.

Plaintiffs estimate that there are at least fifty-three (53) class members is based on the UNM Study, which surveyed 208 families who participate in New Mexico's Medically Fragile Waiver program.  See ECF No. 235 at 5.  According to Plaintiffs, fifty-three (53) of the 208 families—approximately 25%—responded that they were not receiving all of their approved PDN hours due to limited availability of services (although Defendants dispute this interpretation of the Study). Id. at 9.  Plaintiffs argue that there are likely more than fifty-three (53) class members because the proposed class is not limited to children served under the Medically Fragile Waiver program, but includes all "New Mexico Medicaid beneficiaries under the age of 21 who meet medically fragile criteria, as required to receive PDN services"—including children who are served under other Medicaid waiver programs and children who are not served under any waiver programs.  Id. at 9-10.

In their Response, Defendants argue that Plaintiffs have failed to present "competent evidence" that the putative class has at least fifty-three (53) members.  ECF No. 261 at 5-6.  In their Motion to Strike, Defendants argue that the UNM Study is "not authenticated, supported by

affidavit or other testimony or have any foundation."  ECF No. 262 at 3. They argue that the UNM

Study—which appears to be a PowerPoint presentation—does not contain the information for

which it is cited, does not identify where the information came from, and does not identify its

author or presenters or otherwise indicate who compiled the statistics. Id. at 3-4.  They argue that

they cannot cross-examine a document without adequate foundation or authentication.  Id. at 4.

Plaintiffs argue that Defendants do not have a valid basis to challenge the UNM Study; the

UNM Study supports the assertion for which it was cited; and in any event, the dispute concerning

the UNM Study goes to the weight of the evidence, not to its admissibility.  Id. at 4-5.  They argue

that the UNM Study was authored by Anthony Cahill, Ph.D., from the UNM Center for

Development and Disability, who "has a statewide reputation for his capability in evaluating data

. . . ." Id. at 6 (citing Anthony Cahill Bio, University of New Mexico Master of Public Policy,

available at https://mpp.unm.edu/people/affiliated-faculty/profile/anthony-cahill.html (last visited

Nov. 29, 2023)).

At the evidentiary hearing, Plaintiffs called Dr. Cahill to testify as a fact witness regarding

the UNM Study.  Before testifying, counsel for Defendants questioned Dr. Cahill regarding the

foundation and authenticity of the UNM Study.  During the voir dire, Dr. Cahill testified that: (1)

he did not administer the questions to the survey participants, but rather the nurse case managers

who were serving the individual families administered the questions; (2) he could not answer

whether he had "personal knowledge" regarding the data collected and its reliability in light of the

fact that the nurse case managers conducted the interviews, and then transferred the data to Dr.

Cahill as a "de-identified" dataset; (3) the data collected by the nurses was a combination of

"checkmarks and writing down comments that the family members made"; (4) he was "not aware

of" whether he was the official records custodian of the UNM Study; and (5) the data was collected

in 2021, and he had "no way of knowing" whether it is still accurate, if the data has changed, or how it has changed.  After the voir dire, counsel for Defendants repeated her objection that the UNM Study was inadmissible.

In response, counsel for Plaintiffs argued that Dr. Cahill is an expert and can rely on others to collect data, and that Defendants' arguments go to the weight of the evidence, not admissibility. However, counsel for the University of New Mexico objected on the grounds that Dr. Cahill was subpoenaed to testify as a fact witness, not an expert witness, and was not prepared or compensated to testify as an expert.  Counsel for Plaintiffs thereafter did not attempt to qualify Dr. Cahill as a witness.  The Court then asked counsel for Plaintiffs for an alternate theory of admissibility. Counsel for Plaintiffs did not have an alternate basis for admissibility.  The Court specifically asked if the UNM Study was admissible as a public record, but counsel for Plaintiffs did not argue that it was.  The Court took Defendants' objection under advisement and permitted counsel to question Dr. Cahill regarding the UNM Study.

As relevant here, Dr. Cahill testified that the UNM Study asked survey participants whether they received the number of hours authorized in their Individualized Service Plans ("ISP"), and that fifty-three (53) responded that they did not receive all of their ISP hours due to limited availability of services.  However, on cross-examination Dr. Cahill testified that PDN hours are only one component of "a long list of services" included in ISP hours, which also includes, inter alia, "home health aides, occupational therapy, [and] physical therapy[.]"  He further testified that the UNM Study did not ask respondents which specific services they did not or could not get; consequently, he could not testify whether the fifty-three (53) survey participants who responded that they did not receive all of their ISP hours due to limited availability of services were not receiving their allotted number of PDN hours—or some other service or services under the ISP

rubric—due to limited availability.  As such, he testified that the UNM Study does not help the Court determine which respondents did not receive PDN services that they were approved for due to limited availability.  Dr. Cahill further testified that the UNM study included medically fragile adults as well as medically fragile children, and therefore the fifty-three (53) survey participants who responded that they did not receive all of their ISP hours due to limited availability of services could also include medically fragile adults.  However, he could not testify as to what percentage of those fifty-three (53) respondents were medically fragile adults.  He further testified that the study was not intended to determine whether medically fragile children were receiving their allotted number of PDN hours.  Rather, the director of the Medically Fragile Program asked Dr. Cahill to "put together a program-wide needs assessment that would capture a global assessment of what was working, what families felt wasn't working.  We included respite. We included what are called 'natural community supports'; that is, family and friends."  Finally, he testified that he did not have personal knowledge of the data included in the UNM Study because he did not conduct the actual interviews with the survey participants.

Under the Federal Rules of Evidence, "hearsay" is a statement that: "(1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement."  Fed. R. Evid. 801(c).  A "statement" is "a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion."  Fed. R. Evid. 801(a).  Generally, hearsay is inadmissible unless, for example, it falls within an exception to the rule against hearsay.  Fed. R. Evid. 802, 803, 804.  "Hearsay within hearsay is not excluded by the rule against hearsay if each part of the combined statements conforms with an exception to the rule."  Fed. R. Evid. 805.  The proponent of hearsay evidence has the burden of establishing the applicability of an exception to the rule against hearsay.  <u>United</u>

States v. Irvin, 682 F.3d 1254, 1262 (10th Cir. 2012) (citing United States v. Ary, 518 F.3d 775, 786 (10th Cir. 2008)).

