**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

M.G., a minor by and through her
mother Christina Garcia, and
C.V., a minor, by and through
his father Jeremy Vaughan,

    Plaintiffs,

v.

                                          Case 1:22-cv-00325-MIS-DLM

KARI ARMIJO,[1] in her official
capacity as Secretary for the Human
Services Department, State of
New Mexico, and HUMAN
SERVICES DEPARTMENT,

    Defendants.

**ORDER DENYING DEFENDANTS' MOTION TO RECONSIDER THE COURT'S ORDER ENTERED DECEMBER 12, 2023, REGARDING MOTION TO STRIKE AND MOTION FOR CLASS CERTIFICATION AND AMENDING CLASS CERTIFICATION ORDER**

**THIS MATTER** is before the Court on Defendants' Motion to Reconsider the Court's Order Entered December 12, 2023, Regarding Motion to Strike and Motion for Class Certification ("Motion for Reconsideration"), ECF No. 375, filed December 22, 2023. Plaintiffs filed a Response on January 19, 2024, ECF No. 387, to which Defendants filed a Reply on February 12, 2024, ECF No. 391. Upon review of the Parties' submissions, the record, and the relevant law, the Court **DENIES** the Motion and **AMENDS** the Class Certification Order.

---

[1]     Plaintiffs originally named David Scrase, the former Secretary for the New Mexico Human Services Department ("HSD"), as a defendant. ECF No. 1 at 1. Since the filing of the Complaint, Scrase has been replaced in his role at HSD by Acting Secretary Kari Armijo. See ECF No. 176 at 1 n.1. "[W]hen a public officer who is a party in an official capacity . . . ceases to hold office while [an] action is pending[, t]he officer's successor is automatically substituted as a party." Fed. R. Civ. P. 25(d). "Later proceedings should be in the substituted party's name . . . ." Id.

I.      **Relevant Background**

On April 28, 2022, Disability Rights New Mexico, Inc. ("DRNM") and three minors, M.G., A.C., and C.V. ("the Named Plaintiffs"),[2] filed a Class Action Complaint against the New Mexico Human Services Department ("HSD") and the Secretary of HSD—who administer the Medicaid Managed Care program known as Centennial Care 2.0—as well as three Managed Care Organizations ("MCOs").[3] ECF No. 1 ¶ 1. The Complaint alleges that the Named Plaintiffs "are medically fragile children who are eligible to receive medically necessary private-duty nursing care" as part of the early and periodic screening, diagnostic, and treatment ("EPSDT") services Defendants are required to provide pursuant to the Medicaid Act, Title XIX of the Social Security Act, 42 U.S.C. § 1396d(a)(4)(B). Id. ¶¶ 1, 58-66. It alleges that each Named Plaintiff is a "Medically Fragile Waiver participant and Centennial Care 2.0 beneficiary[,]" id. ¶¶ 102, 124, 143, and has been approved for a certain number of hours of private duty nursing ("PDN") services per week or month by New Mexico's Medicaid program, but Defendants are failing to provide them with adequate hours of PDN services, id. at ¶¶ 1-2, 13-15. The Complaint contains class allegations on behalf of the following putative class: "All Centennial Care 2.0 beneficiaries under the age of 21 in New Mexico who have been approved for private duty nursing services by Defendants, but are not receiving the nursing services at the level approved by Defendants." Id. ¶ 32; see also id. ¶¶ 33-57.

On June 30, 2023, Plaintiffs filed a Motion for Class Certification, ECF No. 235, to which they attached exhibits, including a Report on the 2021 Needs Assessment of Parents Served by the

---

[2] On May 15, 2023, Plaintiffs filed a Suggestion of Death stating that A.C. died on May 12, 2023. ECF No. 203.

[3] On October 27, 2022, the Court issued an Order granting the MCO Defendants' Motion to Dismiss, and dismissed the claims asserted against them. ECF No. 77.

Medically Fragile Case Management Program at the University of New Mexico Center for Development and Disability ("UNM Study"), ECF No. 235-1.[4] Defendants filed a Response, ECF No. 261, to which Plaintiffs filed a Reply, ECF No. 287.

On August 7, 2023, Defendants filed a Motion to Strike some of the exhibits attached to Plaintiffs' Motion for Class Certification, including the UNM Study. ECF No. 262. Plaintiffs filed a Response, ECF No. 279, to which Defendants filed a Reply, ECF No. 296.

On November 14, 2023, the Court held an evidentiary hearing on Plaintiffs' Motion for Class Certification. See ECF No. 365. Plaintiffs presented three witnesses: (1) Dr. Anthony Cahill, the author of the UNM Study; (2) Nurse Michelle German; and (3) Anne Marie Parmenter, who is the director of the Medically Fragile Case Management Program. See id.

