### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW MEXICO

M.G., a minor by and through
her mother Christina Garcia, and
DISABILITY RIGHTS NEW MEXICO, INC.,

    Plaintiff,

v.

                                              Case 1:22-cv-00325-MIS-DLM

KARI ARMIJO, in her official capacity
as Secretary of the New Mexico Health
Care Authority Department, and
NEW MEXICO HEALTH CARE
AUTHORITY DEPARTMENT,[1]

    Defendants.

## ORDER GRANTING IN PART PLAINTIFFS' OPPOSED MOTION TO AMEND CLASS DEFINITION

THIS MATTER is before the Court on Plaintiffs' Opposed Motion to Amend Class Definition, ECF No. 445, filed June 13, 2024.  Defendants filed a Response on June 27, 2024, ECF No. 448, to which Plaintiffs filed a Reply on July 11, 2024, ECF No. 452.  Upon consideration of the Parties' submissions, the record, and the relevant law, the Court will **GRANT** the Motion.

---

[1] The Complaint names New Mexico's "Human Services Department" and the Secretary of the Human Services Department as Defendants.  See ECF No. 1.  New Mexico's Human Services Department has been renamed the "Health Care Authority Department" by legislative act.  See S.B. 16, 56th Leg., Reg. Sess. (N.M. 2003), available at https://nmlegis.gov/Sessions/23%20Regular/final/SB0016.pdf (last visited Sept. 5, 2024).  Pursuant to the act, "[o]n July 1, 2023, statutory references to the human services department shall be deemed to be references to the health care authority department, and contractual obligations of the human services department shall be binding on the health care authority department.  Rules of the human services department shall be the rules of the health care authority department until amended or repealed."  Id. at 20.

I.      **Relevant background**

On April 28, 2022, Disability Rights New Mexico, Inc. ("DRNM") and three minors, M.G., A.C., and C.V. ("the Named Plaintiffs"),[2] filed a Class Action Complaint against the New Mexico Human Services Department ("HSD") and the Secretary of HSD—who administer the Medicaid Managed Care program formerly known as Centennial Care 2.0—as well as three Managed Care Organizations ("MCOs").[3] ECF No. 1 ¶ 1. The Complaint alleges that the Named Plaintiffs "are medically fragile children who are eligible to receive medically necessary private-duty nursing care" as part of the early and periodic screening, diagnostic, and treatment ("EPSDT") services Defendants are required to provide pursuant to the Medicaid Act, Title XIX of the Social Security Act, 42 U.S.C. § 1396d(a)(4)(B). Id. ¶¶ 1, 58-66. It alleges that each Named Plaintiff is a "Medically Fragile Waiver participant and Centennial Care 2.0 beneficiary[,]" id. ¶¶ 102, 124, 143, and has been approved for a certain number of hours of private duty nursing ("PDN") services per month by New Mexico's Medicaid program, but Defendants are failing to provide them with adequate hours of PDN services. Id. ¶¶ 1-2, 13-15. The Complaint also contains class allegations and proposes the following class definition: "All Centennial Care 2.0 beneficiaries under the age of 21 in New Mexico who have been approved for private duty nursing services by Defendants, but are not receiving the nursing services at the level approved by Defendants." Id. ¶ 32; see also id. ¶¶ 33-57.

---

[2]     On May 15, 2023, Plaintiffs filed a Suggestion of Death stating that A.C. died on May 12, 2023. ECF No. 203. On August 27, 2024, the Court granted Plaintiffs' Amended Unopposed Motion to Dismiss Plaintiff C.V. from this action. ECF Nos. 467, 468.

[3]     On October 27, 2022, the Court issued an Order dismissing the only counts asserted against the MCOs and dismissing the MCOs from this case. ECF No. 77.

On May 26, 2023, following a hearing on Plaintiffs' Second Motion for Preliminary Injunction, see ECF Nos. 150, 214, the Court issued a Preliminary Injunction finding, inter alia, that "Plaintiffs are likely to prevail on their claim that Defendants approved each Plaintiff for EPSDT in-home shift nursing services based on medical necessity and that Plaintiffs are regularly not receiving all such approved services[,]" ECF No. 217 at 43, and further finding that Plaintiffs demonstrated a likelihood of success on the merits of their Sixth, Seventh, and Ninth Causes of Action, id.