Here, the Court finds that the UNM Study offered as Exhibit 1 constitutes hearsay within hearsay within hearsay.  At the first level are the survey participants' oral responses to the nurse case managers conducting the interviews; at the second level are the nurses' written recordings of the survey participants' oral responses; and at the third level is the UNM Study offered as Exhibit 1, which is Dr. Cahill's summary of the data gathered by the nurses, which Plaintiffs have offered for the truth of the matter asserted.  However, Plaintiffs have failed to identify any exceptions to the rule against hearsay which would permit the Court to admit the UNM Study.  In fact, counsel for Plaintiffs declined the Court's invitation to attempt to qualify Dr. Cahill as an expert, which would have potentially permitted him to testify regarding the data collected by the nurses, see Fed. R. Evid. 703, and declined the Court's invitation to argue that the UNM Study admissible under an alternate theory.  Because Plaintiffs have failed to carry their burden of establishing the applicability of an exception to the hearsay rule, the Court sustains Defendants' objection to the introduction of the UNM Study and finds that it is inadmissible to support Plaintiffs' Motion for Class Certification.  See Ary, 518 F.3d at 786 ("The proponent of the document must also lay this foundation for its admission."); Skyline Potato Co., Inc. v. Hi-Land Potato Co., Inc., No. CIV 10–0698 JB/RHS, 2013 WL 311846, at *25 (D.N.M. Jan. 18, 2013) (finding that certain statements in a document were inadmissible as hearsay within hearsay); Amos v. W.L. Plastics, Inc., No. 2:07–CV–49 TS, 2010 WL 257267, *2 (D. Utah Jan. 19, 2010) (finding that hearsay statements contained within otherwise admissible documents were inadmissible because the proponent of the

evidence "offered no exception to the hearsay rule for the hearsay statements contained in the . . . documents").[5]

### ii)      Michelle German

In their Motion for Class Certification, Plaintiffs also cite the Declaration of Michelle German, a Registered Nurse and the Location Director at Thrive Skilled Pediatric Care, which provides PDN services as an EPSDT Medicaid benefit.  ECF No. 235-3 ¶¶ 1-2, 7.  The Declaration states that Thrive currently serves sixty-three (63) clients under the age of 21 on the Medically Fragile Waiver, id. ¶ 10, eleven (11) clients under the age of 21 on the Mi Via Waiver, id. ¶ 11, and fourteen (14) non-waiver EPSDT-only beneficiaries who are, by definition, under the age of 21, id. ¶ 12.  All of these clients meet medically-fragile criteria, and all of them have had their level of care assessments confirm their eligibility to receive Private Duty Nursing services as medically necessary services.  Id. ¶ 14.  Thrive has a waitlist of potential clients that "is typically about twenty-five (25) Medicaid members long on any given week."  Id. ¶ 44.  Nurse German states that Thrive produces weekly reports on the number of clients who are receiving some, but not all, of their approved and requested PDN services, id. ¶ 15-16, but Plaintiffs did not attach the results of those reports to the Motion.

---

[5]      Even if the UNM Study was admissible, it has little—if any—probative value regarding the numerosity of the proposed class.  The UNM Study revealed that fifty-three (53) survey participants responded that they did not receive all of their ISP hours due to limited availability of services.  However, PDN service hours are only one component of "a long list of services" included in ISP hours, which also includes, inter alia, "home health aides, occupational therapy, [and] physical therapy[.]"  The UNM Study did not ask respondents which specific services they did not or could not get, and therefore it is unclear whether any of the fifty-three (53) survey participants who responded that they did not receive all of their ISP hours due to limited availability of services were not receiving their allotted number of PDN hours due to limited availability.  Additionally, the UNM Study included medically fragile adults as well as medically fragile children, and it is unknown how many—if any—of the fifty-three (53) survey participants who responded that they did not receive all of their ISP hours due to limited availability of services were medically fragile children.  In fact, although counsel for Plaintiffs stated at the evidentiary hearing that the UNM Study "includes data that includes the two current named plaintiffs," they offered no evidence that the two named Plaintiffs participated in the UNM Study.  Thus, even if the UNM Study was admissible, the Court could not find that it proves that any medically fragile children were not receiving their allotted number of PDN service hours due to limited availability.

In their Response to the Motion for Class Certification and in their own Motion to Strike, Defendants argue that Nurse German's Declaration does not satisfy Rule 702 of the Federal Rules of Evidence, contains hearsay, lacks foundation, is speculative, and is irrelevant.  ECF No. 261 at 6-9; ECF No. 262 at 6-9.

In their Response to the Motion to Strike, Plaintiffs argue that Nurse German's Declaration is under oath and based on her personal knowledge.  ECF No. 279 at 7.

At the evidentiary hearing, Plaintiffs called Nurse German to testify.  Nurse German testified that Thrive provides PDN services to clients within a 100-mile radius of Albuquerque; Thrive currently has 106 clients; and to her knowledge, all of Thrive's clients meet the Medically Fragile eligibility requirements to receive private duty nursing.

During Nurse German's testimony, Plaintiffs first sought to introduce into evidence as Exhibit 2 a spreadsheet which Nurse German referred to as Weekly Activity and Authorization ("WAR") Reports.  The WAR Reports were run for each week beginning with the week ending May 6, 2023, through the week ending October 28, 2023.  Nurse German testified that the WAR Reports include all of Thrive's clients under the age of 21 in New Mexico, and reflects which clients are not receiving all of their authorized PDN hours.  Counsel for Defendants objected to the admissibility of the WAR Reports as hearsay and for lack of foundation for the underlying data, but counsel for Plaintiffs established a foundation, and the Court admitted the WAR Reports as a record of regularly conducted activity.

As relevant here, Nurse German explained that the "Billable Hours" column of the WAR Reports is "the total number of private duty nursing hours these families received during the given week[,]" and that the "Authorized Hours" column reflects "the expected amount that that they would use weekly from their EPSDT services."  There is also a "Declined Authorized Hours"

column which reflects instances where families "refuse a portion of the hours they are authorized by preference."  Nurse German explained that one could determine which clients were not receiving their allotted amount of PDN service hours by subtracting a client's "Billable Hours" from their "Authorized Hours[,]" and "any discrepancy that would be in the negative column would certainly be hours that the family are requesting be covered[,]" taking into consideration "any hours that the families do decline."  Nurse German clarified that a shortfall in Billable Hours from Authorized Hours indicates that the child "did not receive the level of their requested and approved private duty nursing hours."  On cross-examination, Nurse German further clarified that when Thrive fails to provide the full amount of allotted and requested PDN hours it is because Thrive does not "have access to enough nurses to staff the hours."

The Court has carefully analyzed The WAR Reports and calculated the number of Thrive clients under the age of 21 who received a shortfall in PDN service hours due to limited availability of services (i.e., not including hours declined by the families) for each week reported, as follows:

| Week Ending | Number of Clients Who Received Shortfall |
|---|---|
| 5/6/2023 | 32[6] |
| 5/13/2023 | 31 |
| 5/20/2023 | 33 |
| 5/27/2023 | 34 |
| 6/3/2023 | 28 |
| 6/10/2023 | 27 |

---

[6]    It is possible that 34 clients received a shortfall of PDN service hours due to limited availability of services for the week ending May 6, 2023.  The Bates stamp on the Exhibit obscures the column for Declined Authorized Hours for two of the clients, so it is unclear whether those two clients received a shortfall due to limited availability of services or because their families declined hours.

| | |
|---|---|
| 6/17/2023 | 28 |
| 6/24/2023 | 22 |
| 7/1/2023 | 21 |
| 7/8/2023 | 33 |
| 7/15/2023 | 34 |
| 7/22/2023 | 32 |
| 7/29/2023 | 28 |
| 8/5/2023 | 30 |
| 8/12/2023 | 33 |
| 8/19/2023 | 33 |
| 8/26/2023 | 38 |
| 9/2/2023 | 39 |
| 9/9/2023 | 27 |
| 9/16/2023 | 36 |
| 9/23/2023 | 37 |
| 9/30/2023 | 39 |
| 10/7/2023 | 35 |
| 10/14/2023 | 37 |
| 10/21/2023 | 36 |
| 10/28/2023 | 36 |

Thus, in the twenty-six (26) weeks preceding the evidentiary hearing, an average of more than thirty-two (32) Thrive clients under the age of twenty-one (21) received a shortfall of PDN service hours due to limited availability of services, per week.