During Dr. Cahill's testimony, Plaintiffs sought to introduce the UNM Study as Exhibit 1. Defendants objected to the introduction of the UNM Study as irrelevant and for lack of foundation. The Court took Defendants' objection under advisement but permitted Dr. Cahill to testify regarding its contents.

During Nurse German's testimony, Plaintiffs sought to introduce two exhibits: (1) a spreadsheet reflecting the shortfall of PDN service hours of Thrive Skilled Pediatric Care ("Thrive") clients who are under twenty-one years of age and who meet the medically fragile criteria (Exhibit 2) (hereinafter "WAR Reports"), and (2) a waiting list of referred clients requesting PDN Services from Thrive (Exhibit 3) (hereinafter "Thrive Waiting List"). Defendants objected to the introduction of both exhibits. The Court admitted Exhibit 2 and took Defendants'

---

[4] Plaintiffs also attached the Declaration of Registered Nurse Michelle German, ECF No. 235-3, and the Declaration of attorney Nancy L. Simmons, ECF No. 235-4. Plaintiffs also attached a map purporting to reflect the number of medically fragile children served in each New Mexico County as of October 2021 from HSD's 2022 Data Book, ECF No. 235-2, but ultimately abandoned their reliance on that document. See ECF No. 369 at 13.

3

objection to Exhibit 3 under advisement, but permitted Nurse German to testify regarding its contents.

During Ms. Parmenter's testimony, Plaintiffs sought to admit a sample Medical Fragility Assessment Factor Worksheet as Exhibit 4. Defendants objected to its admissibility; the Court took the objection under advisement, but permitted Ms. Parmenter to testify regarding its contents.

On December 12, 2023, the Court issued an Order Granting in Part and Denying in Part Plaintiffs' Motion for Class Certification ("Class Certification Order"). ECF No. 369. Therein, the Court denied Defendants' Motion to Strike the Exhibits to Plaintiffs' Motion for Class Certification, but considered the arguments made therein when considering the Motion for Class Certification. Id. at 7-8.

As to class certification, the Court first found that the Plaintiffs' satisfied their burden of establishing the "numerosity" element of Rule 23(a)(1). Id. at 11-23. The Court sustained Defendants' objection to the UNM Study, which, according to Plaintiffs, established that there are at least 53 class members who were not receiving their allotted number of PDN service hours due to limited availability of services. See id. at 12-17.

However, the Court admitted the WAR Reports and Thrive Waiting List through Nurse German's testimony. Id. at 17-22. The Court "carefully analyzed [t]he WAR Reports and calculated the number of Thrive clients under the age of 21 who received a shortfall in PDN service hours due to limited availability of services (i.e., not including hours declined by the families) for each week reported . . . ." Id. at 20. The Court's calculations established that "in the twenty-six (26) weeks preceding the evidentiary hearing, an average of more than thirty-two (32) Thrive clients under the age of twenty-one (21) received a shortfall of PDN service hours due to limited availability of services, per week[,]" id. at 21, with thirty-six (36) Thrive clients receiving a

shortfall during the week ending October 28, 2023 alone, which was the last week for which there was data, id. The Court further found that the Thrive Waiting List established that as of the date of the evidentiary hearing, "there [we]re twenty-one (21)[5] individuals currently on Thrive's waiting list, all of whom are under twenty-one (21) years of age, who were referred to Thrive by the Medically Fragile Case Management Program." Id. at 22. Based on these numbers, the Court found

> that Plaintiffs have established that the class is so numerous as to make joinder impracticable. Plaintiffs have presented evidence that as of the week ending October 28, 2023, at least forty-seven (47) medically fragile children under the age of twenty-one (21) in New Mexico received a shortfall in their allotted PDN service hours due to lack of availability. And that number comes solely from the current client list (36 children) and waiting list (21 children) of a single organization that provides PDN services to Medicaid recipients in New Mexico—Thrive Skilled Pediatric Care—which only serves clients within a 100-mile radius of Albuquerque, New Mexico. The Court can reasonably infer that there are many more such children in New Mexico who live beyond 100 miles from Albuquerque.

Id. at 22-23 (citing Anderson Living Tr. v. WPX Energy Prod., LLC, 306 F.R.D. 312, 380 (D.N.M. 2015) (quoting Neiberger v. Hawkins, 208 F.R.D. 301, 313 (D. Colo. 2002)) (observing that a court "may make 'common sense assumptions' to support a finding that joinder would be impracticable'").