On June 30, 2023, Plaintiffs filed a Motion for Class Certification and to Recognize Associational Standing of DRNM. ECF No. 235. Defendants filed a Response, ECF No. 261, to which Plaintiffs filed a Reply, ECF No. 287. On November 14, 2023, the Court held an evidentiary hearing on the Motion. See Tr. of Nov. 14, 2023 Hr'g, ECF No. 372.

On December 12, 2023, the Court issued an Order granting the Motion to the extent it requested class certification and certifying the following class:

> All Centennial Care 2.0 beneficiaries under the age of 21 in New Mexico who have been approved for private duty nursing services by Defendants, but are not receiving the nursing services at the level approved by Defendants due to limited availability of services[.]"

Id. at 43.[4]

On June 13, 2024, Plaintiffs filed the instant Motion to Amend Class Definition. ECF No. 445. Defendants filed a Response, ECF No. 448, to which Plaintiffs filed a Reply, ECF No. 452.

---

[4] The Court initially denied Plaintiffs' motion to recognize DRNM's associational standing. ECF No. 369 at 39-42. However, on September 5, 2024, the Court granted Plaintiffs' Motion to Reconsider Denial of Associational Standing, finding that DRNM has associational standing in this case. ECF No. 477.

## II. Discussion

Plaintiffs seek to amend the class definition to replace "Centennial Care 2.0" with "Medicaid." ECF No. 445 at 2. They seek this amendment because on July 1, 2024, New Mexico's Medicaid Managed Care program, which was previously titled "Centennial Care 2.0," was re-named "Turquoise Care." Id. As such, as of July 1, 2024, there are no longer any "Centennial Care 2.0" Medicaid beneficiaries. Id. Plaintiffs assert that the members of the class who are participants in Turquoise Care are identical to the members who were participants in Centennial Care 2.0, "in both name and number[,]" and "the State will continue to be responsible for ensuring that Private Duty Nursing hours are provided." Id. They argue that courts have discretion to alter or amend class certification orders prior to final judgment, id. (citing Fed. R. Civ. P. 23(c)(1)(C)), and "'may sua sponte modify a class definition[,]'" id. at 3 (quoting Lavigne v. First Cmty. Bancshare, Inc., Civil No. 1:15-cv-00934-WJ/LF, 2018 WL 2694457, at *8 (D.N.M. June 5, 2018)). They cite Decoteau v. Raemisch, Civil Action No. 13–cv–3399–WJM–KMT, 2015 WL 1727071, at *3 (D. Colo. Apr. 13, 2015), as analogous authority supporting their request. Id. at 3. They argue that amending the class definition as requested "does not broaden the scope of the plaintiff class, but it is tailored to avoid unnecessary language, to focus on the challenged condition shared by the class as Medicaid beneficiaries entitled to Private Duty Nursing hours, and to avoid future, additional changes to the class definition." Id. at 4.

Defendants argue that "the proposed amendment impermissibly expands the class without the proof required for such a change." ECF No. 448 at 1. They argue that Turquoise Care is not a change in name only but rather is "a completely new managed care program" with new plans, new contracts, and two new MCOs. Id. at 2. They argue that

> Several contractual provision under Turquoise Care that were not in the Centennial Care 2.0 managed care organization contracts have changed that will impact the class, for example, reporting requirements and deliverables will change, the monitoring of network adequacy will be more robust and children in state custody are all going to be served by Presbyterian Health Plan.

Id. They further argue that Plaintiffs' proposed amendment removes "the managed care component that is an integral part of the Centennial Care 2.0 program" and "expands the class definition to include non-managed care Medicaid beneficiaries[,]" id. at 2-3, although they appear to imply that under current law, only Medicaid Managed Care program beneficiaries can be approved for PDN service hours, see id. at 3. In any event, they argue that there has been no evidence that any such non-managed care Medicaid beneficiaries—what they characterize as "fee-for-service" beneficiaries—or any Turquoise Care beneficiaries are not receiving PDN services for which they have been approved due to limited availability of services. Id. at 3. They further argue that Plaintiffs have cited no published authority supporting their argument that courts have discretion to alter or amend orders granting or denying class certification before final judgment, and attempt to distinguish Lavigne. Id. They argue that the Court "will have to hold an evidentiary hearing on the proposed new class" and "will need to make new findings of facts as to whether or not there is a deficiency in the private duty nursing services provided outside the Centennial Care 2.0 program that was the basis of the class certification order." Id.