Plaintiffs also sought to introduce a waiting list of referred clients requesting PDN Services from Thrive as Exhibit 3.  Nurse German testified that she has personal knowledge of the waiting list and helped create the list; Thrive has a duty to keep the list and keeps the list current and in the regular course of business; and there are twenty-one (21)[7] individuals currently on Thrive's waiting list, all of whom are under twenty-one (21) years of age, who were referred to Thrive by the Medically Fragile Case Management Program.  She further testified that to her knowledge, the individuals on the waiting list are currently not receiving services, or Thrive "wouldn't have them on the referred list."  Defendants objected to the introduction of Exhibit 3 due to lack of foundation and relevance.  The Court took Defendants' objection to Exhibit 3 under advisement, but permitted Nurse German to testify regarding its contents.  The Court now overrules the objection and finds that the waiting list is relevant and admissible as a record of regularly conducted activity.  See Fed. R. Evid. 803(6).

### iii)    Ann Marie Parmenter

At the evidentiary hearing, Plaintiffs also presented the testimony of Ann Marie Parmenter, the director of the Medically Fragile Case Management Program.  Relevant here, Ms. Parmenter testified that a child must meet medically fragile criteria to receive EPSDT PDN services.

Based on the foregoing, the Court finds that Plaintiffs have established that the class is so numerous as to make joinder impracticable.  Plaintiffs have presented evidence that as of the week ending October 28, 2023, at least forty-seven (47) medically fragile children under the age of twenty-one (21) in New Mexico received a shortfall in their allotted PDN service hours due to lack of availability.  And that number comes solely from the current client list (36 children) and waiting

---

[7]    Nurse German testified that she believed there were twenty-two children currently on the waiting list.  However, there are only twenty-one individuals listed on the waitlist introduced as Exhibit 3.

list (21 children) of a single organization that provides PDN services to Medicaid recipients in New Mexico—Thrive Skilled Pediatric Care—which only serves clients within a 100-mile radius of Albuquerque, New Mexico.  The Court can reasonably infer that there are many more such children in New Mexico who live beyond 100 miles from Albuquerque.  See Anderson Living Tr. v. WPX Energy Prod., LLC, 306 F.R.D. 312, 380 (D.N.M. 2015) (quoting Neiberger v. Hawkins, 208 F.R.D. 301, 313 (D. Colo. 2002)) (observing that a court "may make 'common sense assumptions' to support a finding that joinder would be impracticable.'").  However, even if these forty-seven (47) individuals are the only children receiving a shortfall of PDN service hours, the Court still finds that the class is so numerous to make joinder impracticable.  See Felps, 336 F.R.D. at 670 (finding that potential class of 60 members met numerosity element, even though there was little or no geographic diversity among the potential class members); Celano v. Marriott Int'l, Inc., 242 F.R.D. 544, 549 (N.D. Cal. 2007) ("[C]ourts generally find that the numerosity factor is satisfied if the class comprises 40 or more members . . . .").  This is especially so considering that the class members are medically fragile children—some on ventilators—who are unable to institute individual lawsuits.  See Pueblo of Zuni v. United States, 243 F.R.D. 436, 444 (D.N.M. 2007) (citing Colo. Cross-Disability Coal. v. Taco Bell Corp., 184 F.R.D. 354, 359 (D. Colo. 1999)) (observing that the ability of class members to institute individual lawsuits is a factor relevant to determining whether joinder is impracticable).

### b)  Commonality

Next, Plaintiffs must show that "there are questions of law or fact common to the class[.]" Fed. R. Civ. P. 23(a)(2).  Rule 23(a)(2) requires "(i) that the common question is central to the validity of each claim that the proposed class brings; and (ii) that the common question is capable of a common answer."  In re: Santa Fe Natural Tobacco Co. Mktg. & Sales Pracs. & Prods. Liab.

Litig., No. MD 16-2695 JB/LF, 2023 WL 6121894, at *72 (D.N.M. Sept. 19, 2023) (citing Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 348-52 (2011)).  See also Colo. Cross Disability Coal. v. Abercrombie & Fitch Co., 765 F.3d 1205, 1216 (10th Cir. 2014) ("The class's 'common contention 'must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'"") (quoting Wallace B. Roderick Revocable Living Tr. v. XTO Energy, Inc., 725 F.3d 1213, 1218 (10th Cir. 2013) (quoting Wal-Mart, 564 U.S. at 350)). "Commonality requires only a single issue common to the class, and the fact that 'the claims of individual class members may differ factually should not preclude certification under Rule 23(b)(2) of a claim seeking the application of a common policy[.]'" Lopez v. City of Santa Fe, 206 F.R.D. 285, 289 (D.N.M. 2002) (internal citation omitted) (quoting Adamson v. Bowen, 855 F.2d 668, 676 (10th Cir. 1988)).

Plaintiffs argue that the commonality element is satisfied where, as here, the named Plaintiffs seek "system relief" and the proposed class is "subject to the same policies and practices of the defendant."  ECF No. 235 at 14 (discussing DG, 594 F.3d at 1196, and citing Doe v. Comm'r, N.H. Dep't of Health and Human Servs., Civil No. 18-cv-1039-JD, 2020 WL 2129717, at *4-5 (D.N.H. May 4, 2020); Hawkins ex rel. Hawkins v. Comm'r, N.H. Dep't of Health & Human Servs., No. Civ. 99–143–JD, 2004 WL 166722, at *3 (D.N.H. Jan. 23, 2004)). In this regard, they argue that "Defendants' failure to arrange for PDN services, either 'directly or through referral to appropriate agencies, organizations, or individuals' is systemic, and all medically fragile children eligible for EPSDT PDN services stand to suffer as a result." Id. at 15 (citing ECF No. 1 ¶¶ 23-32, 242-44, 254-56; Tr. of Hr'g on Prelim. Inj. 132:17-133:23).  "Additionally, Defendants have systematically failed to arrange for EPSDT PDN services in ways that apply to the whole

proposed class.   Examples include the failure to pay nurses more or otherwise incentivize employment to the degree necessary, or to hire 'travelling nurses' to fill gaps." Id. (citing Tr. of Hr'g on Prelim. Inj. at 163:20-23, 200:21 – 201:9; Kenneth R. ex rel. Tri-Cnty. CAP, Inc./GS v. Hassan, 293 F.R.D. 254, 267 (D.N.H. 2013)).   They further argue that commonality is satisfied where "the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." Id. at 14 (quoting Tyson Foods, Inc. v. Bouaphakeo, 577 U.S. 442, 453 (2016)).   As applied here, Plaintiffs argue that Defendants' "inaction to correct the deficiencies in the PDN service hours and the resulting risk of otherwise unnecessary institutionalization and isolation, which support the claims under the Medicaid Act and disability discrimination laws, are common to Plaintiffs and the proposed class members." Id. at 14-15.   Plaintiffs further argue that "Defendants' substantively identical contracts with MCOs for the provision of services to Plaintiffs and the proposed class demonstrate a 'generalized, class-wide' basis for their claim that Defendants' breach impacts proposed class members commonly." Id. at 15.