As Plaintiffs point out in their Response to Defendants' Motion for Reconsideration, ECF No. 387 at 6 n.4, the Court's math was incorrect: 36 + 21 = 57. Therefore, to correct its mathematical error, pursuant to Rule 54(b),[6] the Court hereby sua sponte **AMENDS** its Class Certification Order to reflect that Plaintiffs presented evidence that at least fifty-seven (57)

---

[5] Nurse German testified that she believed there were twenty-two children currently on the waiting list. However, there are only twenty-one individuals listed on the waitlist introduced as Exhibit 3.

[6] Rule 54(b) provides, in relevant part, that an interlocutory order "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b).

medically fragile children under the age of twenty-one (21) in New Mexico received a shortfall in their allotted PDN service hours due to lack of availability as of the week ending October 28, 2023.[7] This only strengthens the Court's conclusion that Plaintiffs established Rule 23(a)'s numerosity element.

The Court's Class Certification Order further found that Plaintiffs established Rule 23(a)'s commonality, typicality, and adequacy of representation elements, ECF No. 369 at 23-33, and that class certification was appropriate under Rule 23(b)(2), id. at 33-36.[8] Consequently, the Court certified the following class: "All Centennial Care 2.0 beneficiaries under the age of 21 in New Mexico who have been approved for private duty nursing services by Defendants, but are not receiving the nursing services at the level approved by Defendants due to limited availability of services." Id. at 36-37.

Finally, the Court denied Plaintiffs' Motion to the extent that it asked the Court to recognize DRNM's associational standing to bring suit on behalf of all medically fragile children in New Mexico who are not receiving the private duty nursing services for which they are qualified. Id. at 42. In this regard, the Court found that although DRNM "has associational standing to sue on behalf of New Mexicans enrolled in the Developmental Disability Waiver," id. at 41 (citing

---

[7] "[T]he general rule is that, when a litigant files a notice of appeal, the district court loses jurisdiction over the case, save for 'collateral matters not involved in the appeal.'" McKissick v. Yuen, 618 F.3d 1177, 1196 (10th Cir. 2010) (citing Lancaster v. Indep. Sch. Dist. No. 5, 149 F.3d 1228, 1237 (10th Cir. 1998)). Here, neither Party filed a Notice of Appeal of the Court's Class Certification Order. However, Defendants' Motion for Reconsideration states that "[c]urrently pending before the Tenth Circuit Court of Appeals are Defendants' appeal of the Court's granting of a preliminary injunction and Plaintiffs' appeal of the District Court's refusal to recognize Disability Rights New Mexico ('DRNM') as a class representative, one of the same issues presented in Plaintiffs Motion for Class Certification." Id. at 2. The Court finds that the issue of numerosity under Rule 23(a) is collateral to both issues currently on appeal. Therefore, the Court has jurisdiction to correct the mathematical error.

[8] The Court further appointed Plaintiffs' counsel as class counsel pursuant to Rule 23(c)(1)(B) and (g). Id. at 37-39.

Waldrop v. N.M. Human Servs. Dep't, Civ. No. 14–047 JH/KBM, 2015 WL 13665460, at *6 (D.N.M. Mar. 10, 2015)), it observed that

> the Complaint does not allege—and Plaintiffs have provided no evidence—that any individuals enrolled in the Developmental Disability Waiver have been approved for private duty nursing services by Defendants and are not receiving the nursing services at the level for which they were approved due to limited availability of services. Stated differently, Plaintiffs have not alleged or established that any of DRNM's 'members' have suffered an injury in fact.

Id. at 42.

On December 22, 2023, Defendants filed the instant Motion for Reconsideration.[9] See ECF No. 375. Plaintiffs filed a Response, ECF No. 387, to which Defendants filed a Reply, ECF No. 391.[10]

## II.     Legal Standard

Federal Rule of Civil Procedure 54(b) provides that an interlocutory order "may be revised at any time before the entry of a [final] judgment[.]" Accordingly, "district courts generally remain free to reconsider their earlier interlocutory orders." Been v. O.K. Indus., Inc., 495 F.3d 1217,