In their Reply, Plaintiffs argue that the "class who were beneficiaries under Centennial Care 2.0 remain Medicaid beneficiaries under Turquoise Care, remain medically fragile children, and remain authorized to receive a designated number of private duty nursing hours annually." ECF No. 452 at 2. As such, "their relationship to Defendants remains identical; their identity as members of Centennial Care has changed to Turquoise Care, only because Defendants have entered into new contracts to comply with Defendants' overriding responsibility to ensure that

5

Plaintiffs receive their PDN hours, as this Court has already ruled." id. (citing ECF No. 217 at 30-31, 37). They further argue that the Motion's pinpoint citation to Lavigne "directed the Court and Defendants to a litany of published decisions" establishing that courts have authority to alter or amend a class certification order before final judgment, and in any event, Plaintiffs cited Federal Rule of Civil Procedure 23(c)(1)(C) which explicitly provides courts with such authority. Id. at 3. They argue that the evidence that supported granting Plaintiffs' Motion for Class Certification also supports the proposed amendment because the Court's analysis "did not rely at all on participation in New Mexico's Centennial Care 2.0 managed care program with respect to Plaintiffs' Sixth, Seventh, Eighth, and Ninth causes of action (the remaining Causes of Action)." Id. at 4. They further argue that "[t]he fact that there are no medically fragile EPSDT fee-for-service Medicaid beneficiaries seems to moot" Defendants' argument that the proposed amendment includes such "beneficiaries." Id. at 5. Plaintiffs appear to argue that even if such fee-for-service Medicaid beneficiaries who otherwise met the class definition existed, "the proposed amended class definition could permissibly capture such potential plaintiffs" because Defendants are required to ensure that all Medicaid beneficiaries receive the PDN service hours to which they are entitled. Id. at 5-6. Plaintiffs further argue that the Court need not make new findings of fact because

> Defendants remain the single state entity responsible for the administration of New Mexico's Medicaid program regardless of its contracts with managed care organizations (see 42 U.S.C. § 1396a(a)(5); 42 C.F.R. § 431.10(e)), that EPSDT is a mandatory part of every state's Medicaid plan (whether termed Centennial Care 2.0 or Turquoise Care) (see 42 U.S.C. § 1396d(r); 42 U.S.C. § 1396a(a)(10)(A); 42 U.S.C. § 1396a(a)(43)), that managed care exists merely to assist the State in meeting its obligations under the federal Medicaid act,[5] (see Centennial Care 2.0

---

[5] Centennial Care 2.0 Contracts defined "Managed Care Organization (MCO)" as: "an entity that participates in Centennial Care under contract with HSD to assist the State in meeting the requirements established under NMSA 1978, § 27-2-12." Turquoise Care Contracts define "Managed Care Organization (MCO)" as: "an entity that meets the requirements of 42 CFR § 438.2 and participates in Turquoise Care under contract with HCA to assist the State in meeting the requirements established under NMSA 1978, § 27-2-12."

Managed Care Services Agreement, Section 2 "Managed Care Organization"; Turquoise Care Managed Care Services Agreement, Section 2 "Managed Care Organization), and that Defendants remain responsible for ensuring the delivery of medically necessary EPSDT services, as this Court noted:

> Generally, under the EPSDT program, a state must provide all forms of medical assistance[6] to Medicaid patients under the age of 21. See 42 U.S.C. § 1396d(r)(5) (defining services) . . . States must provide all of the services listed in 42 U.S.C. § 1396d(a) to eligible children when such services are found to be medically necessary, including "private duty nursing services." See 42 U.S.C. § 1396d(a)(8).

Id. at 7 (quoting ECF No. 217 at 28) (footnotes in original). Finally, Plaintiffs argue that in September 2023, Defendants represented to the Centers for Medicare & Medicaid Services ("CMS") that Turquoise Care "is an extension of Centennial Care 2.0 saying, 'In 2022, HSD requested a five-year renewal of the Centennial Care 2.0 1115 waiver, to be known as Turquoise Care upon approval by CMS.'" Id. at 7-8 (quoting State of New Mexico Human Services Department, Turquoise Care Section 1115 Medicaid Demonstration Waiver Renewal Supplemental Request at 6 (Sept. 18, 2023)).[7]

Pursuant to Federal Rule of Civil Procedure 23(c)(1)(C), "[a]n order that grants or denies class certification may be altered or amended before final judgment." Consequently, "a trial court overseeing a class action retains the ability to . . . modify . . . a class at any time before final judgment." In re Integra Realty Res., Inc., 354 F.3d 1246, 1261 (10th Cir. 2004) (citing Fed. R.