At the evidentiary hearing, Plaintiffs sought to introduce as Exhibit 4 a Medically Fragile Case Management Program Worksheet that the Medically Fragile Case Management Program uses for all non-waiver EPSDT clients and individuals who are ventilator dependent, whether they are on the Medically Fragile Waiver or non-waiver.   Counsel for Defendants objected to the Exhibit as irrelevant to class certification and for lack of foundation.   Counsel for Plaintiffs argued that it was relevant to commonality.   The Court reserved ruling and permitted counsel for Plaintiffs to question Ms. Parmenter regarding Exhibit 4.   The Court now finds that Exhibit 4 is irrelevant to class certification in general, and to the commonality factor in particular, and sustains Defendants' objection.

In their Response to the Motion for Class Certification, Defendants simply assert that "[m]edically fragile children have such individualized needs based on medical necessity that they cannot be treated as a class.  The analysis of home skilled nursing hours, the medical necessity determinations and type of care, none of which are done by HSD, all involve individualized determinations rather than common questions of fact."  ECF No. 261 at 6.

Defendants cite no authority in support of their argument, which alone is reason to reject it.  D.N.M.LR-Civ. 7.3(a) ("A motion, response or reply must cite authority in support of the legal positions advanced."); Quarrie v. Wells, Civ. No. 17-350 MV/GBW, 2020 WL 2526629, at *4 (D.N.M. May 18, 2020) (denying motion for failure to cite any supporting authority in violation of Local Rule 7.3(a)); JL v. N.M. Dep't of Health, 165 F. Supp. 3d 1048, 1069 (D.N.M. Feb. 24, 2016) (same).

Defendants' argument is also meritless: "the remedies the class seeks—declaratory relief and an injunction directing the Secretary to follow the proper law of this circuit—do not depend on the individual facts of each case, but apply equally to all cases pending within the class." Adamson, 855 F.2d at 676.  "That the claims of individual class members may differ factually should not preclude certification under Rule 23(b)(2) of a claim seeking the application of a common policy." Id. (citing Liberty Alliance of the Blind v. Califano, 568 F.2d 333, 346-47 (3d Cir. 1977)).  See also Shook v. El Paso Cnty., 386 F.3d 963, 972 (10th Cir. 2004) ("Shook I") (rejecting the defendants' argument that the named plaintiffs' individual claims for deliberate indifference against the El Paso County, Colorado jail due to lack of access to mental health care "are too varied to meet the commonality and typicality requirements because each prisoner's claim requires a particularized analysis on the merits").

Here, there are common questions central to the validity of each claim that the proposed class brings that are capable of classwide resolution.  With respect to Plaintiffs' First Cause of Action, the question is whether the class has a right to enforce HSD's contracts with the MCOs, see ECF No. 1 ¶¶ 159-75, 267-68; with respect to Plaintiffs' Fifth Cause of Action, the question is whether Defendants breached their contract with the MCOs, id. ¶¶ 212-21; and with respect to the Sixth, Seventh, Eighth, and Ninth Causes of Action, the question is whether Defendants' systemic failure to provide the class with their approved number of PDN service hours violates the class's rights under the Medicaid Act, the ADA, the Rehabilitation Act, and the PPACA, id. ¶¶ 212-63, 270.

At least two district courts have found commonality where, as here, the plaintiffs' claims were based on allegations that the defendants failed to provide or arrange for all of the in-home nursing services to which they were entitled, in violation of the Medicaid Act, the ADA, and the Rehabilitation Act.  I.N. ex rel. Zarinah F. v. Kent, No. C 18-03099 WHA, 2019 WL 1516785, at *2 (N.D. Cal. Apr. 7, 2019) ("The claims of each class member regarding the extent to which defendants failed to arrange for necessary levels of in-home nursing services and defendants' resulting liability under federal law are common to the class."); O.B., 2016 WL 2866132, at *4. For example, in O.B., the Court found commonality based on the plaintiffs' "allegation of a 'systemic failure' to comply with the Medicaid Act's ESPDT [sic] component that has harmed all putative plaintiffs."  Id. (citing Jamie S. v. Milwaukee Pub. Schs., 668 F.3d 481, 498 (7th Cir. 2012) (observing that "systemic failure" or "illegal policy" can "provide the 'glue' necessary to litigate otherwise highly individualized claims as a class," where the agency "operated under" policies "that violated" the act in question)).  The Court agrees with O.B. that "[i]n such a case (as here), 'every plaintiff is suffering the same injury as a result of a general policy of the State—even

if the services recommended for each patient vary among the class members'—and 'it is resolvable on a class-wide basis.'"  Id. (quoting N.B. v. Hamos, 26 F. Supp. 3d 756, 773 (N.D. Ill. 2014)). As such, Plaintiffs have sufficiently established commonality under Rule 23(a)(2).  See ECF No. 1 ¶¶ 159-75, 212-63, 267-68, 270.

### c) Typicality

Next, Plaintiffs must show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class[.]"  Fed. R. Civ. P. 23(a)(3).  "The interests and claims of Named Plaintiffs and class members need not be identical to satisfy typicality."  DG, 594 F.3d at 1198 (citing Anderson v. City of Albuquerque, 690 F.2d 796, 800 (10th Cir. 1982)).  "Provided the claims of Named Plaintiffs and class members are based on the same legal or remedial theory, differing fact situations of the class members do not defeat typicality."  Id. (citing Adamson, 855 F.2d at 676).  The Supreme Court has noted that "[t]he commonality and typicality requirements of Rule 23(a) tend to merge."  Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 157 n.13 (1982).  The Tenth Circuit has stated that "like commonality, typicality exists where, as here, all class members are at risk of being subjected to the same harmful practices, regardless of any class member's individual circumstances."  DG, 594 F.3d at 1199 (citing Milonas v. Williams, 691 F.2d 931, 938 (10th Cir. 1982)).

Plaintiffs argue that typicality is satisfied because the Complaint alleges that: (1) all proposed class members are EPSDT Medicaid beneficiaries who are entitled to PDN hours that must be provided by Defendants, whether through direct efforts or through enforcement of their contracts with the MCOs, ECF No. 235 (citing ECF No. 1 ¶¶ 1, 7, 13-15, 37, 58-72, 81-86); (2) Defendants have failed to provide the required PDN hours through either enforcement of the MCO contracts or otherwise, id. (citing ECF No. 1 ¶¶ 212-21, 231-32, 242-44, 254-54); (3) Defendants

have failed to comply with EPSDT's mandate to arrange for medically necessary PDN hours as to all proposed class members, id. (citing ECF No. 1 ¶¶ 261-63); and (4) all proposed class members are exposed to the risk of institutionalization or isolation from the community because of a shortfall in PDN services, in violation of federal law, id. (citing ECF No. 1 ¶¶ 222-59).  They argue that they have demonstrated that the Named Plaintiffs are subjected to the same harmful practices as the proposed class—specifically, each are entitled to more hours of PDN services than they are receiving, and are at risk of institutionalization because of the shortfall of PDN services.  Id. (citing Decl. of Margaret Agard ("Agard Decl."), ECF No. 59-1 ¶¶ 13-23; Tr. of Prelim. Inj. Hr'g, ECF No. 220 at 75:8-16, 84:19-86:6, 90:6-91:4; Pls.' Position Statement & Br. as to PDN and Home Health Aide Hours for Pls. A.C. & C.V., ECF No. 97; Pl.'s Notice of Errata & Notice of Filing of Exs. to Pls.' Position Statement & Br. as to PDN and Home Health Aide Hours for Pls. A.C. and C.V., ECF No. 98; German Decl., ECF No. 235-3 ¶¶ 15-16, 43-51; Decl. of Christina Garcia, ECF No. 59-2 ¶ 14).  They further argue that typicality exists because they have demonstrated that the process by which a medically fragile child is approved for PDN hours is uniform among applicants, id. at 19 (citing Agard Decl., ECF No. 59-1); Defendants' low pay rates for PDN hours is seen as significant factor in the lack of available nurses for Plaintiffs, id. (citing Agard Decl. ¶¶ 26-27); Defendants fail to contract with other nursing agencies to fill the gaps in service to meet the PDN hours needed for the children approved to receive them, id. (citing Agard Decl. ¶¶ 25; Tr. of Prelim. Inj. Hr'g at 201:3-9); and "[f]amilies struggle to provide appropriate care for their medically fragile child without the assistance of Private Duty Nursing services in the home[,]" id. (quoting Agard Decl. ¶ 28).

        In their Response, Defendants argue that typicality does not exist because "[t]he analysis of home skilled nursing hours, the medical necessity determinations and type of care, none of

which are done by HSD, all involve individualized determinations rather than typical issues." ECF No. 261 at 7.

Once again Defendants fail to cite any authority in support of their argument, which is reason enough to reject it. D.N.M.LR-Civ. 7.3(a); Quarrie, 2020 WL 2526629, at *4; JL, 165 F. Supp. 3d at 1069.

In any event, Defendants' argument is meritless. Shook I, 386 F.3d at 972 (rejecting the defendants' argument that the named plaintiffs' individual claims for deliberate indifference against the El Paso County, Colorado jail due to lack of access to mental health care "are too varied to meet the commonality and typicality requirements because each prisoner's claim requires a particularized analysis on the merits"). Regardless of any class member's individual circumstances, typicality exists because "[t]he claims of Named Plaintiffs and class members are based on the same legal or remedial theory[,]" DG, 594 F.3d at 1198 (citing Adamson, 855 F.2d at 676), and the record demonstrates that "all class members are at risk of being subjected to the same harmful practices . . . ." id. at 1199 (citing Milonas, 691 F.2d at 938). As to the First Cause of Action, the Complaint alleges (and the record tends to demonstrate) that Defendants' failure to enforce their contracts with the MCOs has resulted in violations of the Named Plaintiffs and class's rights under federal law. ECF No. 1 ¶¶ 1, 7-9, 13-15, 32, 35-37, 101-75; Managed Care Services Agreement, ECF No. 21-1 ¶¶ 4.5.2.1.4, 4.5.2.1.5, 7.6.2.1, 7.6.2.5; Tr. of Prelim. Inj. Hr'g, ECF No. 109 at 65:4-6, 67:4-7, 68:18 – 69:9, 70:22-24;  83:23 – 84:4; 90:7 – 91:4. As to the Fifth Cause of Action, the Complaint alleges (and the record tends to demonstrate) that Defendants have breached their contracts with the MCOs, causing injury to the class. ECF No. 1 ¶¶ 84-85, 98-99, 102, 106-12, 118-21, 124-32, 139-52, 155-58; Managed Care Services Agreement, ECF No. 21-1 ¶¶ 4.5.2.1.4, 4.5.2.1.5, 7.6.2.1, 7.6.2.5. And as to the Sixth, Seventh, Eighth, and Ninth Causes of

Action, the Complaint alleges (and the record tends to demonstrate) that the Named Plaintiffs and the putative class are all subject to Defendants' systemic failure to provide or arrange for all of the PDN service hours they are approved for, in violation of the Medicaid Act, the ADA, the Rehabilitation Act, and the PPACA. ECF No. 1 ¶¶ 1, 7-9, 13-15, 32, 35-37, 101-58, 212-63; Tr. of Prelim. Inj. Hr'g, ECF No. 109 at 65:4-6, 67:4-7, 68:18 – 69:9; 83:23 – 84:4; 90:7 – 91:4.

The Named Plaintiffs and putative class are also seeking common remedies—for example, they seek to enforce the contracts between HSD and the MCOs, ECF No. 1 ¶¶ 159-75, 212-21, and seek injunctive relief under the Medicaid Act, the ADA, the Rehabilitation Act, and the PPACA, id. ¶¶ 222-63, 271-72. Consequently, Plaintiffs have established typicality. See I.N., 2019 WL 1516785 at *2 (finding typicality element was satisfied where the "[t]he claims of each class member regarding the extent to which defendants failed to arrange for necessary levels of in-home nursing services and defendants' resulting liability under federal law are common to the class"); O.B., 2016 WL 2866132, at *4 (finding typicality element was satisfied where despite differences between the plaintiffs' medical conditions and the services required to treat them, "the named Plaintiffs here challenge the same alleged systemic failure to provide 'medically necessary' EPSDT services that harms every other class member").

### d)  Adequacy of Representation

Next, Plaintiffs must show that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement looks to whether the named plaintiffs and their counsel (1) have any conflicts with other proposed class members and (2) will vigorously prosecute the action on the class's behalf.[8] In re: Santa Fe Natural Tobacco Co. Mktg.

---

[8]       Separate from the adequacy-of-representation requirement of Rule 23(a)(4) is the adequacy-of-counsel requirement in Rule 23(g). See In re: Santa Fe Natural Tobacco Co. Mktg. & Sales Pracs. & Prods. Liab. Litig., 2023 WL 6121894, at *75 (observing that "[a]lthough Tenth Circuit precedent suggests that the adequacy-of-

& Sales Pracs. & Prods. Liab. Litig., 2023 WL 6121894, at *75 (citing Rutter & Willbanks Corp. v. Shell Oil Co., 314 F.3d 1180, 1187-88 (10th Cir. 2002)). "The adequacy requirement protects the interests of unnamed proposed class members – who are bound by any judgment in the action." Id. (citing Lile v. Simmons, 143 F. Supp. 2d 1267, 1277 (D. Kan. 2001)).

Plaintiffs argue that their "interests are squarely aligned with the class[,]" ECF No. 235 at 20; they "do not have interests antagonistic to those of the proposed class[,]" id.; "they will devote the necessary resources to this litigation and will continue to pursue this action vigorously on behalf of the class[,]" id.; "[n]one of the named Plaintiffs seeks personal monetary relief nor individual relief to the exclusion of other class members; rather, they all share an interest in obtaining similar relief[,]" id.; and "no conflicts exist between counsel, named Plaintiffs, and the proposed class members that would compromise their ability to represent the proposed class[,]" id.

Defendants argue that the Named Plaintiffs are not adequate representatives of the class because "[e]ach of the two named Plaintiffs are described differently and, even though both are medically fragile children, they are not similar to each other and have personalized ISPs and the reasons for the number of hours of in home skilled care are very different." ECF No. 261 at 8. They argue that "Plaintiffs have not met their burden individually to be adequate representatives of all medically fragile children in New Mexico and there has not even been an attempted showing that they could represent all Centennial Care 2.0 beneficiaries under the age of 21 in New Mexico who have been approved for private duty nursing services by Defendants, but are not receiving or are in danger of not receiving the nursing services." Id.

---

counsel analysis is conducted as a part of the rule 23(a)(4) inquiry, see Lopez v. City of Santa Fe, 206 F.R.D. at 289-90, this analysis has now been moved to rule 23(g)" pursuant to a 2003 amendment to the Rule). The Court will address the adequacy-of-counsel requirement in Section III(A)(4), infra.

Once again Defendants fail to cite any authority in support of their argument, which is reason enough to reject it.  D.N.M.LR-Civ. 7.3(a); <u>Quarrie</u>, 2020 WL 2526629, at *4; <u>JL</u>, 165 F. Supp. 3d at 1069.

Regardless, Defendants argument is inapposite.  "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" <u>Rutter & Willbanks</u>, 314 F.3d at 1187-88.  Defendants do not address these questions, and nothing in the record indicates that the named Plaintiffs have any conflicts of interest with absent class members or will not prosecute this action vigorously on behalf of the class.  Therefore, the Court finds that Plaintiffs have established adequacy of representation.  <u>I.N.</u>, 2019 WL 1516785, at *2; <u>O.B.</u>, 2016 WL 2866132, at *4.

In sum, the Court finds that all of the requirements of Rule 23(a) are satisfied, and now turns to the requirements of Rule 23(b)(2).

### 3.  Rule 23(b)(2)

Rule 23(b)(2) provides that "[a] class action may be maintained if Rule 23(a) is satisfied and if . . . the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]"

> By its terms, then, Rule 23(b)(2) imposes two independent but related requirements. In the first place, the defendants' actions or inactions must be based on grounds generally applicable to all class members. . . .  The latter half of Rule 23(b)(2) requires that final injunctive relief be appropriate for <u>the class as a whole</u>.  The rule therefore authorizes an inquiry into the relationship between the class, its injuries, and the relief sought, and we have interpreted the rule to require that a class must be "amenable to uniform group remedies."  <u>Shook I</u>, 386 F.3d at 973.  Put differently, Rule 23(b)(2) demands a certain cohesiveness among class members with respect to their injuries, the absence of which can preclude certification.

> Maldonado v. Ochsner Clinic Found., 493 F.3d 521, 524 (5th Cir.2007); In re St. Jude Med., Inc., 425 F.3d 1116, 1121 (8th Cir. 2005); Barnes v. Am. Tobacco Co., 161 F.3d 127, 143 (3d Cir. 1998); see also Newberg § 4.11.
>
> This cohesiveness has at least two aspects.  First, the class must be sufficiently cohesive that any classwide injunctive relief can satisfy the limitations of Federal Rule Civil Procedure 65(d)—namely, the requirement that it "state its terms specifically; and describe in reasonable detail . . . the act or acts restrained or required."  Fed.R.Civ.P. 65(d)(1); Monreal v. Potter, 367 F.3d 1224, 1236 (10th Cir. 2004). Second, "[a] class action may not be certified under Rule 23(b)(2) if relief specifically tailored to each class member would be necessary to correct the allegedly wrongful conduct of the defendant."  5 Moore's Fed. Prac. § 23.43(2)(b) at 23–195 (3d.2000).  So, if redressing the class members' injuries requires time-consuming inquiry into individual circumstances or characteristics of class members or groups of class members, "the suit could become unmanageable and little value would be gained in proceeding as a class action."  Barnes, 161 F.3d at 143.  Indeed, it is precisely these types of manageability issues—relating to the district court's "ability to provide injunctive relief to the class framed in the complaint," Shook I, 386 F.3d at 974, a textually authorized consideration—that we held permissible in Shook I, id. at 973 ("Elements of manageability and efficiency are not categorically precluded in determining whether to certify a 23(b)(2) class.").  And individual issues cannot be avoided simply by formulating an injunction at a stratospheric level of abstraction; as we have explained before, "injunctions simply requiring the defendant to obey the law are too vague to satisfy Rule 65."  Monreal, 367 F.3d at 1236 (internal alterations omitted) (quoting Keyes v. Sch. Dist. No. 1, Denver, Colo., 895 F.2d 659, 668 & n. 5 (10th Cir. 1990)).  In short, under Rule 23(b)(2) the class members' injuries must be sufficiently similar that they can be addressed in an [sic] single injunction that need not differentiate between class members.

Shook v. Bd. of Cnty. Comm'rs of Cnty. of El Paso, 543 F.3d 597, 604 (10th Cir. 2008) ("Shook II").

Plaintiffs argue that the relief they seek is "appropriate and necessary to the proposed class as a whole" because "it remedies Defendants' systemic failure to ensure the provision of allotted PDN hours." ECF No. 235 at 21.  They argue that they are seeking classwide injunctive relief, not individual relief, and are not asking the Court to make individual inquiries into each class member's shortfall of PDN hours.  Id.  Rather, they argue that the "Complaint asks the Court to order Defendants to gather this data and act to furnish the required PDN hours."  Id.  They argue

that "[t]he relief Plaintiffs seek would not mandate a particular outcome for individual class members; it would mandate Defendants' compliance with state and federal law, which would in turn lead to individualized results for class members." Id. (citing Damus v. Nielsen, 313 F. Supp. 3d 317, 334 (D.D.C. 2018), and discussing O.B., 2016 WL 2866132, at *2, 5).

In their Response, Defendants do not specifically address the standard under Rule 23(b)(2), and cite the slip opinion of a case discussing the standard under Rule 23(b)(3).  ECF No. 261 at 8-9 (citing Lukas v. Advocate Health Care Network & Subsidiaries, Case No: 1:14-cv-2740, slip op. at 4-5 (N.D. Ill. Aug. 19, 2015)).[9]  They argue that Plaintiffs have not presented evidence that the Named Plaintiffs are similarly situated to the putative class members who are not receiving PDN services under the Medically Fragile Waiver program or to any other child that receives EPSDT services under a different waiver, or no waiver.  Id. at 9.  They argue that each child's needs and care are unique and individualized, making certification improper.  Id. at 9-10 (citing Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 172 (3d Cir. 2001); Holmes v. Pension Plan of Bethlehem Steel Corp., 213 F.3d 124, 137-38 (3d Cir. 2000)).

The Court finds that class certification is appropriate under Rule 23(b)(2) because (1) Defendants' actions and/or inactions—i.e., their failure to enforce their contracts with the MCOs or otherwise provide or arrange for Plaintiffs to receive the number of PDN service hours to which they are entitled—are generally applicable to all class members; and (2) final injunctive and declaratory relief would be appropriate for the class as a whole.  Indeed, the named Plaintiffs and putative class seek uniform injunctive and declaratory relief, including a permanent injunction "requiring Defendants to furnish and fulfill authorized private-duty nursing hours, directly or

---

[9]         Defendants did not provide the Court with a copy of this slip opinion.

through referral to appropriate agencies, organizations or individuals, to Plaintiffs and Class members[.]" <u>See</u> ECF No. 1 ¶ 271.  No individual determinations are necessary to grant Plaintiffs' requested relief.  <u>See</u> <u>O.B.</u>, 2016 WL 2866132, at *5.  The requirements of Rule 23(b)(2) "are unquestionably satisfied when members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class as a whole." <u>Parsons v. Ryan</u>, 754 F.3d 657, 688 (9th Cir. 2014).  Consequently, the Court finds that the requirements of Rule 23(b)(2) are satisfied.  <u>See</u> <u>I.N.</u>, 2019 WL 1516785, at *3 (finding the requirements of Rule 23(b)(2) were satisfied where the "action only seeks injunctive relief and the proposed settlement agreement would provide for uniform class-wide relief, including the designation of a Medi-Cal program or contracted organization that will provide case management services to secure class members' approved in-home nursing services, oversight and monitoring of case management agencies by defendants, and the ability for class members to contact DHCS directly with questions or concerns about their in-home nursing or the case management services they are receiving"); <u>O.B.</u>, 2016 WL 2866132, at *4 (finding the requirements of Rule 23(b)(2) were satisfied where the plaintiffs sought class-wide relief "to remedy the systems in place that allegedly fail and/or prevent the arrangement of medically necessary EPSDT services in violation of the Medicaid Act, and which allegedly segregate, threaten to segregate, or otherwise discriminate against Plaintiffs in violation of the Rehabilitation Act, the ADA, and their integration mandates.  Such relief would benefit the entire class.  And, as explained above, no individual determinations are necessary to grant it, since the medical necessity of the services in question has already been determined for each class member by HFS.").

Having demonstrated that the requirements of Rule 23(a) and (b)(2) are satisfied, Plaintiffs' Motion is **GRANTED** to the extent it seeks class certification.  The following class is certified for

the surviving causes of action: All Centennial Care 2.0 beneficiaries under the age of 21 in New Mexico who have been approved for private duty nursing services by Defendants, but are not receiving the nursing services at the level approved by Defendants due to limited availability of services.

### 4.  Adequacy of Counsel

Having found that class certification is appropriate in this case, the Court must appoint class counsel.  Fed. R. Civ. P. 23(c)(1)(B).  Rule 23(g) provides:

> **(1) *Appointing Class Counsel.*** . . . In appointing class counsel, the court:
>
> **(A)** must consider:
>
>> **(i)** the work counsel has done in identifying or investigating potential claims in the action;
>>
>> **(ii)** counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>>
>> **(iii)** counsel's knowledge of the applicable law; and
>>
>> **(iv)** the resources that counsel will commit to representing the class;
>
> **(B)** may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class;
>
> **(C)** may order potential class counsel to provide information on any subject pertinent to the appointment and to propose terms for attorney's fees and nontaxable costs;
>
> **(D)** may include in the appointing order provisions about the award of attorney's fees or nontaxable costs under Rule 23(h); and
>
> **(E)** may make further orders in connection with the appointment.
>
> **(2) *Standard for Appointing Class Counsel.*** When one applicant seeks appointment as class counsel, the court may appoint that applicant only if the applicant is adequate under Rule 23(g)(1) and (4).
> . . .

>*(4) Duty of Class Counsel.* Class counsel must fairly and adequately represent the interests of the class.

Fed. R. Civ. P. 23(g).

Plaintiffs argue that their attorneys "have engaged in significant investigation and identification of claims in this action[,]" ECF No. 235 at 20; "have experience in many public interest cases and in the litigation of complex federal and state actions, including class actions involving disability and Medicaid claims[,]" id. at 21 (citing Simmons Decl., ECF No. 235-4); and "have committed and will continue to commit adequate resources towards the vigorous prosecution of this case[,]" id.; Plaintiffs attach to their Motion the Declaration of Nancy Simmons, one of Plaintiffs' attorneys, who provides information regarding the background and qualifications of each attorney seeking to be named class counsel.  ECF No. 235-4.

Defendants do not challenge Plaintiffs' attorneys' qualifications to be class counsel, or otherwise argue that Plaintiffs' attorneys do not satisfy the requirements of Rule 23(g).  Rather, they simply argue that "DRNM should not be granted associational standing to represent the putative class . . . ."  ECF No. 261 at 8.

However, whether DRNM is "granted associational standing" is irrelevant to whether DRNM's attorneys may represent the class under Rule 23(g).  Indeed, in I.N., the court appointed attorneys from Disability Rights California as class counsel, even though Disability Rights California was not a named Plaintiff.  2019 WL 1516785, at *2-3.  And in any event, three of Plaintiffs' attorneys—Nancy L. Simmons, John Hall, and Stephanie Welch—do not work for DRNM.  See Simmons Decl. ¶¶ 3(a)-(b), (d).

The Court has considered all of the Rule 23(g) factors and Ms. Simmons's Declaration and finds that Plaintiffs' attorneys are adequate under Rule 23(g)(1) and (4).  Therefore, attorneys

Nancy Simmons, John Hall, Jason Gordon, Laurel Nesbitt, Jesse Clifton, Holly Mell, and Stephanie Welch are **APPOINTED** as Class Counsel.[10]

### B. Associational Standing

Finally, Plaintiffs ask the Court to recognize DRNM's "associational standing to bring suit on behalf of all medically fragile children in New Mexico who are not receiving the private duty nursing services for which they are qualified." ECF No. 235 at 23 (citing Waldrop, 2015 WL 13665460, at *5-6 (citing 42 U.S.C. § 15043(a)(2)(i)); Lewis, 2002 WL 35649595, at *7).

Defendants argue that associational standing should be denied because 42 U.S.C. § 15043(a)(2)(i) "addresses specifically and only individuals with developmental disabilities, not the group Plaintiffs propose for class certification before this Court in this case."[11] ECF No. 261 at 11.

The doctrine of standing "is an essential and unchanging part of the case-or-controversy requirement of Article III." Lujan v. Def. of Wildlife, 504 U.S. 555, 560 (1992). As such, "[a]bsent a plaintiff with constitutional standing, federal courts lack jurisdiction." S. Utah Wilderness Alliance v. Palma, 707 F.3d 1143, 1153 (10th Cir. 2013) (citing Summers v. Earth Island Inst., 555 U.S. 488, 192-93 (2009)). To satisfy Article III's standing requirement, a plaintiff must show:

> (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable

---

[10]    The Motion also seeks to appoint Max Kaufman as class counsel, but on September 28, 2023, the Court granted Mr. Kaufman's Unopposed Motion to Withdraw. ECF Nos. 325, 327.

[11]    Defendants also appear to argue that the Court should find that associational standing is no longer a viable doctrine. ECF No. 261 at 18 (citing Ass'n of Am. Physicans & Surgeons v. U.S. Food and Drug Admin., 13 F.4th 531 (6th Cir. 2021)). However, this Court is bound by controlling precedent from the Tenth Circuit Court of Appeals, which still recognizes associational standing. See, e.g., N. N.M. Stockman's Ass'n v. U.S. Fish & Wildlife Serv., 30 F.4th 1210, 1221 (10th Cir. 2022) (holding that ranching organizations had associational standing to challenge a critical habitat designation). Accordingly, the Court declines Defendants' invitation to declare the associational standing doctrine dead.

to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc., 528 U.S. 167, 180-81 (2000).

"Even in the absence of injury to itself, an association may have standing solely as the representative of its members." Warth v. Seldin, 422 U.S. 490, 511 (1975). The Supreme Court has stated that an association has standing to bring suit on behalf of its members when: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Hunt v. Wash. State Apple Advert. Comm'n, 432 U.S. 333, 343 (1977). However, the Supreme Court later indicated that an association has standing to sue on behalf of its members if only the first two Hunt factors are satisfied. United Food & Com. Workers Union Local 751 v. Brown Grp., Inc., 517 U.S. 544, 556 (1996) ("[O]nce an association has satisfied Hunt's first and second prongs assuring adversarial vigor in pursuing a claim for which member Article III standing exists, it is difficult to see a constitutional necessity for anything more.").

Pursuant to the Developmental Disabilities Assistance and Bill of Rights Act, 42 U.S.C. § 15001, et seq., in order for a State to receive federal funding for services for individuals with developmental disabilities,

> **(1)** the State shall have in effect a system to protect and advocate the rights of individuals with developmental disabilities;
>
> **(2)** such system shall—
>
> > **(A)** have the authority to—
> >
> > > **(i)** pursue legal, administrative, and other appropriate remedies or approaches to ensure the protection of, and advocacy for, the rights of such individuals within the State who are or who may be eligible for treatment,

> services, or habilitation, or who are being considered for a change in living
> arrangements, with particular attention to members of ethnic and racial
> minority groups[.]

42 U.S.C. § 15043(a).  Here, it is undisputed that DRNM is the official protection and advocacy

system for persons with developmental disabilities in New Mexico under this statute.  See ECF

No. 1. ¶ 101, ECF No. 235 at 23; ECF No. 261 at 11-12; ECF No. 287 at 7-12.

In Waldrop, Judge Herrera determined that DRNM had associational standing to sue on

behalf of individuals enrolled in New Mexico's home and community-based Medicaid waiver

program for people with developmental disabilities ("Developmental Disabilities Waiver").  2015

WL 13665460, at *5-6.

> As the designated protection and advocacy system for the developmentally disabled
> citizens of New Mexico, DR[N]M possesses the authority to "pursue legal,
> administrative, and other appropriate remedies or approaches to ensure the
> protection of, and advocacy for, the rights of such [developmentally disabled]
> individuals within the State who are or who may be eligible for treatment, services,
> or habilitation . . ." 42 U.S.C. § 15043(a)(2)(i).  Further, Section 15044(b)(1)
> provides that "[n]othing in this title shall preclude a system from bringing a suit on
> behalf of individuals with developmental disabilities against a State, or an agency
> or instrumentality of a State."  Finally, federal law governing protection and
> advocacy systems such as DRNM requires that its government board be composed
> of a majority of members who are individuals with disabilities, or the parents,
> family members, guardians, advocates, or authorized representatives of such
> individuals with disabilities.  42 U.S.C. § 15044(a)(1).  There is nothing in the
> record to suggest that DRNM and its governing board are not in compliance with
> the statute.
>
> On the record before the Court, it appears that DRMN [sic] meets both prerequisites
> for associational standing to sue on behalf of unnamed plaintiffs.  First, because
> DRNM is the official protection and advocacy system for the developmentally
> disabled in New Mexico, DRNM's disabled members would otherwise have
> standing to sue in their own right for violations of their statutory and constitutional
> rights as set forth in the first amended complaint.  Second, it is undisputed and clear
> that the interests that DRNM seeks to protect in this lawsuit are germane to the
> organization's purpose.  Third, the DD Act expressly grants DRNM authority to
> pursue legal remedies on behalf of developmentally disabled New Mexicans.

Id. at *5.  Although HSD conceded that DRNM had associational standing to sue on behalf of the named plaintiffs, Judge Herrera, relying on Lewis, 2002 WL 35649595, at *7, concluded that DRNM also had associational standing to sue on behalf of unnamed individuals.  Id. at *5-6.

While the Court is not persuaded that DRNM has associational standing to sue on behalf of "all medically fragile children in New Mexico who are not receiving the private duty nursing services for which they are qualified," as Plaintiffs request, ECF No. 235 at 23, the Court agrees with Judge Herrera that DRNM has associational standing to sue on behalf of New Mexicans enrolled in the Developmental Disability Waiver, Waldrop, 2015 WL 13665460, at *6.

However, the Complaint does not allege—and Plaintiffs have provided no evidence—that any individuals enrolled in the Developmental Disability Waiver have been approved for private duty nursing services by Defendants and are not receiving the nursing services at the level for which they were approved due to limited availability of services.  Stated differently, Plaintiffs have not alleged or established that any of DRNM's "members" have suffered an injury in fact. Therefore, Plaintiffs have not established that DRNM's members would have standing to sue in their own right, and DRNM consequently lacks associational standing.  HEAL Utah v. PacifiCorp, 375 F. Supp. 3d 1231, 1241-47 (D. Utah 2019) (concluding that environmental organizations lacked associational standing because they failed to establish that one of their members suffered an injury in fact).

## IV.    Conclusion

Accordingly, it is **HEREBY ORDERED** that:

1. Defendants' Motion to Strike Exhibits to Plaintiffs' Opposed Motion for Class Certification and to Recognize Associational Standing by Disability Rights New Mexico, ECF No. 262, is **DENIED**;

2. Plaintiffs' Opposed Motion for Class Certification and to Recognize Associational Standing by Disability Rights New Mexico, ECF No. 235, is **GRANTED IN PART AND DENIED IN PART** consistent with this Order;

3. The following class is **CERTIFIED** for purposes of Plaintiffs' First, Fifth, Sixth, Seventh, Eighth, and Ninth Causes of Action: All Centennial Care 2.0 beneficiaries under the age of 21 in New Mexico who have been approved for private duty nursing services by Defendants, but are not receiving the nursing services at the level approved by Defendants due to limited availability of services; and

4. Attorneys Nancy Simmons, John Hall,[12] Jason Gordon, Laurel Nesbitt, Jesse Clifton, Holly Mell, and Stephanie Welch are **APPOINTED** as Class Counsel.


_____
**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE

---

[12]     Mr. Hall shall enter an appearance in this matter within fourteen days of the date of this Order.