---

[9] Defendants purport to bring their Motion "under Fed. R. Civ. P.[]60(b) which permits filing of a motion based on mistake, inadvertence, surprise, or excusable neglect." ECF No. 375 at 1. Under Rule 60(b)(1), "the court may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . mistake, inadvertence, surprise, or excusable neglect[.]" However, the Court's Class Certification Order is not a final judgment, order, or proceeding. See Hellerstein v. Mr. Steak, Inc., 531 F.2d 470, 472 (10th Cir. 1976); Anderson Living Tr. v. WPX Energy Prod., LLC, 308 F.R.D. 410, 436 (D.N.M. 2015) (citing Fed. R. Civ. P. 23(c)(1)(C); Coopers & Lybrand v. Livesay, 437 U.S. 463, 469 n.11 (1978)). Therefore, the Rule 60(b)(1) standard does not apply. See Raytheon Constructors, Inc. v. Asarco Inc., 368 F.3d 1214, 1217 (10th Cir. 2003) (finding that "[t]he district court was incorrect to treat Raytheon's motion for reconsideration under Rule 60(b), which only applies to final orders or judgments[,]" and construing motion as one under Rule 54(b)); Wagoner v. Wagoner, 938 F.2d 1120, 1122 (10th Cir. 1991) (stating that the plaintiff's "motion for reconsideration was nothing more than an interlocutory motion invoking the district court's general discretionary authority to review and revise interlocutory rulings prior to entry of final judgment"); see also Trujillo v. Bd. of Educ. of Albuquerque Pub. Schs., 212 F. App'x 760, 765 (10th Cir. 2007); In re Akbari-Shahmirzadi, Bankruptcy No. 7–11–15351 TL, Adversary No. 12–1021 T, 2013 WL 1099794, at *3 (Bankr. D.N.M. Mar. 15, 2013) ("It is clear that a motion for reconsideration of a interlocutory order is not governed by the precise standard which applies to Rule 60(b) motions.").

[10] HSD and Secretary Armijo have since filed a Motion for Judgment on the Pleadings Regarding Counts I and V. ECF No. 392. The Court takes no position as to the merits of that Motion at this time, and nothing in the Order should be construed as the Court taking a position as to the merits of that Motion.

1225 (10th Cir. 2007). This power is not subject to any particular standard or framework. See Kruskal v. Martinez, 429 F. Supp. 3d 1012, 1024 (D.N.M. 2019) (observing that Rule 54(b) "(i) provides that a district court can freely reconsider its prior rulings; and (ii) puts no limit or governing standard on the district court's ability to do so, other than that it must do so 'before the entry of judgment[,]'" and further observing that "[t]he Tenth Circuit has not cabined district courts' discretion beyond what rule 54(b) provides: '[D]istrict courts generally remain free to reconsider their earlier interlocutory orders'") (quoting Been, 495 F.3d at 1225). Rather, orders "short of a final decree" may be reopened at the district judge's discretion. Price v. Philpot, 420 F.3d 1158, 1167 n.9 (10th Cir. 2005) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 12 (1983)). However, a motion for reconsideration "is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing." Servants of the Paraclete v. Does, 204 F.3d 1005, 1012 (10th Cir. 2000) (citing Van Skiver v. United States, 952 F.2d 1241, 1243 (10th Cir. 1991)).

**III.   Discussion**

Defendants argue that "the justification for granting this motion to reconsider is the need to correct clear error or prevent manifest injustice to Defendants."[11]  ECF No. 375 at 1. Specifically, they argue that "[t]he Order should be reconsidered and modified because Plaintiffs' motion to be permitted to proceed as a class is not warranted because the putative class members are too disparate to consider them as one single class with a single resolution to their claims." Id.

The Court has already considered this argument and rejected it on the merits. ECF No. 369 at 26-27, 30-31. As such, the Court finds that Defendants' Motion inappropriately attempts to

---

[11] In their Reply, Defendants argue that "the Court was mistaken in issuing its Order, and the Order was entered through inadvertence or misapprehension of facts or excusable neglect." ECF No. 391 at 1.

8

"revisit issues already addressed or advance arguments that could have been raised in prior briefing." Servants of the Paraclete, 204 F.3d at 1012.

The Court further finds that the more specific arguments asserted in Defendants' Motion likewise raise issues and arguments the Court has already considered and rejected, and that Defendants' Motion fails to establish that the Court committed error or that Defendants will suffer a manifest injustice absent reconsideration. Consequently, the Court declines to reconsider in this Order the arguments Defendants previously raised in their opposition to Plaintiff's Motion for Class Certification and at the evidentiary hearing. The Court also declines to address the arguments that go to the merits of the case and are not strictly relevant to determining whether the Rule 23 prerequisites are satisfied.[12] See Amgen Inc. v. Conn. Ret. Plans & Tr. Funds, 568 U.S. 455, 466 (2013) ("Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.").

Nevertheless, the Court will address many of the arguments raised in the Motion for Reconsideration.

**a**.     First, Defendants argue that the Court erroneously relied on Dr. Cahill's testimony and the UNM Study to find that there are at least fifty-three (53) class members. ECF No. 375 at 3-5.

---

[12] For example, Defendants rely heavily on their assertion that medically fragile children are not entitled to a certain number of PDN service hours. See, e.g., ECF No. 375 at 7, 13; ECF No. 391 at 2, 7-9 & n.2. However, the Complaint alleges that the New Mexico Center for Development and Disability has determined that Plaintiffs "require[]" a certain number of PDN service hours, that Defendants are responsible for arranging such services for Plaintiffs, that Defendants are failing to provide them the PDN service hours to which they are entitled (or arrange for them to be provided), and that such failure constitutes a breach of Defendants' contracts with three MCOs and violates several federal statutes. ECF No. 1 ¶¶ 1-2, 13-15, 58-66, 159-75, 212-63. The Court need not resolve this (or any other) merits issue in order to determine whether Plaintiffs have satisfied the requirements for class certification.

9

The Court finds this argument to be without merit. The Court explicitly found that that the UNM Study was inadmissible as hearsay within hearsay within hearsay. ECF No. 369 at 17. The Court further explicitly found that there are at least fifty-seven (57) class members based only on the WAR Reports and the Thrive Waiting List introduced through Nurse German.[13, 14] Id. at 22-23. Nowhere does the Court suggest, much less find, that there are at least fifty-three (53) class members based upon Dr. Cahill's testimony and/or the UNM Study.

**b.** Next, Defendants appear to argue—with no citation—that the Court erroneously relied on the numbers included in Thrive's WAR Reports, introduced through Nurse German, because Nurse German "did not adopt those numbers." ECF No. 375 at 6.

The Court finds this argument to be without merit. The WAR Reports were entered into evidence through Nurse German—who was subject to cross-examination—as a record of regularly conducted activity. Defendants cite no authority holding that a Court cannot consider properly introduced documentary evidence when determining whether Rule 23(a)'s numerosity element is

---

[13] As stated in Section I, supra, although the Class Certification Order found that there were at least forty-seven (47) class members, the Court's math was incorrect; there are actually at least fifty-seven (57) class members based on the thirty-six (36) Thrive clients receiving a shortfall during the week ending October 28, 2023, and the twenty-one (21) medically fragile children on the Thrive Waiting List.

[14] In their Reply, Defendants appear to argue that Plaintiffs failed to establish numerosity because they failed to present evidence of a certain, "static" number of class members. ECF No. 391 at 6. They argue that "'[i]n class action suits there must be presented some evidence of established, ascertainable numbers constituting the class in order to satisfy even the most liberal interpretation of the numerosity requirement.'" Id. (quoting Rex v. Owens ex rel. Oklahoma, 585 F.2d 432, 436 (10th Cir. 1978)). They argue that "[i]n this case, there are no ascertainable numbers constituting the class. The number of class members is endlessly shifting, day to day and week to week." Id.
For reasons explained in the Class Certification Order, the WAR Reports and Thrive Waiting List provide evidence of an ascertainable number of class members—at least fifty-seven as of the week ending October 28, 2023. ECF No. 369 at 23; see also Section I and note 13, supra. The Court rejects Defendants' argument that there must be a "static" number of class members. In the products liability context, new consumers will purchase an allegedly defective product, adding to the class size. In the deceptive trade practices context, new consumers will be deceived by allegedly false or misleading advertising, adding to the class size. In cases, like this one, where the class is comprised of medically fragile children, some class members may, unfortunately, die, decreasing the class size. The fact that the evidence establishing numerosity shows that the class size fluctuates is irrelevant to whether the evidence establishes "that the class is so numerous as to make joinder impracticable." Trevizo v. Adams, 455 F.3d 1155, 1162 (10th Cir. 2006).

satisfied. The Court doubts that any such authority exists. Cf. Mathis v. Huff & Puff Trucking, Inc., Civil No. 12–cv–029–F, 2013 WL 12161868, at *6 (D. Wyo. Sept. 24, 2013) (denying motion for reconsideration on the court's findings on damages, stating that "neither party was helpful in calculating past medical expenses up to mid-2009, so the Court examined the medical and billing records" and "derived the amount of damages for past lost income by reference to [the plaintiff's] expert report showing reduction of income associated with" certain years).

**c.**     Next, Defendants argue that Ms. Parmenter's testimony "cannot and should not have been used to define the class certified." ECF No. 375 at 8.

The Court finds this argument to be without merit. The Court's discussion of the class definition does not mention Ms. Parmenter and does not rely on any of Ms. Parmenter's testimony. The only time the Class Certification Order makes any substantive mention of Ms. Parmenter is in the "numerosity" section, wherein the Court states: "Ms. Parmenter testified [at the evidentiary hearing] that a child must meet medically fragile criteria to receive EPSDT PDN services." ECF No. 369 at 22. Defendants do not appear to dispute Mr. Parmenter's testimony on this point. To the extent that they do, the Court finds that such a dispute does not warrant reconsideration of the Court's Class Certification Order.

**d.**     Next, Defendants argue that one of the Court's citations does not support the principle for which it was cited. ECF No. 375 at 8.

By way of background, the Court's Class Certification Order noted that Defendants' opposition to the commonality element simply asserted that "[m]edically fragile children have such individualized needs based on medical necessity that they cannot be treated as a class. The analysis of home skilled nursing hours, the medical necessity determinations and type of care, none of which are done by HSD, all involve individualized determinations rather than common

11

questions of fact." ECF No. 369 at 26 (quoting ECF No. 261 at 6). The Court stated: "Defendants cite no authority in support of their argument, which alone is reason to reject it." Id. (citing D.N.M.LR-Civ. 7.3(a) ("A motion, response or reply must cite authority in support of the legal positions advanced."); Quarrie v. Wells, Civ. No. 17-350 MV/GBW, 2020 WL 2526629, at *4 (D.N.M. May 18, 2020) (denying motion for failure to cite any supporting authority in violation of Local Rule 7.3(a)); JL v. N.M. Dep't of Health, 165 F. Supp. 3d 1048, 1069 (D.N.M. Feb. 24, 2016) (same)). Defendants now move for reconsideration because the Quarrie case allegedly does not support the Court's finding, and cite to page *9 of the Quarrie decision as the "relevant part" of that decision, even though the Court cited to page *4 of that decision. ECF No. 375 at 8-9.

The Court finds this argument to be frivolous for two reasons. First, Defendants' argument that "Quarrie does not support the Court's assertion" is demonstrably false. The Court's parenthetical indicates that it cited Quarrie as "denying [a] motion for failure to cite any supporting authority in violation of Local Rule 7.3(a)[,]" which is exactly what Quarrie did. 2020 WL 2526629, at *4 ("Because Plaintiff has failed to cite any authority pursuant to Local Rule 7.3(a), and has similarly failed to present any evidence or argument supporting modification of the Court's Order under Rule 54(b) or Rule 60(a), his motion for reconsideration is hereby DENIED.").

Second, even if Quarrie did not support the Court's statement, or Defendants' argument was not otherwise subject to summary rejection under Rule 7.3(a) for failure to cite supporting authority, reconsideration would not be merited because in the very next paragraph the Court rejected Defendants' argument on the merits:

> Defendants' argument is also meritless: "the remedies the class seeks—declaratory relief and an injunction directing the Secretary to follow the proper law of this circuit—do not depend on the individual facts of each case, but apply equally to all cases pending within the class." Adamson, 855 F.2d at 676. "That the claims of individual class members may differ factually should not preclude certification

12

> under Rule 23(b)(2) of a claim seeking the application of a common policy." Id. (citing Liberty Alliance of the Blind v. Califano, 568 F.2d 333, 346-47 (3d Cir. 1977)). See also Shook v. El Paso Cnty., 386 F.3d 963, 972 (10th Cir. 2004) ("Shook I") (rejecting the defendants' argument that the named plaintiffs' individual claims for deliberate indifference against the El Paso County, Colorado jail due to lack of access to mental health care "are too varied to meet the commonality and typicality requirements because each prisoner's claim requires a particularized analysis on the merits").

ECF No. 369 at 26.

**e.** Next, Defendants move for reconsideration of the Court's findings on typicality. First, they argue that reconsideration is warranted because the Class Certification Order states that "the Complaint alleges (and the record tends to demonstrate) that Defendants have breached their contracts with the MCOs, causing injury to the class[,]" but "[n]o evidence is cited to support this conclusion that Defendants breached their contract with the MCOs." ECF No. 375 at 9.

The Court rejects this argument. Notwithstanding the Court's statement, Plaintiffs are not required to present evidence that Defendants breached their contracts with the MCOs to establish typicality. Consequently, even assuming arguendo that the evidence to which the Court cited does not support the conclusion that the record tends to demonstrate that Defendants have breached their contracts with the MCOs, such an error does not merit reconsideration of the Class Certification Order.

Second, Defendants argue—with no citation to supporting authority—that reconsideration is warranted because "[n]either Plaintiffs nor the Court in reliance on the representations of Plaintiffs, present any tangible evidence to justify that the named Plaintiffs are typical of the class seeking to be certified." ECF No. 375 at 10.

The Court rejects this argument. To establish typicality, Plaintiffs were required to show that "the claims or defenses of the representative parties are typical of the claims or defenses of

13

the class[.]" Fed. R. Civ. P. 23(a)(3). "Provided the claims of Named Plaintiffs and class members are based on the same legal or remedial theory, differing fact situations of the class members do not defeat typicality." DG, 594 F.3d at 1198 (citing Adamson, 855 F.2d at 676).

Here, the Court relied on the (1) Complaint's allegations, (2) the Managed Care Services Agreements, and (3) the transcript of the first preliminary injunction hearing to determine whether the Named Plaintiffs' and proposed class's claims were based on the same legal or remedial theory. ECF No. 369 at 30-31. At a minimum, the Managed Care Services Agreements and the hearing transcript can fairly be described as "tangible evidence."

Although Defendants appear to fault the Court for relying on the Complaint, see ECF No. 375 at 9-10, the Court finds that the Complaint's allegations are a perfectly reasonable—indeed, the most logical—place to look to determine what a party's legal or remedial theory is. The Court does not need an affidavit from either of the Named Plaintiffs—both of whom are "profoundly ill minor children[,]" ECF No. 217 at 2—or from a putative class member—who by definition is a "medically fragile" child—explaining what their legal or remedial theories are when there is a fifty-page, 277-paragraph Complaint, replete with class allegations, explaining what the Parties' legal and remedial theories are. Regardless, the Court also considered the Managed Care Service Agreements and the transcript of the first preliminary injunction hearing when analyzing the issue, and the Court's finding that the claims of the Named Plaintiffs and putative class are based on the same legal or remedial theory is not clearly erroneous.

However, in an effort to assuage Defendants' evidentiary concerns, the Court hereby **AMENDS** Section III(A)(2)(c) of the Class Certification Order to cite the first and second Declarations of Christina Garcia, ECF Nos. 59-2, 150-2, as evidence supporting the typicality requirement because it tends to show that named Plaintiff M.G. is a medically fragile child who

14

receives a shortfall in PDN hours due to limited availability.  See Velez v. Novartis Pharms. Corp., 244 F.R.D. 243, 265 (S.D.N.Y. 2007) ("The commonality and typicality requirements can be satisfied by affidavits, statistical evidence, or both.") (internal quotation marks and citation omitted).  The Court further **AMENDS** Section III(A)(2)(c) of the Class Certification Order to cite the testimony of Victoria Vaughan, mother of Plaintiff C.V., from the first preliminary injunction hearing, ECF No. 109 at 68:13 – 72:6, as evidence supporting the typicality requirement because it tends to show that named Plaintiff C.V. is a medically fragile child who receives a shortfall in PDN hours due to limited availability. The Court further **AMENDS** Section III(A)(2)(c) of the Class Certification Order to cite the Declaration of Judith Anaya, ECF No. 299-2, as evidence supporting the typicality requirement because it tends to show that potential class member B.A. is a medically fragile child who receives a shortfall in PDN hours due to limited availability, whose claims are based on the same legal or remedial theories as the Named Plaintiffs.  See Velez, 244 F.R.D. at 265.  The Court further **AMENDS** Section III(A)(2)(c) of the Class Certification Order to cite the WAR Reports and the Thrive Waiting List as evidence supporting the typicality requirement because it tends to show that, like the Named Plaintiffs, at least fifty-seven other medically fragile children are receiving a shortfall of PDN hours due to limited availability, whose claims are based on the same legal or remedial theories as the Named Plaintiffs.  See Golden v. Quality Life Servs., LLC, Civ. No. 22-579 GJF/GBW, 2023 WL 8112714, at *5 (D.N.M. Nov. 22, 2023) (finding that the named plaintiffs in case alleging violations of the Fair Labor Standards Act and New Mexico Minimum Wage Act established typicality by a preponderance of the evidence where they submitted a spreadsheet showing that 216 other employees of the defendant were working more than forty hours per week and not receiving overtime pay).

**f.** Next, Defendants argue—with no citation—that the certified class definition is "impermissibly vague" because it does not make clear whether the class is limited to individuals whose alleged shortfall in services received is attributable to Defendants' policies or actions[,]" as opposed to the policies or actions of Thrive or other companies that hire and provide the nurses, or because the children's parents are declining the services. ECF No. 375 at 10-11. They further argue that the "class definition also lacks clarity about what constitutes limited availability of service." Id. at 11.

First, who is responsible for the shortage in PDN services goes to the merits of Plaintiffs' claims, not to the sufficiency of the class definition.

Second, Defendants' argument that the class definition does not make clear whether it includes children who received a shortfall of PDN services because their parents declined services is frivolous. By its plain language the class definition includes only individuals who received a shortfall of PDN services "due to limited availability of services." ECF No. 369 at 43. As such, the class definition obviously does not include children who received a shortfall in PDN services because their family declined the services (unless those children also received a shortfall in PDN services due to limited availability of services, without regard to any services that were declined).

Third, the Court finds that the phrase "limited availability of services" is sufficiently clear when considered in context. This action was filed by medically fragile children who allege that they have been approved for a certain number of hours of PDN services per week or month by New Mexico's Medicaid program, but Defendants are failing to provide them with adequate hours of PDN services. Id. at ¶¶ 1-2, 13-15, 58-66. The record tends to demonstrate that the Named Plaintiffs and the class are not receiving their allotted PDN service hours because there is a shortage of nurses in New Mexico. See, e.g., ECF No. 109 at 69:13 – 72:6 (Plaintiff C.V.'s mother

testifying about shortage of PDN service hours and that she received a letter from Presbyterian Healthcare Services stating that C.V. was not provided all of his PDN service hours because the nursing agency "had a shortage of nurses"); id. at 117:5-6 (former Secretary of HSD, David Scrase, testifying that "[t]here is a nursing shortage"); id. at 122:22 – 124:19 (former Secretary Scrase answering defense counsel's question: "What, generally, did New Mexico do to try to bring nurses to New Mexico to ameliorate the shortage that affects the ability for the Medically Fragile children to have Private Duty Nurses in their home?"); id. at 207:9-24 (defense counsel describing the "nursing shortage" as a "huge problem" and a "chronic problem"); ECF Nos. 59-2 ¶ 11, 150-2 ¶ 6 (Plaintiff M.G.'s mother stating that in 2021, "M.G. was able to access only half or less of the private duty nursing hours that she qualifies for"); ECF No. 299-2 ¶ 27 (mother of potential class member B.A. explaining that B.A. "cannot always get the care and attention she needs when PDN nurses aren't available"); ECF No. 372 at 61 (Nurse Michelle German testifying at Class Certification hearing regarding the "[s]hortage of nurses").

In sum, nothing about the class definition is vague.

**h.** Finally, Defendants note that the Court found that DRNM lacked associational standing in this case because, although it has associational standing to sue on behalf of New Mexicans enrolled in the Developmental Disability Waiver,

> the Complaint does not allege—and Plaintiffs have provided no evidence—that any individuals enrolled in the Developmental Disability Waiver have been approved for private duty nursing services by Defendants and are not receiving the nursing services at the level for which they were approved due to limited availability of services. Stated differently, Plaintiffs have not alleged or established that any of DRNM's "members" have suffered an injury in fact.

ECF No. 369 at 41-42.  Defendants argue that "[t]his is the crux of the class certification: If there is no evidence that individuals have been approved for PDN services and are not receiving them, they have suffered no injury in fact."  ECF No. 375 at 12.

Strictly speaking, Plaintiffs are not required to prove that they suffered an injury-in-fact at the class certification stage.  See DG ex rel. Stricklin v. Devaughn, 594 F.3d 1188, 1194 (10th Cir. 2010) ("In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.") (internal quotation marks and citations omitted).  Instead, they are required to satisfy "the requirements of Rule 23(a) and the requirements of one of the types of classes in Rule 23(b)."  Id.  Demonstrating an injury-in-fact is not a requirement of Rule 23(a) or (b)(2).[15]

However, the Supreme Court has stated that "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury[.]'"  Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 349-50 (2011).  Here, there is sufficient evidence that the Named Plaintiffs and the prospective class members have suffered, and are suffering, the same injury—specifically, they are not receiving the PDN service hours to which they are allegedly entitled—including the WAR Reports, the Thrive Waiting List, the first and second Declarations of Christina Garcia, ECF Nos. 59-2, 150-2, the Declaration of Judith Anaya, ECF No. 299-2, the testimony of Victoria Vaughan at the first preliminary injunction hearing, ECF No. 109 at 72:3-6, and the testimony of

---

[15] It appears that injury-in-fact is a relevant issue in anti-trust class actions brought under Federal Rule of Civil Procedure 23(b)(3) because injury-in-fact is an element of an anti-trust claim.  See In re Asacol Antitrust Litig., 907 F.3d 42, 51-52 (1st Cir. 2018); Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc., 502 F.3d 91, 106-07 (2d Cir. 2007); Kamakahi v. Am. Soc'y for Reprod. Med., 305 F.R.D. 164, 190 n.24 (N.D. Cal. 2015) (observing that the "Fifth Circuit appears to have adopted a rule that classwide injury-in-fact must be demonstrated in antitrust cases, but does not require such a showing in other cases") (citations omitted).

Nurse Michelle German at the hearing on the Motion for Class Certification, ECF No. 372 at 31:9 – 49:8.

Accordingly, it is **HEREBY ORDERED** that:

1. Defendants' Motion to Reconsider the Court's Order Entered December 12, 2023, Regarding Motion to Strike and Motion for Class Certification, ECF No. 375, is **DENIED**; and

2. The Court's Class Certification Order, ECF No. 369, is **AMENDED** consistent with this Order.

                                               **MARGARET STRICKLAND**
                                               UNITED STATES DISTRICT JUDGE