---

[6] This Court further noted that, "As part of the Patient Protection and Affordable Care Act, Congress amended the definition of 'medical assistance' under 42 U.S.C. § 1396d(a) to clarify that the term 'medical assistance' means 'payment of part or all of the cost of the following care and services or the care and services themselves, or both . . . .' 42 U.S.C. § 1386d(a) (emphasis added). As other courts have found, it appears that Congress intended 'to clarify that where the Medicaid Act refers to the provision of services, a participating State is required to provide (or ensure the provision of) services, not merely to pay for them . . . .' A. H. R. v. Washington State Health Care Auth., 469 F. Supp. 3d 1018, 1040 (W.D. Wash. 2016) (quoting John B., 852 F. Supp. 2d at 951) [other citations omitted]." ECF 217, p. 30.

[7] Available at https://www.hsd.state.nm.us/wp-content/uploads/TC-1115-Waiver_EPDST-LRIs_Renewal-Application-Supplement_9.18.2023.pdf (last visited Sept. 5, 2024).

Civ. P. 23(c)(1)). See also Carpenter v. Boeing Co., 456 F.3d 1183, 1187 (10th Cir. 2006) (stating that a "district court can modify or amend its class-certification determination at any time before final judgment in response to changing circumstances in the case."); Stuart v. State Farm Fire & Cas. Co., 910 F.3d 371, 377 (8th Cir. 2018) (observing that "the district court has the power to amend the class definition at any time before judgment"); Ditty v. Check Rite, Ltd., 182 F.R.D. 639, 645 (D. Utah 1998) ("Because the court retains plenary power to modify the class definition, or rescind the class altogether, at any time prior to judgment, the parties are free to move for modifications to the class definition . . . .").

Here, the Court finds that amending the class definition is warranted in response to changing circumstances in this case. See Carpenter, 456 F.3d at 1189. When the Court issued its Order granting Plaintiffs' Motion for Class Certification on December 12, 2023, New Mexico's Medicaid Managed Care program was named "Centennial Care 2.0." See ECF No. 369 at 2 (citing ECF No. 1 ¶ 1)). Thus, the Court certified the following class: "All Centennial Care 2.0 beneficiaries under the age of 21 in New Mexico who have been approved for private duty nursing services by Defendants, but are not receiving the nursing services at the level approved by Defendants due to limited availability of services[.]" Id. at 43.

However, it is undisputed that on July 1, 2024, the New Mexico Medicaid Managed Care program previously known as "Centennial Care 2.0" was renamed "Turquoise Care." See ECF No. 445 at 2; ECF No. 448 at 2; see also Demonstration Approval Letter from Chiquita Brooks-Lasure, Administrator, Centers for Medicare & Medicaid Services, to Dana Flannery, Medicaid Director, Medical Assistance Division, New Mexico Human Services Dep't, (July 25, 2024) at 1 (approving request to rename Centennial Care 2.0 "New Mexico Turquoise Care"), available at https://www.medicaid.gov/medicaid/section-1115-demo/demonstration-and-waiver-list/82611

(last visited Sept. 5, 2024). Consequently, there are no longer any Centennial Care 2.0 beneficiaries.

This change in circumstances warrants amending the class definition. See Decoteau, 2015 WL 1727071, at *3. In Decoteau, prisoners incarcerated at the Colorado State Penitentiary ("CSP") filed a class action lawsuit seeking a ruling regarding the right to exercise outdoors. Id. at *1. The court granted the plaintiffs' motion to certify the following class: "All inmates who are now or will in the future be housed in administrative segregation at the Colorado State Penitentiary and who are now or will in the future be subjected to the policy and practice of refusing to provide such inmates access to outdoor exercise." Id. (emphasis added) (citing Deocteau v. Raemisch, 304 F.R.D. 683 (D. Colo. 2014)). Thereafter, the Colorado Department of Corrections amended its regulations to eliminate the term "administrative segregation" and replace it "Restrictive Housing." Id. Although there were differences between "administrative segregation" and "Restrictive Housing," inmates in "Restrictive Housing" were still not permitted outdoor exercise. Id. The plaintiffs moved for amendment of the class definition that simply removed the term "administrative segregation." Id. The defendants proposed an amendment that, inter alia, replaced "administrative segregation" with "Restrictive Housing." Id. at *2. The Court rejected the defendants' proposed amendment and accepted the plaintiffs' proposed amendment. Id. at *3. The court reasoned, in part:

> The clarification Defendants seek through inserting "Restrictive Housing" is unnecessary. The original class definition focused on inmates who are denied all outdoor exercise. The Court does not understand Plaintiffs' proposed redefinition to broaden that scope.
>
> Inserting "Restrictive Housing" could also lead to additional problems in the future. The fact that Defendants are now redefining their housing classifications suggests that Defendants may do so again. Rather than require a round of class redefinition motions for each new regulatory change, the Court believes it prudent to define the

9

        class with reference to the challenged condition, and not on the housing classification that creates that condition.

Id. (internal citation omitted).  Therefore, the court redefined the class as "All inmates who are now or will in the future be housed at the Colorado State Penitentiary and who are now or will in the future be subjected to the policy and practice of refusing to provide such inmates access to outdoor exercise." Id.

      Like the defendants in Decoteau, Defendants here argue that Plaintiffs' proposed amendment—replacing "Centennial Care 2.0" with "Medicaid"—would expand the class from beneficiaries of New Mexico's Medicaid Managed Care program to all Medicaid beneficiaries. See ECF No. 448 at 2-3.  Although Defendants appear to concede that there are currently no non-managed care Medicaid beneficiaries who otherwise satisfy the class definition—and further appear to concede that non-managed care Medicaid beneficiaries cannot otherwise satisfy the class definition under current law, see id. at 3 ("Even if every child who fits that definition is currently in managed care, it is both conceivable and beyond the control of Defendants that the federal Medicaid plan or rules could be changed so that a fee-for-service recipient would be part of the class.")—the Court agrees that Plaintiffs' proposed amendment, at least in theory, broadens the class.  However, the Court finds that Defendants' concern can be alleviated by replacing "Centennial Care 2.0" with either "Turquoise Care" or "Medicaid Managed Care program."

      This solution would apparently not satisfy Plaintiffs, who argue that their proposed amendment does not impermissibly expand the class because the State is responsible for ensuring that all Medicaid beneficiaries entitled to PDN service hours receive their allotted PDN service hours.  See ECF No. 452 at 5.  However, Plaintiffs have never sought to define the class as all possible Medicaid beneficiaries under the age of 21 in New Mexico who are not receiving PDN

10

services at the level approved by Defendants. Rather, the class definition proposed in their Complaint and Motion for Class Certification included only "[a]ll Centennial Care 2.0 beneficiaries under the age of 21 in New Mexico who have been approved for private duty nursing services by Defendants, but are not receiving the nursing services at the level approved by Defendants." ECF No. 1 at 32; ECF No. 235 at 2 (emphasis added). If Plaintiffs wished to define the class as all possible Medicaid beneficiaries who otherwise satisfied the class definition they could have proposed such a definition in their Complaint. Instead, they limited their proposed class to beneficiaries of the Medicaid Managed Care program, and the Court certified a class of Medicaid Managed Care program beneficiaries. ECF No. 369 at 43. The amended class definition should likewise be limited. And because the Court is not expanding the class definition beyond Medicaid Managed Care program beneficiaries, the Court need not have an evidentiary hearing on whether all Medicaid beneficiaries who otherwise satisfy the class definition satisfy the requirements of Rule 23.

Finally, the Court finds that the contractual changes under Turquoise Care have no impact on the class membership, and Defendants' arguments to the contrary are meritless. See ECF No. 448 at 2. Regardless of any contractual changes between Defendants and the MCOs, it is the state—not the MCOs—who are required to provide medically necessary services to beneficiaries, as this Court explained in its Preliminary Injunction Order. ECF No. 217 at 28, 31, 37. Thus, while the Court is hopeful that the contractual changes result in the MCOs fulfilling the state's statutory obligations, they have no effect on the class definition.

**III.   Conclusion**

Therefore, it is **HEREBY ORDERED** that:

1. Plaintiffs' Opposed Motion to Amend Class Definition, ECF No. 445, is **GRANTED IN PART** consistent with this Order; and

2. The Court redefines the class as follows: "All Medicaid Managed Care program beneficiaries under the age of 21 in New Mexico who have been approved for private duty nursing services by Defendants, but are not receiving the nursing services at the level approved by Defendants due to limited availability of services."

*/s/ Margaret Strickland*
_____
**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE